

ase .net

Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print          GrantedPublicAccess  Logoff JOSHUA_JONES

### 22SL-CC03888 - EQUITY ONE FRANCHISOR V PRIESTMAN GROUP, INC. ET A (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

**Click here to eFile on Case**
Click here to Respond to Selected Documents

Sort Date Entries: ● Descending  ○ Ascending

Display Options: All Entries

---

**11/07/2022** ☐ **Order Granting Ext of Time**

THE COURT HEREBY GRANTS DEFENDANTS PRISEMAN GROUP, INC, BRADLEY PRIESTMAN, DAVID DIONNE AND PATRICIA DIONNE'S MOTION FOR EXTENSION OF TIME UP TO AND INCLUDING DECEMBER 4, 2022 IN WHICH TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S PETITION. SO ORDERED: JUDGE JOSEPH L. WALSH III
  **Associated Entries:** 11/04/2022 - **Motion for Extension of Time**

**11/04/2022** ☐ **Motion for Extension of Time**

Second Request for Additional Time, With Consent; Electronic Filing Certificate of Service.
  **Filed By:** JEFFREY ROBERT SCHMITT
  **On Behalf Of:** PRIESTMAN GROUP, INC., BRADLEY T. PRIESTMAN, DAVID J. DIONNE, PATRICIA K. DIONNE
  **Associated Entries:** 11/07/2022 - **Order Granting Ext of Time**

**10/24/2022** ☐ **Order Granting Ext of Time**

THE COURT HEREBY GRANTS DEFENDANT PRIESTMAN GROUP, INC'S REQUEST FOR ADDITIONAL TIME UP TO AND INCLUDING NOVEMBER 4, 2022 IN WHICH TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S PETITION. SO ORDERED: JUDGE JOSEPH L. WALSH III
  **Associated Entries:** 10/21/2022 - **Motion for Extension of Time**

**10/21/2022** ☐ **Motion for Extension of Time**

  **Filed By:** JEFFREY ROBERT SCHMITT
  **On Behalf Of:** PRIESTMAN GROUP, INC., BRADLEY T. PRIESTMAN, DAVID J. DIONNE, PATRICIA K. DIONNE
  **Associated Entries:** 10/24/2022 - **Order Granting Ext of Time**

☐ **Entry of Appearance Filed**

Entry of Appearance; Electronic Filing Certificate of Service.
  **Filed By:** JEFFREY ROBERT SCHMITT

**09/29/2022** ☐ **Affidavit Filed**

Return of Service of Summons issued to Defendant SBA; Electronic Filing Certificate of Service.
  **Filed By:** DAWN ANN MORVILLE JOHNSON
  **On Behalf Of:** EQUITY ONE FRANCHISORS, LLC

☐ **Affidavit Filed**

Return of Service of Summons issued to Defendant D. Dionne; Electronic Filing Certificate of Service.
  **Filed By:** DAWN ANN MORVILLE JOHNSON

☐ **Affidavit Filed**

Return of Service of Summons issued to Defendant Bradley Priestman; Electronic Filing Certificate of

GOVERNMENT EXHIBIT

A

Service.

**Filed By:** DAWN ANN MORVILLE JOHNSON

☐ **Affidavit Filed**

Return of Service of Summons issued to Defendant Priestman Group Inc.; Electronic Filing Certificate of Service.

**Filed By:** DAWN ANN MORVILLE JOHNSON

☐ **Corporation Served**

Document ID - 22-SMOS-796; Served To - U.S. SMALL BUSINESS ADMINISTRATION; Server - ; Served Date - 12-SEP-22; Served Time - 00:00:00; Service Type - Special Process Server; Reason Description - Served

☐ **Summons Personally Served**

Document ID - 22-SMOS-798; Served To - DIONNE, DAVID J.; Server - ; Served Date - 19-SEP-22; Served Time - 00:00:00; Service Type - Special Process Server; Reason Description - Served

☐ **Summons Personally Served**

Document ID - 22-SMOS-797; Served To - PRIESTMAN, BRADLEY T.; Server - ; Served Date - 21-SEP-22; Served Time - 00:00:00; Service Type - Special Process Server; Reason Description - Served

☐ **Agent Served**

Document ID - 22-SMOS-795; Served To - PRIESTMAN GROUP, INC.; Server - ; Served Date - 21-SEP-22; Served Time - 00:00:00; Service Type - Special Process Server; Reason Description - Served

☐ **Judge/Clerk - Note**

PLEASE SUBMIT THE SUMMONS RETURN WITH THE AFFIDAVIT OF SERVICE

09/28/2022 ☐ **Affidavit Filed**

Affidavit of Service Summons Deft D Dionne; Electronic Filing Certificate of Service.

**Filed By:** DAWN ANN MORVILLE JOHNSON
**On Behalf Of:** EQUITY ONE FRANCHISORS, LLC

☐ **Affidavit Filed**

Affidavit of Service Summons Deft Bradley Priestman; Electronic Filing Certificate of Service.

**Filed By:** DAWN ANN MORVILLE JOHNSON

☐ **Affidavit Filed**

Affidavit of Service Summons Deft Priestman Group Inc.; Electronic Filing Certificate of Service.

**Filed By:** DAWN ANN MORVILLE JOHNSON

09/20/2022 ☐ **Affidavit Filed**

Affidavit of Service - U.S. Small Business Administration; Electronic Filing Certificate of Service.

**Filed By:** DAWN ANN MORVILLE JOHNSON
**On Behalf Of:** EQUITY ONE FRANCHISORS, LLC

09/07/2022 ☐ **Motion Special Process Server**

SPS APPROVED Request for Appointment of Process ServerFL; Electronic Filing Certificate of Service.

**Filed By:** DAWN ANN MORVILLE JOHNSON
**On Behalf Of:** EQUITY ONE FRANCHISORS, LLC

09/02/2022 ☐ **Entry of Appearance Filed**

Entry of Appearance; Electronic Filing Certificate of Service.

**Filed By:** TALI LEAH KATZ
**On Behalf Of:** EQUITY ONE FRANCHISORS, LLC

☐ **Entry of Appearance Filed**

Entry of Appearance; Electronic Filing Certificate of Service.

**Filed By:** RANDALL F. SCHERCK
**On Behalf Of:** EQUITY ONE FRANCHISORS, LLC

| | |
|---|---|
| 09/01/2022 | ☐ **Summ Issd- Circ Pers Serv O/S** |

Document ID: 22-SMOS-799, for DIONNE, PATRICIA K.. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

☐ **Summ Issd- Circ Pers Serv O/S**

Document ID: 22-SMOS-798, for DIONNE, DAVID J.. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

☐ **Summ Issd- Circ Pers Serv O/S**

Document ID: 22-SMOS-797, for PRIESTMAN, BRADLEY T.. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

☐ **Summ Issd- Circ Pers Serv O/S**

Document ID: 22-SMOS-796, for U.S. SMALL BUSINESS ADMINISTRATION. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

☐ **Summ Issd- Circ Pers Serv O/S**

Document ID: 22-SMOS-795, for PRIESTMAN GROUP, INC.. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

| | |
|---|---|
| 08/31/2022 | ☐ **Filing Info Sheet eFiling** |

**Filed By:** DAWN ANN MORVILLE JOHNSON

☐ **Motion Special Process Server**

Request for Appointment of Process ServerFL.
**Filed By:** DAWN ANN MORVILLE JOHNSON
**On Behalf Of:** EQUITY ONE FRANCHISORS, LLC

☐ **Motion Special Process Server**

Request for Appointment of Process Server WASH DC.
**Filed By:** DAWN ANN MORVILLE JOHNSON

☐ **Pet Filed in Circuit Ct**

Petition.
**Filed By:** DAWN ANN MORVILLE JOHNSON

☐ **Judge Assigned**

DIV 17

---

**22SL-CC03888**

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

| | |
|---|---|
| EQUITY ONE FRANCHISORS, LLC, )<br><br>　　　Plaintiff, )<br><br>v. )<br><br>PRIESTMAN GROUP, INC., )<br><br>　　　Serve: )<br>　　　Bradley T. Priestman )<br>　　　759 SW Federal Hwy #101 )<br>　　　Stuart, FL 34994 )<br><br>U.S. SMALL BUSINESS ADMINISTRATION, )<br><br>　　　Serve: )<br>　　　Therese Meers, General Counsel )<br>　　　Office of General Counsel )<br>　　　Small Business Administration )<br>　　　409 Third Street, SW )<br>　　　Washington, DC 20416 )<br><br>BRADLEY T. PRIESTMAN, Individually, )<br><br>　　　Serve: )<br>　　　495 SW Rustic Circle )<br>　　　Stuart, FL 34997 )<br><br>DAVID J. DIONNE, Individually, )<br><br>　　　Serve: )<br>　　　2385 6th Street )<br>　　　Vero Beach, FL 32962 )<br><br>and )<br><br>PATRICIA K. DIONNE, Individually, )<br><br>　　　Serve: )<br>　　　104350 Overseas Hwy., Apt. A046 )<br>　　　Key Largo, FL 33037 )<br><br>　　　Defendants. ) | Cause No.:<br><br>Division No.: |

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## PETITION

COMES NOW Plaintiff Equity One Franchisors, LLC ("Equity One" or "Franchisor"), by and through its undersigned counsel, and for its Petition against Defendants Priestman Group, Inc. ("Priestman Group" or "Franchisee"); the U.S. Small Business Administration ("SBA"); and Bradley T. Priestman, David J. Dionne, and Patricia K. Dionne (collectively, "Guarantors") states as follows:

## NATURE OF THE ACTION

1.      This Petition is based on a lien improperly placed on Equity One's assets as Equity One has a franchise relationship with Priestman Group whereby Equity One is the franchisor and Priestman Group is the franchisee.

2.      The franchisor-franchisee relationship is governed by a Franchise Agreement for Priestman Group's operation of a GlobalGreen Insurance Agency ("the Franchise Agreement"). The Franchise Agreement expressly prohibits Priestman Group from transferring any interest in the Franchise Agreement or the GlobalGreen Insurance Agency ("the Franchise") without Equity One's prior written approval, as well as from granting a security interest, pledging, or placing a lien upon its interest in the Franchise Agreement or the Franchise.

3.      In connection with Priestman Group signing the Franchise Agreement, Guarantors signed a Guarantee in which they agreed to personally and unconditionally guarantee, and be personally liable for, all obligations in the Franchise Agreement and for the Franchisee's breach of the Franchise Agreement.

4.      Nevertheless, without Equity One's prior written approval or consent, Priestman Group pledged the assets of Equity One and the Franchise as collateral for a loan from the SBA

Electronically Filed - St. Louis County - August 31, 2022 - 04:51 PM

and the SBA then recorded a lien on Priestman Group's assets, which includes Equity One and Franchise assets.

5.      Equity One and the Franchise have no obligation or debt with the SBA and are not liable for any debt of Priestman Group.  Therefore, this lien is improper.

6.      Despite Equity One's demands, Priestman Group and Guarantors have failed to cure their violations of the Franchise Agreement.  Despite demanding that the SBA remove the lien, it has also failed to do so.

7.      Priestman Group and Guarantors' material breach of the Franchise Agreement and the SBA's failure to remove the lien after being notified of its impropriety have injured, and continue to injure, Equity One as this lien negatively affects its title to its assets, its ability to obtain financing, its ability to convey or sell its assets, its credit, and subjects Equity One to having its assets seized upon Priestman Group's default on its SBA loan.

## PARTIES

8.      Plaintiff Equity One, the franchisor, is a Missouri limited liability company with its principal place of business in St. Louis County, Missouri.

9.      Defendant Priestman Group, the franchisee, is a Florida corporation which, upon information and belief, has its principal place of business in Florida.

10.      Defendant Bradley T. Priestman is an individual residing in Florida and is a Guarantor of the Franchise Agreement.

11.      David J. Dionne is an individual residing in Florida and is a Guarantor of the Franchise Agreement.

12.      Patricia K. Dionne is an individual residing in Florida and is a Guarantor of the Franchise Agreement.

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

13.     Defendant SBA is an agency of the federal government in Washington, D.C. and, upon information and belief, transacts business in every state, including Missouri.

## VENUE AND JURISDICTION

14.     The Franchise Agreement contains a forum selection clause stating that Equity One "may institute any action arising out of or relating to this Agreement in any state or federal court of general jurisdiction in the State of Missouri," and that Priestman Group and Guarantors "irrevocably submit to their jurisdiction and waive any objection to the application of Missouri law or to the jurisdiction or venue in those Missouri courts." *See* a true and accurate copy of the Franchise Agreement, attached and incorporated herein as **Exhibit A**, at Section XIX.G.

15.     The Guarantee also states that Guarantors "hereby consent to the applicability of the venue and jurisdiction provisions in the Franchise Agreement." Exhibit A at p. 35.

16.     This Court has jurisdiction over the SBA pursuant to Missouri Revised Statute § 506.500.1(1) because the SBA transacts business within Missouri.

17.     Venue is proper in this Court under Missouri Revised Statute § 508.010.4 because Equity One was first injured in St. Louis County, Missouri and the damages suffered in this case exceed $25,000.00.

## FACTS

### A.     The Franchise Agreement

18.     On September 10, 2012, Equity One, Priestman Group, and Guarantors entered into a Service Agreement whereby Equity One licensed Priestman Group the right to use and access certain software in connection with a concurrent franchise agreement.  A true and accurate copy of the Service Agreement is attached as **Exhibit B** and incorporated herein.

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

19.     On September 11, 2012, Equity One and Priestman Group entered into a Franchise Agreement for a GlobalGreen Insurance Agency ("the Franchise Agreement") whereby, upon certain terms and conditions, Equity One (Franchisor) licensed Priestman Group (Franchisee) the right to use certain software, marks, and systems in connection with the establishment and operation of the GlobalGreen Insurance Agency ("the Franchise").  Exhibit A.

20.     The Franchise Agreement defines the term "Transfer" as follows:

"Transfer" means and includes any voluntary or involuntary, direct or indirect, assignment, sale, gift conveyance, or other disposition of an Interest including without limitation: (a) transfer of any capital stock, partnership interest, limited liability interest or other ownership Interest of FRANCHISEE or its owners; (b) merger, consolidation or issuance of additional stock or ownership interests; (c) transfer in bankruptcy or dissolution of marriage or otherwise by operation of law or by order of court; (d) transfer to a personal representative upon disability or transfer upon death of a Principal Owner; (e**) the grant or creation of any lien or encumbrance**; or (f) any change of control or management of the Agency.

Exhibit A at Section I.U (emphasis added).

21.     The Franchise Agreement defines the term "Interest" as follows:

"Interest" means: (a) this Agreement or the rights under this Agreement; (b) the rights in the Agency; (c) an individual's rights as an owner of the FRANCHISEE (including any owner's stock, partnership interest, limited liability company, or other ownership interest); (d) any option, call, warrant, conversion rights or rights to acquire any equity or voting interest in FRANCHISEE; (e) **any security interest, lien, pledge, mortgage, or other encumbrance of any of the foregoing Interests**; (f) any sale, lease, sublease, or other transfer or disposition of any of the assets used in the performance of the business at the Agency, whether now owned or hereafter acquired, except in the normal and ordinary course of business, or (h) any right to control, operate or manage the Agency.

Exhibit A at Section I.L (emphasis added).

22.     The Franchise Agreement limits the Transferability of Interest by Franchisee as follows:

**There can be no Transfer of Interest in this Agreement or the [Franchise] without [Franchisor's] prior written approval.** The approval is not intended as an approval to any future Transfer of Interest and no future Transfer of Interest shall

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

be valid without the prior written approval of [Franchisor]. Any such purported Transfer of an Interest will be voidable at [Franchisor's] sole option.

Exhibit A at Section XVII.B (emphasis added).

23.      The Franchise Agreement also imposes the following limitation on liens:

**FRANCHISEE shall not grant a security interest, pledge, or place a lien upon FRANCHISEE'S interest in this Agreement or in the [Franchise]** or in the furniture, fixtures, or equipment used in the business, except that FRANCHISEE shall be permitted to grant a security interest in such furniture, fixtures, and equipment to secure FRANCHISEE'S obligation to the seller of or lender for such furniture, fixtures, and equipment to secure any indebtedness relating to the business.

Exhibit A at Section XIX.P (emphasis added).

24.      In connection with Priestman Group signing the Franchise Agreement, the Guarantors signed a Guarantee that binds the Guarantors as follows:

[E]ach of the undersigned ("GUARANTORS") hereby personally and unconditionally guarantees to [Franchisor] . . . that FRANCHISEE shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Agreement and agrees to be personally bound by, and personally liable for the breach of each and every provision in the Agreement. The GUARANTORS agree to be personally and unconditionally bound by each and every undertaking, agreement and covenant set forth in the Agreement. Further, each of the Guarantor(s) agrees to personally comply with and abide by the . . . provisions in the Agreement relating to the Marks, indemnification and Transfer, to the same extent as and for the same period of time as FRANCHISEE is required to comply with and abide by such covenants and provisions.

Exhibit A at p. 34.

**B.      The Unlawful Collateral and Improper Lien**

25.      Priestman Group obtained a loan from the SBA and pledged as collateral Equity One and Franchise assets that are unrelated to the acquisition of furniture, fixtures, or equipment.

26.      Neither Priestman Group nor Guarantors sought, and Equity One did not give, prior written approval or consent for Priestman Group to grant a security interest in any Equity One or Franchise assets as collateral for a loan from the SBA.

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

27.     On September 8, 2021, the SBA recorded a lien against Priestman Group's pledged collateral. A true and accurate copy of the Uniform Commercial Code ("UCC") Financing Statement is attached as **Exhibit C** and incorporated herein.

28.     Based upon the plain language of the UCC that the SBA filed, Priestman Group pledged collateral for the loan that includes assets of Equity One and the Franchise.

29.     Upon performing a UCC search, Equity One discovered the SBA's lien against assets belonging to Equity One and the Franchise.

30.     Equity One and the Franchise have no obligation or debt with the SBA.

31.     Equity One and the Franchise are not liable for any debt of Priestman Group.

32.     Accordingly, the SBA lien on assets belonging to Equity One and the Franchise is improper.

33.     The improper lien has injured, and continues to injure, Equity One because it negatively affects its title to its assets, its ability to obtain financing, its ability to convey or sell its assets, its credit, and subjects its assets to seizure by the SBA upon Priestman Group's default on its SBA loan.

**C.     Notice and Failed Requests to Cure**

34.     On July 19, 2022, counsel for Equity One notified Priestman Group and Guarantors that Priestman Group had violated the Franchise Agreement's limitations on liens and transferability of interest and asked them to cure the violation by instructing the SBA to withdraw the UCC Financing Statement within thirty (30) days. A true and accurate copy of Equity One's letter to Priestman Group and Guarantors is attached as **Exhibit D** and incorporated herein.

35.     On July 22, 2022, counsel for Equity One notified the SBA that its lien on Priestman Group's collateral was an improper lien on Equity One and Franchise assets and asked it to

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

terminate and/or amend the UCC Financing Statement to remove the lien within ten (10) days. A true and accurate copy of Equity One's letter to the SBA is attached as **Exhibit E** and incorporated herein.

36.     As of the date of this Petition, none of the Defendants have taken any action to cure their violations or eliminate the improper UCC filing.

<div align="center">

**COUNT I: BREACH OF CONTRACT**
**(Priestman Group)**

</div>

37.     Equity One incorporates by reference Paragraphs 1-36 as if fully set forth herein.

38.     Equity One and Priestman Group are bound by the terms of the valid and enforceable Franchise Agreement.

39.     Equity One fully performed pursuant to the Franchise Agreement, including licensing Priestman Group the right to use and access certain software, marks, and systems in connection with the establishment of the Franchise and providing Priestman Group and the Guarantors with notice of the default and an opportunity to cure the default pursuant to Exhibit D.

40.     Priestman Group materially breached Sections XVII.B and XIX.P of the Franchise Agreement by pledging Equity One and Franchise assets as collateral for a loan without Equity One's prior written approval, resulting in an improper lien against Equity One and Franchise assets.

41.     As a direct and proximate result of Priestman Group's breach, Equity One has been damaged.

WHEREFORE, Equity One prays for judgment in its favor and against Priestman Group in Count I in an amount to be determined at trial but in excess of $25,000, plus pre-judgment and post-judgment interest, contractual attorneys' fees, and for such other and further relief as the Court deems just and appropriate.

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## COUNT II: BREACH OF CONTRACT
### (Guarantors)

42.     Equity One incorporates by reference Paragraphs 1-36 as if fully set forth herein.

43.     Equity One and Guarantors are bound by the terms of the valid and enforceable Guarantee that is attached to the Franchise Agreement. Exhibit A at p. 34-35.

44.     Equity One fully performed pursuant to the Franchise Agreement, including licensing Priestman Group the right to use and access certain software, marks, and systems in connection with the establishment of the Franchise and providing Priestman Group and the Guarantors with notice of the default and an opportunity to cure the default pursuant to Exhibit D.

45.     Guarantors materially breached the Guarantee because they failed to cure Priestman Group's breach of Sections XVII.B and XIX.P of the Franchise Agreement, and because they failed to "personally comply with and abide by the . . . provisions in the Agreement relating to . . . Transfer, to the same extent as . . . FRANCHISEE…." Exhibit A at p. 34.

46.     As a direct and proximate result of Guarantors' breach, Equity One has been damaged.

WHEREFORE, Equity One prays for judgment in its favor and against Guarantors in Count II in an amount to be determined at trial but in excess of $25,000, plus pre-judgment and post-judgment interest, contractual attorneys' fees, and for such other and further relief as the Court deems just and appropriate.

## COUNT III: PRIMA FACIE TORT
### (Priestman Group, Guarantors, and SBA)

47.     Equity One incorporates by reference Paragraphs 1-36 as if fully set forth herein.

48.     Priestman Group intentionally granted the SBA a security interest in Equity One's assets.

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

49.     Guarantors guaranteed Priestman Group's performance of all provisions of the Franchise Agreement, agreed to be held personally liable for Priestman Group's breaches of the Franchise Agreement, and agreed to be abide by the provisions in the Franchise Agreement to the same extent as Priestman Group. Exhibit A at p. 34-35.

50.     The SBA intentionally placed a lien on Priestman Group's collateral by recording the UCC Financing Statement.

51.     Equity One notified Priestman Group and Guarantors that they were in violation of Sections XVII.B and XIX.P of the Franchise Agreement and asked them to cure the violation by instructing the SBA to withdraw the UCC Financing Statement.

52.     Equity One notified the SBA that its lien on Priestman Group's collateral was an improper lien on assets that did not belong to Priestman Group and asked it to terminate and/or amend the UCC Financing Statement to remove the lien.

53.     All Defendants have intentionally ignored Equity One's requests to take any action to remove the UCC Financing Statement and abate the injury they have caused Equity One.

54.     Defendants' actions have damaged Equity One.

55.     Priestman Group and Guarantors lack justification for their actions, which violate their contractual obligations.

56.     The SBA lacks justification for its action because it is on notice that its UCC Financing Statement is improperly placed on assets that do not belong to its debtor.

WHEREFORE, Equity One prays for judgment in its favor and against Priestman Group, Guarantors, and the SBA in Count III in an amount to be determined at trial but in excess of $25,000, plus pre-judgment and post-judgment interest, contractual attorney fees (as to Priestman

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

Group and Guarantors), and for such other and further relief as the Court deems just and appropriate.

## COUNT IV: SLANDER OF TITLE
### (SBA)

57.     Equity One incorporates by reference Paragraphs 1-36 as if fully set forth herein.

58.     On September 8, 2021, the SBA filed a publicly available UCC Financing Statement to perfect a lien against Priestman Group's collateral.

59.     The UCC Financing Statement is false because it attaches a lien to Equity One and Franchise assets even though Equity One and the Franchise are not indebted to the SBA.

60.      Equity One notified the SBA that the UCC Financing Statement recorded an improper lien on assets not belonging to Priestman Group and asked the SBA to terminate and/or amend the false UCC Financing Statement accordingly.

61.     The SBA intentionally and maliciously ignored Equity One's request and left the false UCC Financing Statement available to the public.

62.     The false UCC Financing Statement filing has damaged Equity One.

WHEREFORE, Equity One prays for judgment in its favor and against the SBA in Count IV in an amount to be determined at trial but in excess of $25,000, plus pre-judgment and post-judgment interest, and for such other and further relief as the Court deems just and appropriate.

## COUNT V: DECLARATORY JUDGMENT
### (Priestman Group, Guarantors, and SBA)

63.     Equity One incorporates by reference Paragraphs 1-36 as if fully set forth herein.

64.     An actual and justiciable controversy that is ripe for judicial determination has arisen between Equity One, Priestman Group, the Guarantors, and the SBA concerning the UCC

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

Financing Statement that perfected a lien on Priestman Group's assets, which impermissibly included assets owned by Equity One, which is not indebted to the SBA.

65.     Despite Equity One's notice and requests to cure their respective violations, neither Priestman Group, the Guarantors, nor the SBA have taken any actions to effect the withdrawal, termination, and/or amendment of the improper UCC Financing Statement.

66.     Equity One has legally protectable interests in its title to its assets, its ability to obtain financing, its ability to convey or sell its assets, its credit, and its right to protect its assets from seizure by the SBA upon Priestman Group's default on its loan.

67.     There is no adequate remedy at law because, as long as the improper UCC Financing Statement exists, Equity One will continue to be damaged.

WHEREFORE, Equity One prays for a declaration in Count V that the UCC Filing Statement is void and unenforceable against Equity One and Franchise assets, and for such other and further relief as the Court deems just and appropriate.

### COUNT VI: INJUNCTIVE RELIEF
### (Priestman Group, Guarantors, and SBA)

68.     Equity One incorporates by reference Paragraphs 1-36 as if fully set forth herein.

69.     Equity One has been irreparably damaged by the false and publicly available UCC Financing Statement that recorded a lien against its assets in favor of the SBA, even though Equity One is not indebted to the SBA.

70.     The actions of Priestman Group, the Guarantors, and the SBA have jeopardized Equity One's interests in and rights to its title to its assets, its ability to obtain financing, its ability to convey or sell its assets, its credit, and subjects its assets to SBA seizure upon Priestman Group's default on its SBA loan.

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

71.     There is no adequate remedy at law that will stop Priestman Group, the Guarantors, and the SBA's misconduct from further damaging Equity One.

WHEREFORE, Equity One prays in Count VI that the Court grant Equity One temporary, preliminary, and permanent injunctive relief requiring:

(a) Priestman Group and/or the Guarantors to contact the SBA and instruct the SBA to withdraw the UCC Financing Statement;

(b) Priestman Group and/or the Guarantors to provide Equity One with copies of all correspondence with, and documents provided to, the SBA, pursuant to the terms of the Franchise Agreement;

(c) the SBA to withdraw, terminate, and/or amend the UCC Financing Statement so that there is no lien against Equity One and Franchise assets;

(d) award Equity One its costs and attorneys' fees per the Franchise Agreement; and

(e) grant such other and further relief as the Court deems just and appropriate.

Dated: August 31, 2022                    Respectfully submitted,

                                          GREENSFELDER, HEMKER & GALE, P.C.


                                          By  /s/ Dawn M. Johnson
                                                Dawn M. Johnson, # 41991 (MO)
                                                dmj@greensfelder.com
                                                Randall F. Scherck, # 31085 (MO)
                                                rscherck@greensfelder.com
                                                Tali L. Katz, # 68788 (MO)
                                                tkatz@greensfelder.com
                                                10 South Broadway, Suite 2000
                                                St. Louis, Missouri 63102
                                                Telephone: (314) 241-9090
                                                Facsimile: (314) 345-4792

                                          *Attorneys for Plaintiff Equity One Franchisors, LLC*

4876-4839-3007

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

# EXHIBIT A

**EQUITY ONE FRANCHISORS, LLC**

# FRANCHISE AGREEMENT
## FOR A
# GLOBALGREEN INSURANCE AGENCY®

### TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | DEFINITIONS | 1 |
| II. | GRANT OF FRANCHISE | 4 |
| III. | PROVIDERS | 5 |
| IV. | LOCATION AND LEASE | 6 |
| V. | INITIAL FRANCHISE FEE | 6 |
| VI. | TERM | 6 |
| VII. | FEES | 7 |
| VIII. | ADVERTISING. | 9 |
| IX. | OBLIGATIONS OF GLOBAL | 10 |
| X. | OBLIGATIONS OF FRANCHISEE | 11 |
| XI. | PROPRIETARY MARKS | 15 |
| XII. | CONFIDENTIAL INFORMATION AND TRADE SECRETS | 17 |
| XIII. | NON-SOLICITATION AND NON-COMPETITION | 17 |
| XIV. | DEFAULT AND TERMINATION | 19 |
| XV. | SOURCES OF PRODUCTS | 23 |
| XVI. | CONFIDENTIAL OPERATIONS MANUAL AND CHANGES | 25 |
| XVII. | TRANSFERABILITY OF INTEREST | 25 |
| XVIII. | INDEPENDENT CONTRACTOR/INDEMNIFICATION | 27 |
| XIX. | MISCELLANEOUS PROVISIONS | 28 |
| XX. | WARRANTIES AND REPRESENTATIONS OF FRANCHISEE | 31 |
| XXI. | CAVEAT | 32 |
| XXII. | GLOBAL'S LIMITATION OF LIABILITY | 33 |

GUARANTEE
| | |
|---|---|
| EXHIBIT I | SITE |
| EXHIBIT II | PROVIDERS |
| EXHIBIT III | NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT |
| EXHIBIT IV | IRREVOCABLE POWER OF ATTORNEY |
| EXHIBIT V | STATE LAW ADDENDUM |
| EXHIBIT VI | FRANCHISEE QUESTIONNAIRE |

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

**EQUITY ONE FRANCHISORS, LLC**

# FRANCHISE AGREEMENT
## FOR A
## GLOBALGREEN INSURANCE AGENCY®

This Agreement entered into this _____ *i* _____ day of September, 2012, by and between EQUITY ONE FRANCHISORS, LLC a Missouri limited liability company (hereinafter referred to as "GLOBAL"), and PRIESTMAN INSURANCE GROUP, INC., a Florida corporation (hereinafter referred to as "FRANCHISEE").

WHEREAS, GLOBAL and its "Affiliates" (as defined below) have developed and refined the uniform formats, systems, and standards for operating GlobalGreen Insurance Agencies (as defined below);

WHEREAS, GLOBAL has obtained the right to license the Marks (as defined below) and the System (as defined below) in connection with the operation of a GlobalGreen Insurance Agency;

WHEREAS, FRANCHISEE recognizes the benefits to be derived from being identified with the Marks and being able to utilize the System and desires a franchise to establish and operate a GlobalGreen Insurance Agency using the Marks and System and GLOBAL is willing to grant such a franchise on the terms and conditions hereinafter set forth; and

WHEREAS, FRANCHISEE understands that it will be a Subagent (as defined below) of the various Providers (as defined below) and shall be subject to the requirements and obligations imposed by said Providers on FRANCHISEE;

NOW, THEREFORE, the parties agree as follows:

## I.   DEFINITIONS

For purposes of this Agreement, the following terms shall have the meaning as set forth below:

A.   "Affiliate(s)" means individually or collectively any entities controlling, controlled by, or under common ownership with GLOBAL including but not limited to Equity One Insurance Agency, L.L.C.

B.   "Agency" means the GlobalGreen Insurance Agency which is the subject of this Agreement.

C.   "Agency Software" means the EPIC Online software licensed by Applied Systems, Inc. that FRANCHISEE will be given access to through the Internet pursuant to the agreement it will enter into with Equity One Insurance Agency, L.L.C. or any other software GLOBAL shall so designate in the future.

#1010939.14

1

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

D.      "Chargeback" means the amount the Providers will charge FRANCHISEE back for any commissions, revenues, or insufficient funds checks, or the like, in the event of a policy premium reduction or policy cancellation.

E.      "Customer" means any existing customers or identified prospective customers (of FRANCHISEE, GLOBAL, its Affiliates or other franchisee) with whom FRANCHISEE or its employees or agents have had direct or indirect contact or about whom FRANCHISEE or its employees or agents have learned confidential information by virtue of the operation of the Agency other than any customers with whom FRANCHISEE had no contact within the two (2) years preceding the expiration, Transfer or termination of this Agreement.

F.      "E & O Program" means errors and omissions insurance for the Agency. FRANCHISEE must be underwritten and qualify for E & O Program.

G.      "EBP Agent" means the agent of record for Employee Benefits Products (as defined below). The EBP Agent will enable FRANCHISEE to provide Employee Benefits Products to its customers.

H.      "Employee Benefits Products" means group and individual health, life, dental, disability, long term care, supplemental benefits and 401(k) insurance.

I.      "Equity One" means Equity One Insurance Agency, L.L.C.

J.      "FRANCHISEE" shall be deemed to include: (a) those persons and their spouses owning any interest in a corporate or a limited liability company franchisee; (b) all partners and their spouses owning any interest in a partnership franchisee; (c) the individual who owns a sole proprietorship franchisee and his or her spouse; (d) the guarantors of this Agreement; and (e) the Principal Owner (as hereinafter defined). For purposes of determining ownership in a franchise, the interests owned by a husband and wife shall be considered one interest, and both husband and wife shall be obligated hereunder, regardless of whether the interest is owned by just one spouse or both spouses.

K.      "GlobalGreen Insurance Agency" means any business operating under the Marks and System including those owned by GLOBAL, its Affiliates or franchisees of GLOBAL or its Affiliates.

L.      "Interest" means: (a) this Agreement or the rights under this Agreement; (b) the rights in the Agency; (c) an individual's rights as an owner of the FRANCHISEE (including any owner's stock, partnership interest, limited liability company, or other ownership interest); (d) any option, call, warrant, conversion rights or rights to acquire any equity or voting interest in FRANCHISEE; (e) any security interest, lien, pledge, mortgage, or other encumbrance of any of the foregoing Interests; (f) any sale, lease, sublease, or other transfer or disposition of any of the assets used in the performance of the business at the Agency, whether now owned or hereafter acquired, except in the normal and ordinary course of business; or (h) any right to control, operate or manage the Agency.

M.      "Marks" means such service marks, trademarks, trade dress, trade names and copyrights, and all configurations and derivations, as may presently exist, or which may be modified, changed, or acquired by GLOBAL, in connection with the operation of the business contemplated by this Agreement. Marks include but are not limited to "GlobalGreen Insurance Agency" and "GlobalGreen Insurance Agency and design".

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

N.      "Manual" means the Confidential Operations Manual, including all updates, supplements, bulletins, etc., in any form including without limitation, written or electronic form, all of which may be modified from time to time.

O.      "Principal Owner" means FRANCHISEE if FRANCHISEE is a sole proprietor, the majority shareholder of FRANCHISEE if FRANCHISEE is a corporation, a partner owning a major share of the partnership if FRANCHISEE is a partnership or the member owning the majority interest of a limited liability company.

P.      "Provider" means the various insurance companies that will underwrite policies for customers of GLOBAL, GLOBAL's Affiliates, their franchisees or licensees and/or FRANCHISEE. In addition, "Provider" also includes the various companies that provide or will provide financial or other services to customers of GLOBAL, GLOBAL'S Affiliates, their franchisees and licensees and/or FRANCHISEE. Any of the Providers may be changed from time to time. A current list of Providers is set forth in Exhibit II attached hereto but is subject to change.

Q.      "Provider Agreement" means the non-exclusive master agreement between GLOBAL, or its Affiliates and the EBP Agent (as defined above) that grants GLOBAL, its Affiliates or EBP Agent the right to solicit, quote, offer, and bind insurance and obtain orders for Providers' products and services. Provider Agreement also includes the non-exclusive master agreement between GLOBAL and its Affiliates that grants GLOBAL or its Affiliates the right to provide additional financial products and services to customers. The Provider Agreements are available for inspection at GLOBAL's main office upon reasonable request of the FRANCHISEE.

R.      "Revenues" means the amount of commissions or fees from insurance services or from other activities of the Agency (including but not limited to those derived from Optional Programs, if any) that GLOBAL and its Affiliates are paid on behalf of FRANCHISEE for products and services purchased by FRANCHISEE's customers, as well as any commissions or fees paid directly to FRANCHISEE. FRANCHISEE understands that some or all of the Providers have the right to charge different commission rates or change the commission rates at any time in accordance with the terms of their Provider Agreements with GLOBAL, its Affiliates or the EBP Agent.

S.      "SMA Fee" means the monthly fee that FRANCHISEE will pay to Equity One for "support, maintenance and access" to the Agency Software pursuant to the Service Agreement FRANCHISEE will enter into with Equity One. The SMA Fee must be paid for each license. Only one user can use the software at a time. Therefore, if FRANCHISEE will have more than one user using the software at the same time, FRANCHISEE will have to pay a SMA Fee for each such user.

T.      "System" means a specially developed method of operating a business for agents who will specialize in the sale of various forms of insurance or other financial services under the Marks, using certain business formats, methods, procedures designs, marketing and sales procedures, standards and specification which may be changed, improved, modified and further developed by GLOBAL from time to time.

U.      "Transfer" means and includes any voluntary or involuntary, direct or indirect, assignment, sale, gift conveyance, or other disposition of an Interest including without limitation: (a) transfer of any capital stock, partnership interest, limited liability interest or other ownership Interest of

#1010939.14

3

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

FRANCHISEE or its owners; (b) merger, consolidation or issuance of additional stock or ownership interests; (c) transfer in bankruptcy or dissolution of marriage or otherwise by operation of law or by order of court; (d) transfer to a personal representative upon disability or transfer upon the death of a Principal Owner; (e) the grant or creation of any lien or encumbrance; or (f) any change of control or management of the Agency.

## II.    GRANT OF FRANCHISE

A.    **Grant of Right to Use System and Marks.**  Subject to the terms and conditions herein, GLOBAL hereby grants to FRANCHISEE, and FRANCHISEE hereby accepts from GLOBAL, a non-exclusive right to use the System and Marks to open and operate one (and only one) GlobalGreen Insurance Agency to be located at the location listed in Exhibit I attached hereto ("Site"). If no Site is specified at the time of execution of this Agreement, an appropriate location will be specified when it is determined. If a particular Site is not available or if a satisfactory lease for the Site cannot be obtained, GLOBAL will consider alternate Sites, provided that the alternate Sites are subject to GLOBAL'S approval.

FRANCHISEE is not granted any exclusive right to operate the Agency in any particular area. FRANCHISEE, GLOBAL, its Affiliates and other franchisees or licensees are permitted to solicit customers for the sale of products and services, subject only to the restrictions set forth by any Provider. However, FRANCHISEE cannot interfere with customers of GLOBAL, its Affiliates, or their franchisees and licensees. GLOBAL and its Affiliates are free to operate or license others to operate GlobalGreen Insurance Agencies anywhere including in close proximity to the Agency.

If GLOBAL engages in electronic commerce through any Internet, World Wide Web or other computer network site, and receives inquiries for any insurance products that GlobalGreen Insurance Agencies sell, GLOBAL will refer the person making the inquiry to a GlobalGreen Insurance Agency office, which is in good standing and which is located near the address from which the inquiry was received. GLOBAL is not obligated to refer the inquiry to any particular agency, nor is GLOBAL required to determine which office is closest to the address from which the inquiry was received.

B.    **Additional Locations.**  In order for FRANCHISEE to operate a GlobalGreen Insurance Agency at an additional location, a separate Franchise Agreement must be signed and an Initial Franchise Fee will be required.

C.    **Retained Rights.**  GLOBAL, on behalf of itself and its Affiliates, reserves all rights not specifically granted to the FRANCHISEE pursuant to this Agreement, including but not limited to the following: the right to operate and to franchise or license to third parties the right to operate businesses using the System and Marks or any other system and marks anywhere regardless of the proximity to the Agency; and the rights to sell products or services in any channel of distribution, including but not limited to the Internet, telemarketing or other direct marketing sales and to provide consulting services using the System and Marks. Providers are free to open or license others to sell its products and services that may be competitive with the Agency or in close proximity to the Agency. GLOBAL and its Affiliates are not required to pay FRANCHISEE if they exercise any of the rights specified in this Section II.

D.    **Additional Rights of GLOBAL.**  GLOBAL and its Affiliates may sell themselves, their assets, their proprietary marks and/or their system to a third party; may go public; may engage in a private placement of some or all of its securities; may merge, acquire other corporations or entities, or be

#1010939.14

4

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

acquired by another corporation or entity; and/or may undertake a refinancing, recapitalization, leveraged buyout or other economic or financial restructuring. With regard to any of the above sales, assignments and dispositions, FRANCHISEE expressly and specifically waives any claims, demands or damages arising from or related to the loss of the Marks (or any variation thereof) and System and/or the loss of association with or identification of "GlobalGreen Insurance Agency" as a franchisee under this Agreement. GLOBAL and its Affiliates are not required to pay FRANCHISEE if they exercise any of the rights specified above. If GLOBAL assigns its rights in this Agreement, nothing herein shall be deemed to require GLOBAL to remain in the insurance business or to offer or sell any products or services to FRANCHISEE.

## III.    PROVIDERS

A.      **Appointment as Subagent.** GLOBAL or its Affiliates are authorized agents for various Providers of property and casualty insurance and the EBP Agent will be the authorized agent for various Providers of Employee Benefits Products pursuant to the terms and conditions set forth in various Provider Agreements. GLOBAL  has the right to use more than one EBP Agent and to change EBP Agents in its sole discretion. The terms of the agreements with these EBP Agents may differ and change from time to time.

GLOBAL, its Affiliates or the EBP Agent will subcontract a portion of their responsibilities under the Provider Agreements to FRANCHISEE and FRANCHISEE will be permitted to sell insurance of such Providers with GLOBAL, its Affiliate or the EBP Agent being the agent of record with such Providers; however, FRANCHISEE's appointment is conditioned upon: (1) Provider's approval of FRANCHISEE, if necessary; and (2) FRANCHISEE's execution of and agreement to be bound by and comply with the terms and conditions set forth in any agreement required by the Provider, if any; and (3) FRANCHISEE's satisfaction of any conditions imposed by the Provider and compliance with all of the requirements imposed by the Provider. GLOBAL will advise when the appointment of Subagent is effective and FRANCHISEE will be permitted to solicit, quote and bind insurance for those lines of insurance and classes of business permitted by such Providers in accordance with guidelines and conditions imposed by Providers, subject to the right of Providers to amend any such authority with respect to lines of insurance, classes of business, products, coverages or limits, and subject to the rights of the Providers to cancel at any time any policy placed with it.

B.      **Change of Providers; Agreement Subject to Termination.** FRANCHISEE acknowledges that GLOBAL and the EBP Agent have the right to add new Providers and/or to cease doing business with any Providers, in GLOBAL'S sole and absolute discretion. Also, the Provider may require FRANCHISEE to sign a document in order to become or continue to be a Subagent for the Provider. FRANCHISEE recognizes and understands that the Provider Agreements are subject to termination by the Providers and that a Provider may cancel or terminate its relationship with FRANCHISEE. Any termination or expiration of a Provider Agreement shall automatically result in a termination of FRANCHISEE's rights as a Subagent of that particular Provider. GLOBAL, GLOBAL's Affiliates and the EBP Agent are not liable for any actions of or termination by any Provider. FRANCHISEE understands that some Providers may withhold an appointment, withdraw an appointment, and/or make a partial appointment for specific lines of insurance.

C.      **Controlling Terms.** The terms and conditions set forth in this Agreement describe the rights and obligations between GLOBAL and FRANCHISEE. Providers are not a party to this Agreement. FRANCHISEE is required to comply with the terms of this Agreement and any agreement

#1010939.14

5

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

that a Provider or an EPB Agent require a FRANCHISEE to execute as well as the instructions, policies, rules and regulations that each Provider requires in order to be a Subagent in good standing. **Notwithstanding anything contained herein to the contrary, if anything contained in this Agreement conflicts with the obligations imposed on FRANCHISEE pursuant to the requirements of a Provider, the Provider's terms will apply with respect to that Provider, to the extent of any such inconsistency.**

## IV.   LOCATION AND LEASE

A.    **Site Selection and Leasing.**  Generally, FRANCHISEE shall lease the Site for the Agency from a landlord.   The Site and lease shall be subject to the consent of GLOBAL and FRANCHISEE, and if necessary, the Provider.  FRANCHISEE will select the proposed site for the location of the Agency and GLOBAL will advise FRANCHISEE whether the proposed site is acceptable. GLOBAL is not responsible for and does not make any warranty regarding the suitability of the site, and GLOBAL's consent to a site means only that the site meets GLOBAL's minimum standards for an acceptable site.  FRANCHISEE is responsible for investigating the site and having any lease or sale contract for the site reviewed and approved by FRANCHISEE's attorney.

B.    **Relocation.**  So long as FRANCHISEE is not in default under this Agreement, and provided that none of the Providers prohibit FRANCHISEE from relocating, FRANCHISEE may relocate the Agency with the prior written consent of GLOBAL and the Providers to a location acceptable to GLOBAL in GLOBAL's sole discretion.  Regardless of the reason for relocating, FRANCHISEE agrees to pay all costs and expenses of relocating the Agency.

## V.   INITIAL FRANCHISE FEE

Upon execution of this Agreement, FRANCHISEE will pay GLOBAL an Initial Franchise Fee of Ten Thousand Dollars ($10,000.00) ("Initial Franchise Fee").  If FRANCHISEE, after using its best efforts, cannot obtain approval to become a Subagent for at least four (4) Providers that underwrite insurance policies in the area where the Agency is located, within ninety (90) days from the date this Agreement is executed, GLOBAL shall have the right to terminate this Agreement.  In such event, GLOBAL will return to FRANCHISEE seventy percent (70%) of the Initial Franchise Fee paid by FRANCHISEE and may retain thirty percent (30%) of the Initial Franchise Fee paid by FRANCHISEE for lost opportunities and expenses.  Except as provided herein, the Initial Franchise Fee is not refundable in whole or in part.

## VI.   TERM

The term of this Agreement shall commence on the date of this Agreement, and unless sooner terminated in accordance with the provisions hereof, shall expire ten (10) years from the date hereof.  If FRANCHISEE is in full compliance with the terms of this Agreement, FRANCHISEE shall have the right to renew for four (4) additional terms of ten (10) years each, provided that FRANCHISEE: (a) is not in default under this Agreement; (b) executes the most current franchise agreement being utilized by GLOBAL (which may contain significantly different terms than this Agreement); (c) is able to retain possession of the Site or obtain a new Site acceptable to GLOBAL and Providers; (d) is in good standing as a Subagent with at least four (4) of the Providers that underwrite insurance policies in the area where the Agency is located; (e) if required, at least four (4) of these Providers consent to the renewal; (f) pays GLOBAL a renewal fee of fifty percent (50%) of the then current Initial Franchise Fee; (g) remodels the

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

Agency to meet the current standards of decor as set forth in the Manual; (h) signs a general release, as permitted by applicable law, in a form satisfactory to GLOBAL, of any and all claims against GLOBAL and its Affiliates, and their members, managers, shareholders, officers, directors, employees and agents and (i) complies with the other terms of this paragraph. Notwithstanding anything contained herein to the contrary, GLOBAL may, in its discretion, refuse to renew this Agreement if FRANCHISEE has been notified of any default (even if subsequently cured) under this Agreement more than two (2) times during the initial term or more than two (2) times during any renewal term, even if FRANCHISEE is not in default at the time of such renewal. FRANCHISEE agrees to give GLOBAL not less than six (6) nor more than eighteen (18) months written notice of an election to renew the franchise, prior to the end of the initial term and GLOBAL will comply with any notice requirements imposed on it by applicable law with regard to renewals. If FRANCHISEE fails to give such notice to renew, GLOBAL shall have the right, in its discretion, to treat such failure as an election not to renew the franchise. If any termination or expiration of the term of this Franchise Agreement would violate any applicable law, GLOBAL may reinstate or extend the term for the purpose of complying with the law. Notwithstanding anything herein to the contrary, if FRANCHISEE continues to operate the Agency following the expiration of this Agreement, the continuation will be a month-to-month extension of this Agreement, unless otherwise set forth in writing. All provisions of this Agreement will apply while FRANCHISEE continues to operate the Agreement; however, this Agreement will then be terminable by either party on 30 days written notice to the other party, with all post-termination provisions remaining in effect after such termination.

## VII.   FEES

A.      **Royalty Fee**. FRANCHISEE shall pay to GLOBAL a continuing monthly royalty fee of fifteen percent (15%) of the Revenues from the prior month ("Royalty Fee"). For example, the monthly Royalty Fees due by September 20th are based on the Revenues collected during the month of August. Notwithstanding the foregoing, so long as FRANCHISEE is in full compliance with the terms of this Agreement, if FRANCHISEE achieves Revenues in excess of One Million Dollars ($1,000,000.00) in any calendar year, the Royalty Fees for each month of the immediately following calendar year will be twelve percent (12%) of Revenues instead of fifteen percent (15%) of Revenues. If the Revenues in any subsequent calendar year do not exceed One Million Dollars ($1,000,000.00) the Royalty Fees for each month of the following calendar year will return to fifteen percent (15%) of Revenues instead of twelve percent (12%).

B.      **Advertising Fee**. If GLOBAL establishes an Advertising Fund, FRANCHISEE shall pay to GLOBAL a continuing monthly Advertising Fee of up to one percent (1%) of Revenue from the prior month ("Advertising Fee") which shall be deposited into the Advertising Fund. GLOBAL has the right to increase the Advertising Fee, but will not increase it more than one-fourth percent (¼%) per year. In no event will the Advertising Fee be greater than two percent (2%) of Revenues.

C.      **Administration Fee.** FRANCHISEE shall pay to GLOBAL a monthly administration fee of $175.00 per month which is subject to an increase of no more than $25 per month on an annual basis ("Administration Fee").

D.      **Time and Manner of Payments**. Revenues earned by FRANCHISEE on property and casualty insurance shall be as determined by the Providers and paid by the Providers to GLOBAL or its Affiliates, as agent of record. Revenues earned by FRANCHISEE on Employee Benefits Products shall be determined by the Providers and generally be paid to the EBP Agent who will deduct the amount the EBP Agent is entitled to retain and pay the balance of such revenues to GLOBAL or its Affiliates. The

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

amount of revenues that the EBP Agent is entitled to retain will be determined in accordance with the agreement regarding same between GLOBAL or its Affiliates and the EBP Agent and will be more fully described in the Manual.  GLOBAL and its Affiliates shall deduct from the Revenues GLOBAL and its Affiliates collect from the Providers and the EBP Agent on behalf of FRANCHISEE all Royalty Fees, Advertising Fees, Chargeback amounts, Administration Fees, SMA Fees and any other amounts owed by FRANCHISEE to GLOBAL or its Affiliates; provided that the Chargeback amounts will be reduced by the percentage of Royalty Fee that FRANCHISEE paid on such Chargeback amount (i.e., if there is a Chargeback of $500.00 and FRANCHISEE had paid a Royalty of $75.00, the Chargeback would be $425.00).  GLOBAL and/or its Affiliates will pay FRANCHISEE, by the 20th of each month, the balance of the amount of Revenue GLOBAL and its Affiliates collected on FRANCHISEE's behalf in the prior month after retaining the Royalty Fee, Advertising Fee, Chargeback amounts, the Administration Fee, SMA Fee and any other amounts owed by FRANCHISEE to GLOBAL or its Affiliates.  At such time GLOBAL shall also provide FRANCHISEE with a statement of accounting regarding the Revenues.  If the Revenues collected by GLOBAL and its Affiliates are not sufficient to cover the monthly Royalty Fee, Advertising Fee, Chargeback amounts, Administration Fee, SMA Fees and any other amounts owed by FRANCHISEE to GLOBAL, GLOBAL or its Affiliates shall notify FRANCHISEE in writing by the 15th day of said month, and FRANCHISEE will pay the deficiency to GLOBAL by the 20th day of the month.  If FRANCHISEE receives any payments directly from a Provider, FRANCHISEE shall promptly forward such payment to GLOBAL or its Affiliates.

E.     **Interest on Late Payments**.  If Royalty Fees, Advertising Fees, Administration Fees, SMA Fees, Chargeback amounts or any other amounts due are not paid when due, GLOBAL shall have the right to charge interest on late payments equal to the lesser of one and one-half per cent (1 ½%) per month or the maximum legal rate in the jurisdiction where the Agency is located.  GLOBAL's right to interest is in addition to any other remedies that GLOBAL may have.

F.     **No Right of Offset**.  FRANCHISEE agrees to make prompt payment, without deduction or set-off, of all charges which are properly due in addition to the Royalty Fees, Advertising Fees, SMA Fees, Administration Fees and Chargeback amounts set forth above.  Such payments cannot be withheld on grounds of non-performance by GLOBAL, its Affiliates or the EBP Agent of any obligations hereunder.

G.     **Under-Reporting**.  If it is found that FRANCHISEE under-reported Revenue, FRANCHISEE will reimburse GLOBAL for the amount of the Royalty Fees and Advertising Fees that would have been billed had sales been reported accurately, plus interest on those amounts at the rate of the lesser of one and one-half  percent (1 ½%) per month or the maximum legal rate in the jurisdiction where the Agency is located.  In addition, if the amount of Revenues reported for any calendar year are less than Ninety-Eight percent (98%) of the actual Revenues for that period, FRANCHISEE agrees to reimburse GLOBAL for all costs of the investigation or audit that uncovered the under-reported sales, including salaries, professional fees, travel, meals and lodging.

H.     **CSR Fee**.  If FRANCHISEE wants to have our affiliate, Equity One Insurance Agency, L.L.C., provide customer service representative support and Equity One Insurance Agency, L.L.C. is willing to do so, FRANCHISEE will pay Equity One Insurance Agency, L.L.C. a CSR Fee.  The CSR Fee is a hourly fee based on the number of hours and the representative(s) providing the assistance. Currently, the CSR Fee ranges from $50 to $100 per hour per representative.  Equity One Insurance Agency, L.L.C. has the right to change the CSR Fee at any time upon 30 days prior written notice to

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

FRANCHISEE. Further, Equity One Insurance Agency, L.L.C. has the right to discontinue this program at any time.

I. **Taxes.** FRANCHISEE agrees to indemnify and/or reimburse GLOBAL and our Affiliates for all capital, gross receipts, sales, and other taxes and assessments imposed by any applicable state or local governmental authority as a result of the conduct of the Agency or the license of any of GLOBAL or its Affiliates' intangible property to FRANCHISEE (whether required to be paid by GLOBAL or its Affiliates, withheld by FRANCHISEE or otherwise). FRANCHISEE's obligation to indemnify or reimburse GLOBAL or its Affiliates for these taxes does not extend to income-type taxes which a state or local government imposes on GLOBAL or its Affiliates' income.

## VIII. ADVERTISING

A. **Advertising Fund.** GLOBAL reserves the right to establish an Advertising Fund. If so, FRANCHISEE shall pay GLOBAL a monthly Advertising Fee which will be deposited into the Advertising Fund. The Advertising Fund will be used to provide advertising and promotional activities GLOBAL deems beneficial to the System. The Advertising Fund can be used for the payment of all costs associated with the creation, production, distribution, media placement and administration of local, state, regional or national advertising programs and for any taxes incurred on the fund in the Advertising Fund. FRANCHISEE acknowledges that some of the funds may be used for the sale, promotion, travel and other expenses relating to the sale and attempted sale of new franchises. GLOBAL has the right to direct all advertising and promotional programs, and has sole discretion to select and approve of advertising agencies, creative concepts, materials, and media placements and allocations used in the programs. GLOBAL also retains the sole right to formulate and make policy decisions concerning all aspects of the advertising and franchise expansion program, consistent with applicable law. FRANCHISEE acknowledges that the Advertising Fund is intended to maximize general public recognition and acceptance of the Marks for the benefit of the System, including GlobalGreen Insurance Agencies owned and operated by GLOBAL's Affiliates. GLOBAL and its designees undertake no obligation in administering the Fund to make expenditures for FRANCHISEE that are equivalent or proportionate to FRANCHISEE's contributions, or to ensure that FRANCHISEE benefits directly or pro rata from the placement of advertising. If GLOBAL spends less than the total of all contributions to the Fund during any fiscal year, it has the right to retain those contributions for use in subsequent years. An unaudited summary report on the operation of the Fund will be available to FRANCHISEE on request within one hundred and twenty (120) days after fiscal year end.

B. **FRANCHISEE's Own Advertising**. FRANCHISEE must submit all of its own advertising and sale promotion materials to GLOBAL or its advertising agency, for prior consent at least twenty (20) days prior to use. If FRANCHISEE does not receive written disapproval within twenty (20) days after GLOBAL or its advertising agency receives the material, it is deemed approved. FRANCHISEE shall not advertise or use in advertising or other form of promotion, the Marks of GLOBAL or GLOBAL's affiliates without the appropriate copyright, trademark, and service mark registration symbols for those Marks. FRANCHISEE may not advertise its services or use the Marks on the Internet except with GLOBAL's prior consent. Any and all such advertising on the Internet shall be pre-approved by GLOBAL and on terms specified by GLOBAL.

C. **Grand Opening Advertising**. In addition to the other advertising described herein, FRANCHISEE must spend at a minimum One Thousand Five Hundred Dollars ($1,500.00) for grand opening advertising and sales promotions within six (6) months of the Agency opening. Additionally,

#1010939.14

9

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

FRANCHISEE shall provide to GLOBAL, within nine (9) months after the opening of the Agency, proof of FRANCHISEE's advertising and sales promotion expenditures in such form, with such detail and including copies of such advertising and materials and receipts as GLOBAL shall request.

D. **Directories**. GLOBAL may require FRANCHISEE to list and advertise the Agency in directories or other media, from time to time, as GLOBAL determines, such as the principal regular (white pages), classified (yellow pages) telephone directories, distributed within the area the Agency is located, or through other forms of advertising, including, but not limited to portions of the internet. FRANCHISEE must use GLOBAL's standard form of listing and classified directory advertisements.

## IX.  OBLIGATIONS OF GLOBAL

A. **Initial Training**. GLOBAL will provide an initial training program for the operation of a GlobalGreen Insurance Agency using the System and Marks of GLOBAL for the Principal Owner and/or the manager. The initial training program is furnished after this Agreement is executed and prior to the opening of the Agency and will be furnished at such time and place as GLOBAL may designate. FRANCHISEE shall pay all transportation, lodging, meals and other expenses incurred by it and its employees in attending this program. If FRANCHISEE chooses to have the initial training program conducted at the Site, and if GLOBAL (in its sole discretion) is willing to conduct the program at the Site, FRANCHISEE will be required to pay GLOBAL an additional fee of $7,000 plus the travel, meals, and lodging expenses of the trainers. If FRANCHISEE wants any additional training beyond this initial training program, FRANCHISEE must pay GLOBAL $1,000 per day or partial day per trainer and all travel, meals, and lodging expenses of the trainers.

FRANCHISEE's Principal Owner and/or designated manager must attend and satisfactorily complete the training program before opening the Agency. If FRANCHISEE's Principal Owner and/or manager do not satisfactorily complete the training program, GLOBAL shall have the right to terminate this Agreement. Satisfactory completion of the training program is, however, no assurance of the success of the Agency. If FRANCHISEE currently operates a GlobalGreen Insurance Agency, the training program is not mandatory.

B. **Subsequent Training**. GLOBAL will offer training for new employees, who are not initially trained pursuant to this Agreement, and GLOBAL shall be permitted to charge a reasonable fee for such training. GLOBAL may also provide refresher programs to experienced managers. GLOBAL reserves the right to designate certain training programs or meetings as mandatory. GLOBAL may elect to make a reasonable charge for any training provided after the opening of the Agency. A FRANCHISEE or its employees must pay the compensation of the trainee as well as such trainee's travel, lodging and personal expenses.

C. **Continuing Advisory Assistance**. GLOBAL will make available such continuing advisory assistance in the operation of the Agency, rendered in such manner and available from time to time, as GLOBAL may deem appropriate. GLOBAL reserves the right to charge a reasonable fee for such assistance.

D. **Accounting of Revenues**. GLOBAL or its Affiliates will administer and allocate the revenues GLOBAL, its Affiliates, FRANCHISEE and GLOBAL's franchisees receive and attribute these revenues to sales made by GLOBAL, its Affiliates, their franchisees and FRANCHISEE. FRANCHISEE is solely responsible for the accuracy of the information it provides to GLOBAL and its Affiliates. If

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

FRANCHISEE fails to input information or incorrectly input information in the Agency Software and the Affiliate does not have adequate information in which to determine where to disburse the Commissions, the amount of these funds is placed in the Orphan Account. Each month the Affiliate will send FRANCHISEE a list of the transactions generating the funds in the Orphan Account so FRANCHISEE can, if necessary, input or correct the information FRANCHISEE has put into the Agency Software and redeem its unclaimed amounts. After 6 months, any amount which remains unclaimed in the Orphan Account, is forfeited to the Affiliate to compensate them for the administrative burden of holding the unclaimed amounts and compiling and sending out the list of unclaimed transactions to GLOBAL's franchisees.

## X.   OBLIGATIONS OF FRANCHISEE

A.      **Agency Opening and Construction**. FRANCHISEE agrees to begin operation of the Agency within six (6) months after this Agreement is accepted by GLOBAL. FRANCHISEE will construct and equip the Agency in accordance with specifications prepared by FRANCHISEE, subject to GLOBAL's right to consent to such specifications, signage, layout and design and equipment. The cost of plans and specifications shall be borne by FRANCHISEE. GLOBAL's consent shall be limited to review of such plans to assess compliance with GLOBAL's design standards for GlobalGreen Insurance Agencies, including such items as trade dress, presentation of Marks, and the provision to the potential customer of certain products and services that are central to the functioning of the Agency. Such review is not designed to assess compliance with federal, state or local laws and regulations, including the Americans with Disabilities Act ("ADA"), as compliance with such laws is the sole responsibility of FRANCHISEE. Opening may be delayed only if such delay is caused by contingencies not within the control of FRANCHISEE, such as, acts of God, governmental restrictions, strikes or labor disputes, about which GLOBAL is notified within a reasonable period of time of such delay. FRANCHISEE shall use its best efforts to cure any such delay and any such delay in completion shall be for a period of days equal to the number of days during which such event actually prevents completion. In such event, FRANCHISEE shall notify GLOBAL of any such delay in writing. Since FRANCHISEE is solely responsible for complying with the requirements of the ADA and other matters affecting or relating to the construction and design of the Agency in all respects, nothing contained herein or in the Manual shall be construed as or implied as imposing any obligation on GLOBAL or its Affiliates in relation to the ADA or other matters relating to the construction or design of the Agency.

B.      **Use of Name and System.** FRANCHISEE shall during the term of this Agreement, operate, advertise and promote its business under the Marks without prefix or suffix and to adopt and use the Marks and System licensed hereunder solely in the manner prescribed by GLOBAL, and agrees to identify its Agency with a sign in compliance with applicable local ordinances and approved by GLOBAL.

C.      **Compliance with Laws**. FRANCHISEE shall operate the Agency in compliance with applicable laws and governmental regulations affecting FRANCHISEE'S business operations, and in compliance with the standards and requirements as may be prescribed by the Providers and in accordance with the operational standards as may be established by GLOBAL and/or the Providers from time to time. At all times FRANCHISEE shall comply with all federal, state, municipal, and local laws, rules, regulations, ordinances, and codes applicable and related to this Agreement, the Agency, and all aspects of the conduct of the Agency. FRANCHISEE shall obtain all licenses and permits required by any applicable federal, state, municipal, and local law, rule, regulation ordinances and code. FRANCHISEE shall make timely filings of all tax returns and shall pay when due all taxes levied or assessed on, and

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

related to this Agreement and the Agency. At no time is GLOBAL required to inform FRANCHISEE of any federal, state, municipal, or local law, rule, regulation, ordinance code, or tax.

D.     **Standards of Operation**.  The Agency shall provide all usual and customary services of an insurance agent on all insurance policies placed with Providers. FRANCHISEE shall pay all expenses in connection with the opening and operation of the Agency. FRANCHISEE shall submit to GLOBAL or the Provider all applications and report to GLOBAL and Provider all policies and coverages as required by the Provider.  FRANCHISEE shall not exceed the scope of its authority as contained in this Agreement and shall not change or waive any provision of any policy, shall not extend the time of any premium due date, and shall not compromise, adjust or settle any claim against any Providers, other than as specifically authorized by the Provider in writing.  The Agency must conform with the mandatory standards relating to signage, appearance, cleanliness, sanitation, types of products and displays and type of equipment as designated by GLOBAL.  In addition, the Agency shall be equipped with appropriate computer hardware and software, high speed internet connection, telephone system and facsimile machine that is approved by GLOBAL and a functioning email address. FRANCHISEE must comply with GLOBAL's specifications for hardware and software, which may be changed by GLOBAL from time to time. FRANCHISEE's Agency shall be open for business during normal business hours prevailing in the community where located. FRANCHISEE agrees to offer such products and services required by GLOBAL and only those products and services permitted by GLOBAL. FRANCHISEE will not conduct any business or sell any products other than those approved by GLOBAL. FRANCHISEE shall keep the premises clean and provide prompt and courteous service to its customers. FRANCHISEE agrees to and shall take all steps as are necessary to ensure that its employees treat all customers fairly and provide services hereunder in an honest, ethical, and non-discriminatory manner.  FRANCHISEE shall not advertise in a deceptive, misleading, or unethical manner and agrees to render prompt and courteous service, and meet such minimum standards as GLOBAL or its Providers may establish from time to time. FRANCHISEE will also comply with any and all standards or requirements prescribed by the Providers and the requirements of any Optional Programs for which FRANCHISEE participates.

E.     **Security and Safety Procedures**.    FRANCHISEE is solely responsible to take appropriate security and safety measures to protect employees, customers, those engaging in business with FRANCHISEE, those coming on the premises of the Agency and the general public at large. GLOBAL does not in any way share any of that responsibility.

F.     **Actual Participation**.  FRANCHISEE recognizes the importance of the Principal Owner's participation in the management of the Agency and that the Principal Owner's agreement to so participate in the management of the Agency is a material inducement for GLOBAL to enter into this Agreement. Therefore, FRANCHISEE agrees that its Principal Owner is required to use his or her best efforts and is personally responsible for the management of the Agency on a day-to-day basis, unless otherwise approved by GLOBAL. GLOBAL, in its sole discretion, may permit FRANCHISEE to hire a qualified manager to operate the day-to-day affairs of the Agency, however, the Principal Owner must remain actively involved in the operations and management of the Agency. The Principal Owner is required to carefully monitor and be responsible for the performance of anyone designated to manage the operation of the Agency. The designated manager who will operate the business must also satisfactorily complete GLOBAL's training program.  Supervisory and all other licensed personnel, including the designated manager of FRANCHISEE, are required to sign an agreement regarding confidentiality and non-solicitation in a form similar to the one set forth in Exhibit III of this Agreement. FRANCHISEE shall send GLOBAL a copy of the signed confidentiality and non-solicitation agreement within ten (10) days of the date of hire.

#1010939.14

12

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

G.      **Staffing**.  FRANCHISEE shall maintain a competent, conscientious, and trained staff. FRANCHISEE shall be solely responsible for all employment decisions and functions of the Agency including, without limitations, those related to hiring, firing, training, wage and hour requirements, record-keeping, supervision, and discipline of employees, and FRANCHISEE shall inform its employees as to such requirements.  GLOBAL may refer or recommend employees that may be hired by FRANCHISEE; however, GLOBAL is not liable or responsible for any acts or omissions of such persons, nor does GLOBAL warrant their suitability or qualifications.  FRANCHISEE is responsible for investigating any potential employee and making its own independent judgment as to whether or not hire them.

H.      **Insurance**.  FRANCHISEE agrees to maintain at all times at its sole expense such insurance in minimum policy limits, coverage, and endorsements as GLOBAL or any Provider designates. The following sets forth the minimum policy limits and coverage and endorsement GLOBAL currently requires:  FRANCHISEE must carry a Business Owners policy to provide both business personal property and liability protection for the Agency.  The policy must be endorsed to extend hired and non-owned auto coverage to FRANCHISEE's Agency.  The coverage limits for the Agency's personal property will depend on the value of these assets.  The minimum liability limits are required to be $1,000,000 per occurrence and $2,000,000 aggregate.  FRANCHISEE must also carry a Professional Liability or Errors & Omissions policy.  This policy must be purchased prior to opening the Agency.  It will extend protection to the Agency relative to FRANCHISEE's professional interactions with its clients. The minimum liability limits on this protection are required to be $1,000,000 per occurrence and $2,000,000 aggregate.  This policy must be purchased under GLOBAL's E & O Program.  FRANCHISEE must be underwritten and qualify for the E & O Program.  GLOBAL has the right to require FRANCHISEE to reasonably increase the minimum insurance requirement annually and require different or additional kinds of insurance from time to time, as GLOBAL determines.

FRANCHISEE may also want to consider purchasing Directors and Officers protection. GLOBAL strongly suggests that FRANCHISEE purchases data breach coverage if available.  The data breach coverage may be mandatory in the future.  FRANCHISEE may also want to consider purchasing Workers Compensation Insurance based on the laws in the state where the Agency is located and whether FRANCHISEE has any employees.  Finally, there are coverages available either as stand alone policies or as endorsements on the business owners policy which FRANCHISEE may consider purchasing to protect the interests of the Agency.  Employment Practices Liability, Employee Theft, Liquor Liability and other optional coverages should be researched thoroughly by FRANCHISEE and contrasted with the practices of the Agency so that FRANCHISEE may make an informed decision regarding their purchase.

All insurance policies must be issued by one or more insurance carriers with an A.M. Best rating of B++ or higher.  All liability insurance policies required must name GLOBAL, Equity One, EBP Agent and their designated Affiliates, as additional insureds, on a primary and non-contributory basis, must contain endorsements waiving rights of subrogation, where permitted by law.  The policies must also provide that those named receive 30 days prior written notice of termination, expiration, cancellation or modification of any policy and 10 days notice of non-payment of any premium.  Any provision stating that the insurance company will "endeavor to" notify FRANCHISEE must be changed to provide that the insurance company will notify the additional insured in the event of any of the foregoing events.  Some landlords may also require FRANCHISEE to list them as an additional insured.

FRANCHISEE shall each year provide GLOBAL with a certificate or other evidence of insurance.  If FRANCHISEE fails to maintain such insurance, GLOBAL may procure such insurance on

#1010939.14

13

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

behalf of FRANCHISEE, and shall be entitled to reimbursement from FRANCHISEE, in addition to any other rights and remedies under this Agreement. However, GLOBAL is not obligated to obtain such insurance on behalf of FRANCHISEE.

Regardless of the amounts set forth above, it shall be the responsibility of FRANCHISEE to maintain adequate insurance coverage at all times during the term of and after the expiration of this Agreement. FRANCHISEE should determine if additional insurance is necessary through consultation with its advisors, and FRANCHISEE recognizes that the recommended levels are merely minimum requirements. Failure of FRANCHISEE to maintain coverage shall not relieve it of any contractual responsibility or obligation or liability under this Agreement. FRANCHISEE'S obligation to obtain and maintain the insurance described is not limited in any way by reason of any insurance maintained by GLOBAL, nor does FRANCHISEE'S performance of the obligations relieve FRANCHISEE of any obligations under this Agreement.

I.     **Inspections and Audits**.  FRANCHISEE shall permit representatives or agents of GLOBAL and Providers  to enter the Site with or without notice during regular business hours to inspect the Agency premises and business. Further, FRANCHISEE shall permit representatives or agents of GLOBAL and Providers to audit FRANCHISEE's operations including all books and records. FRANCHISEE grants GLOBAL permission to examine all records of any Providers from whom FRANCHISEE has made purchases. GLOBAL's retention and exercise of the right to approve certain matters, to inspect the Agency and its operation and to enforce its rights, exists only to the extent necessary to protect GLOBAL's interest in the System and Marks for the benefit of GLOBAL, its Affiliates and all GlobalGreen Insurance Agencies. Neither the retention nor the exercise is for the purpose of establishing any control, or the duty to take control, over those matters which are clearly reserved to FRANCHISEE, nor shall they be construed to do so. The rights to audit pursuant to this provision survives the expiration or termination of this Agreement.

J.     **Cooperation for Financial Performance Representations**.  FRANCHISEE shall maintain its books and records in accordance with generally acceptable accounting principles, consistently applied. If GLOBAL at any time desires to utilize an earnings claim, financial performance representations or similar document in connection with the sale of franchises, FRANCHISEE agrees to provide GLOBAL, at no cost, with such reasonable information as GLOBAL requires from FRANCHISEE in order to properly prepare such documents, and shall permit GLOBAL to utilize such information as it deems necessary.

K.     **Innovations, etc**  All innovations, ideas, concepts, techniques, or materials concerning a GlobalGreen Insurance Agency, whether or not protectable intellectual property and whether created by or for FRANCHISEE, its owners, employees, or independent contractors, must be promptly disclosed to GLOBAL  and will be deemed to be GLOBAL's sole and exclusive property, part of the System, and works made-for-hire for GLOBAL. To the extent any item does not qualify as a "work made-for-hire" for GLOBAL, FRANCHISEE must assign ownership of that item and all related rights to that item, to GLOBAL and must take whatever action (including signing assignment or other documents) GLOBAL requests to show its ownership or help GLOBAL obtain intellectual property rights in the item.

L.     **Remodeling**.  GLOBAL may require FRANCHISEE to make such capital expenditures as are necessary to remodel the Agency to reflect the then current standards of a GlobalGreen Insurance Agency. Compliance with such standards may be an ongoing obligation of FRANCHISEE, and may be a condition of consent to renewal of this Agreement, or consent to an assignment of this Agreement.

#1010939.14

M.   **Financial and Other Reports**.  FRANCHISEE shall maintain and preserve for at least five (5) years (or longer if required by applicable law or any Providers) from the dates of their preparation, full, complete and accurate books, records and accounts of business transacted by the Agency, in accordance with generally accepted accounting principles or in the form and manner prescribed by GLOBAL and/or Providers from time to time.  FRANCHISEE shall send to GLOBAL any information or reports as GLOBAL may reasonably request.  No later than January 30 of each year, FRANCHISEE shall send GLOBAL a report certifying the names, addresses, and percentage ownership of each owner of the FRANCHISEE.

N.   **Optional Programs**.  GLOBAL may expand their product and service offerings and allow qualified franchisees to offer these new products and services ("Optional Programs").  An Optional Program is another service or product which, if FRANCHISEE accepts it, may be a part of the products and services FRANCHISEE provides in the Agency.  FRANCHISEE does not have to accept an Optional Program, however, if FRANCHISEE does, FRANCHISEE may be required to take additional training at a reasonable fee and to make specified purchases in connection with this Optional Program.  Once FRANCHISEE accepts an Optional Program, the Optional Program will be subject to each of the terms and conditions of this Agreement, except as otherwise provided as part of the Optional Program which FRANCHISEE must agree to prior to accepting to participate in the Optional Program.  GLOBAL has the right to permit or exclude FRANCHISEE from participation in any Optional Programs, in GLOBAL's sole and absolute discretion, and has the right to impose the terms and conditions relating to the Program. Any Optional Programs will be described in greater detail in the Manual.

O.   **Licensure, Etc**.  FRANCHISEE or its Principal Owner must at all times maintain valid insurance licenses, resident, non-resident, and surplus lines, as applicable, and comply with any countersigning and commission sharing requirements imposed by GLOBAL or Provider, and must comply with commission sharing requirements when writing risks outside of FRANCHISEE'S resident state.

P.   **Agency Software**.  FRANCHISEE is required to use the Agency Software in the operation of its Agency.  FRANCHISEE will enter into a Service Agreement with Equity One simultaneously with entering into this Agreement.  Pursuant to this Service Agreement, Equity One will sublicense to FRANCHISEE its rights to access and use the Agency Software so long as FRANCHISEE is in compliance with the terms of this Agreement and the Service Agreement.  In addition, this Agreement will provide that FRANCHISEE will pay a SMA Fee.  Notwithstanding the foregoing, FRANCHISEE understands and acknowledges that GLOBAL has the right to change, modify, substitute, upgrade, or add different computer software and hardware.  In any event, FRANCHISEE shall always be in compliance with the current requirements for computer hardware and software and make any such changes at its sole expense.

Q.   **Annual Franchisee Meetings**.  GLOBAL may require FRANCHISEE (or its Principal Owner) to attend, at FRANCHISEE'S expense, at least one franchise meeting per year at a location selected by GLOBAL.  GLOBAL will not require attendance at any such meetings for more than 3 days during any calendar year.

## XI.   PROPRIETARY MARKS

A.   **Right to Use Marks**.  GLOBAL hereby grants to FRANCHISEE a license to use the Marks during the term of this Agreement in accordance with the System.  FRANCHISEE acknowledges

#1010939.14

15

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

that the Marks are valid service and/or trademarks, which are licensed to GLOBAL by its Affiliate, Equity One. FRANCHISEE recognizes that valuable goodwill is attached to the Marks, and that it will use same only in the manner and to the extent specifically licensed by this Agreement. Any goodwill arising out of FRANCHISEE's use of the Marks inures to the benefit of GLOBAL and GLOBAL's Affiliates. FRANCHISEE further acknowledges that the right to use said Marks and the grant contained in this Agreement is non-exclusive, and that GLOBAL and/or its Affiliates, in their sole discretion, have the right themselves to operate businesses under said Marks on any terms and conditions GLOBAL deems fit. Any unauthorized use of the Marks by FRANCHISEE is a breach of this Agreement and an infringement of the rights of GLOBAL and its Affiliates. All provisions of this Agreement applicable to the Marks apply to any additional trademarks, service marks, and commercial symbols hereafter authorized for use by and licensed to FRANCHISEE.

B. **Contest of Marks**. FRANCHISEE will not directly or indirectly contest or aid in contesting the validity or ownership of the Marks, trade secrets, methods, procedures and advertising techniques which are part of the System, or contest GLOBAL's and GLOBAL's Affiliates' rights to register, use or license others to use such names and Marks, trade secrets, methods, procedures and techniques. FRANCHISEE will not at any time (whether during the term of this Agreement or after expiration or termination thereof) directly or indirectly commit an act of infringement. FRANCHISEE agrees to promptly notify GLOBAL of any claim, demand, or suit based upon or arising from any attempt by anyone else to use the Marks, or any colorable variation thereof. GLOBAL or GLOBAL's Affiliates shall have the sole discretion to determine if they will defend the use of the Marks, and they are not obligated to defend the Marks. GLOBAL or GLOBAL's Affiliates have the right to control any administrative proceeding or litigation involving the Marks. FRANCHISEE shall execute any and all instruments and documents, render assistance, and do such acts as may, in the opinion of GLOBAL's counsel, be necessary or advisable to protect the interests of GLOBAL or its Affiliates in any such litigation, or proceedings, or to otherwise protect and maintain the interest of GLOBAL or its Affiliates in the Marks.

C. **Prohibition on Use of Name**. FRANCHISEE will not use any of the Marks or the name "GlobalGreen" or "GlobalGreen Insurance Agency" as part of its corporate name with any prefix, suffix, or other modifying words, terms, designs or symbols. FRANCHISEE shall, however, identify itself as a GlobalGreen Insurance Agency franchisee, solely with the Marks licensed by GLOBAL to FRANCHISEE hereunder. FRANCHISEE shall not incur any obligations or indebtedness except in FRANCHISEE's name. Further, FRANCHISEE shall not use GLOBAL's name or Marks (or any marks or names confusingly similar thereto) as an Internet domain name or an email address in the content of any Web Site.

D. **Change of Marks**. GLOBAL shall have the right to change the Marks to be used by FRANCHISEE at any time and for any reason it deems appropriate. FRANCHISEE shall pay the costs associated with such change and shall make such necessary changes promptly.

E. **Use of Marks on the Internet**. FRANCHISEE acknowledges that GLOBAL or its Affiliates are the owner of the following Internet addresses (URL): www.equityoneinsurance.com, www.globalgreeninsuranceonline.com, www.globalgreeninsuranceagent.com and www.globalgreeninsuranceagency.com, and unconditionally disclaims any ownership interest in them or any similar Internet addresses. FRANCHISEE agrees not to register any Internet address name under any Internet domain, class or category that contains the word "GlobalGreen" or "GlobalGreen Insurance Agency" or any abbreviation, acronym or variation of those words. GLOBAL retains the sole right to

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

advertise on the Internet and create a Web site using any of the Marks or any variation of the Marks. GLOBAL retains the right to pre-approve FRANCHISEE's use of linking and framing between FRANCHISEE's Web pages and all other Web sites. FRANCHISEE shall, within five (5) days after a request by GLOBAL, dismantle any frames and links between FRANCHISEE's Web pages and any other Web sites. You may not use any of the Marks on the Internet except after obtaining our consent. Further, you may not use the Marks (or any marks or names confusingly similar to the Marks) as a user or account name, or in the content of any world wide website, including any social media website (such as LinkedIn, Facebook or Twitter) without our consent.

F.      **Use of Providers' and Affiliates' Trademarks and Service Marks**.  FRANCHISEE is permitted to use the trademarks and service marks of Providers only in accordance with the terms of the Provider Agreements. FRANCHISEE is not permitted to use the trademarks and service marks of any Affiliates other than the Marks, however FRANCHISEE is permitted to use the Marks in accordance with the terms of this Agreement.

## XII.    CONFIDENTIAL INFORMATION AND TRADE SECRETS

FRANCHISEE acknowledges that the trade secrets, information, ideas, research, methods, manuals, procedures, systems, improvements and copyrighted materials, etc., including the Manual, owned or developed by or licensed to GLOBAL or its Affiliates, whether or not published, confidential or suitable for registration or copyright, and the goodwill associated with them, are and shall remain the sole and exclusive property of GLOBAL and its Affiliates. The foregoing are provided or revealed to FRANCHISEE in trust and confidence. Any and all information, knowledge and know-how not generally known in the business about the System and products, specifications, standards, methods, procedures, sales and marketing material, systems, procedure and techniques, knowledge of and experience in operating a GlobalGreen Insurance Agency and all non-public information concerning the financial data, customer accounts, client specific information, work product performed for any customer or client, work product documents and records, specific strategies and other information or material which GLOBAL may designate as confidential ("Confidential Information and Trade Secrets") shall be deemed confidential for purposes of this Agreement. It is understood and agreed that the Confidential Information and Trade Secrets, if used by other persons, firms or corporations, give them a substantial competitive advantage which is presently enjoyed by GLOBAL, its Affiliates and GLOBAL's franchisees. FRANCHISEE shall not, during the term of this Agreement, or after Transfer or expiration or termination of this Agreement for any reason, communicate or divulge to anyone or use any Confidential Information and Trade Secrets, nor shall FRANCHISEE disclose, use or divulge in whole or in part any Confidential Information and Trade Secrets, unless such information is generally known and in the public domain, and except to the extent necessary to operate the Agency. All employees of FRANCHISEE will exercise the highest degree of diligence and make every effort to maintain the absolute confidentiality of all Confidential Information and Trade Secrets and proprietary rights during and after the term of this Agreement.

## XIII.   NON-SOLICITATION AND NON-COMPETITION

The following provisions shall be applicable to the extent they are not prohibited by any Provider. If any provision is not permitted by Provider, the non-permitted activity shall not be applicable to the Provider prohibiting same, but shall otherwise remain applicable.

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

A.      **Competing Business During the Term of This Agreement**.  FRANCHISEE acknowledges that GLOBAL is making its knowledge, know-how, and expertise available to it for the purpose of operating the Agency.  FRANCHISEE agrees that it would be an unfair method of competition to use or duplicate or to allow others to use or duplicate any of the knowledge, know-how and expertise received by FRANCHISEE for any reason other than for the operation of the Agency under this Agreement.  FRANCHISEE further recognizes the importance of devoting substantial time and energy to Agency.       FRANCHISEE, therefore, warrants that during the term of this Agreement, unless FRANCHISEE has the prior written consent of GLOBAL, FRANCHISEE shall not directly or indirectly, through itself or through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, unincorporated businesses, or otherwise perform any services for, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of any business that offers or sells insurance, except as a duly licensed franchisee of GLOBAL.

B.      **Non-Competition After Term**.  For one (1) year after the Transfer, expiration or termination of this Agreement for any reason or the entry of final order of a court of competent jurisdiction enforcing this covenant, whichever is later, FRANCHISEE shall not directly or indirectly, market, offer to or sell insurance within the "Geographical Scope" (except for other outlets franchised from GLOBAL to FRANCHISEE).  Ownership of less than five percent (5%) in a publicly traded company will not be deemed to be prohibited by this paragraph.  The Geographical Scope of this restriction shall cover the area within a twenty-five (25) mile radius of the Agency including the Agency Site.

C.      **Non-Solicitation**.  FRANCHISEE agrees that during the term of this Agreement and for one (1) year after the Transfer, expiration or termination for any reason of this Agreement or the entry of a final order of a court of competent jurisdiction enforcing this covenant, whichever is later, FRANCHISEE shall not in any manner or in any capacity, directly or indirectly, for himself/herself or any other person or entity, actually or attempt:

> (1) to solicit, contact or do business with any Customer for the purpose of selling any product or service which is similar to or competitive with any product or service offered by GLOBAL or its Affiliates, or otherwise interfere with or take away any Customers or the business of any such Customer;

> (2) to solicit or hire any employee of GLOBAL, its Affiliates or their franchisees or interfere with the relationship between GLOBAL, its Affiliates or their franchisees and any of its employees, agents or suppliers.

D.      **Reasonableness of Restrictions**.    GLOBAL intends to restrict the activities of FRANCHISEE under Sections XII and XIII of this Agreement only to the extent necessary for the protection of GLOBAL and its Affiliates' legitimate business interests.  Each of the foregoing covenants shall be construed as severable and independent and shall be interpreted and applied consistent with the requirements of reasonableness and equity.  In the event a court of competent jurisdiction shall determine the business, time, or geographic limitations contained in this Agreement are illegal, invalid or unenforceable, then, the court so holding shall reduce the limitation necessary to render such restriction enforceable by such court.  In addition to any other remedies available at law or equity, GLOBAL shall have the right to injunctive relief for a violation or threatened violation of the foregoing.  The terms of the non-competition set forth above are assignable by GLOBAL and shall inure to the benefit of GLOBAL, as well as its successors and assigns.  In the event of any assignment, sale, merger or change in ownership

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

or structure of GLOBAL, the resulting entity shall step into the place of GLOBAL, without any additional consent of or notice to FRANCHISEE, as if the term GLOBAL was defined in this Agreement to include such entity.

FRANCHISEE acknowledges that these covenants and agreements relating to non-competition and non-solicitation are material inducements for GLOBAL to enter this Agreement, and that it is essential that FRANCHISEE comply with the terms hereof, even in the absence of another franchisee in the Geographic Scope. FRANCHISEE acknowledges and understands that, among other things, GLOBAL enters into this Agreement so that either GLOBAL, an Affiliate of GLOBAL, or another franchisee, as appropriate, shall have the opportunity to establish a presence in such Geographic Scope subsequent to the termination, Transfer or expiration of the relationship created by this Agreement, and that FRANCHISEE'S failure to comply with the terms hereof shall materially hinder the ability of GLOBAL, its Affiliates, and/or another franchisee to do so. Therefore, FRANCHISEE acknowledges and agrees that the absence of a presence by GLOBAL an Affiliate of GLOBAL, or another franchisee in a particular geographic area in which FRANCHISEE'S activities would be restricted pursuant to the terms of this Agreement shall not serve as a defense to enforcement of any provision of this Agreement.

## XIV.   **DEFAULT AND TERMINATION**

### A.   **Termination By GLOBAL**.

1.   With 30 Day Notice and 30 Day Opportunity to Cure.   GLOBAL may at its option, and without prejudice to any other rights or remedies provided for in this Agreement or at law or in equity, terminate this Agreement for "good cause". Notwithstanding the foregoing, if applicable state law permits, GLOBAL has the right to terminate earlier if the "good cause" constitutes a default which is not curable. Without limitation as to other situations, good cause for termination also exists if FRANCHISEE or any guarantor of this Agreement:

> (1)   Does not substantially perform all of the lawful terms, conditions, and obligations of this Agreement, the mandatory obligations under the Manual or the rules or requirements of the Providers; or

> (2)   Loses possession of the premises at which the Agency is located and fails to secure a suitable site for relocation which GLOBAL consents to within three (3) months thereafter; or defaults under the terms of its lease for the premises; or

> (3)   Misrepresents Revenue that FRANCHISEE is required to report to GLOBAL or diverts or collects any fees directly from Providers or customers without forwarding such collections to GLOBAL;

> (4)   Loses any permit or license which is a prerequisite to the operation of the Agency for a period of five (5) days; or

> (5)   Repeatedly fails or refuses to comply with the lawful provisions of this Agreement, (i.e., 3 or more times in any twelve (12) month period) whether or not such failures or refusals are corrected after notice. Notwithstanding anything herein to the contrary, FRANCHISEE does not have a 30 day opportunity to cure this default; or

#1010939.14

19

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

(6)      Misuses the Marks or Confidential Information and Trade Secrets; or

(7)      Engages in conduct which reflects unfavorably, in GLOBAL's opinion, upon the operation, maintenance, goodwill and/or reputation of the franchise system or the Agency, including, but not limited to, conviction or pleading no lo contendere to a crime involving dishonesty, breach of trust, breach of fiduciary duty, or similar acts.

(8)      Is adjudged bankrupt, becomes insolvent, or makes a general assignment for the benefit of creditors (subject to Section XIV.A.3.(d) below); or

(9)      Commits any other act which constitutes good cause under applicable state law or court decisions; or

(10)     Fails to provide GLOBAL with the reports of sales and other financial information as required under the this Agreement; or

(11)     Fails to keep the Agency open for a period of seven (7) consecutive days without justifiable cause; or

(12)     Fails to pay its lawful debts and taxes when same become due; or

(13)     Surrenders or transfers control of the operation of the Agency (including entering into a management arrangement with any person not a party to this Agreement), or makes a Transfer of Interest in violation of this Agreement; or

(14)     Loses its rights to be a Subagent for an acceptable number of Providers. An acceptable number of Providers is a minimum of four (4) of the Providers that underwrite insurance policies in the area where the Agency is located; or

(15)     Has its license to engage in the business of insurance suspended or revoked by any regulatory authority.

Subject to applicable law and except as otherwise provided in this Agreement, GLOBAL will give FRANCHISEE at least thirty (30) days prior written notice of termination, [unless a longer period of time is required or shorter period of time is permitted by applicable state law]. The notice shall state the reason(s) for termination and shall provide that FRANCHISEE has thirty (30) days from the date of said notice to correct any claimed deficiency. If the deficiency is corrected within thirty (30) days, the notice shall be void. If the deficiency is not corrected within said thirty (30) day period, GLOBAL has the right to terminate this Agreement immediately upon written notice to FRANCHISEE.

2.      With 10 Day Notice and 10 Day Opportunity to Cure. GLOBAL may also terminate this Agreement for non-payment of sums due to GLOBAL or GLOBAL's Affiliates or suppliers or the failure of FRANCHISEE to open the Agency for business six (6) months after GLOBAL's acceptance of this Agreement. If termination is based on the foregoing, FRANCHISEE shall be entitled to written notice of default, but GLOBAL shall [if permitted by applicable law] be required to grant FRANCHISEE only ten (10) days to remedy such default. If the deficiency is corrected within the ten

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

(10) days, the notice will be void. If the deficiency is not corrected within the ten (10) day period, GLOBAL has the right to terminate this Agreement immediately upon written notice to FRANCHISEE.

3.      Without Notice and Without Opportunity to Cure. Notwithstanding anything contained herein to the contrary, if state law permits, GLOBAL shall be permitted to terminate the franchise immediately and without notice when the basis or grounds for cancellation is: (a) conviction of a felony or any other criminal misconduct which, in GLOBAL's opinion, materially and adversely affects the operation, maintenance, reputation, or goodwill of the franchise; (b) fraudulent activity which, in GLOBAL's opinion, materially and adversely affects the operation, maintenance, reputation, or goodwill of the franchise; (c) abandonment of the franchise; (d) bankruptcy or insolvency of FRANCHISEE; (e) the giving of more than two (2) no account or insufficient funds checks to GLOBAL or its Affiliates within a twelve month period; (f) failure to obtain approval to become a Subagent for at least four (4) of the Providers that underwrite insurance policies in the area where the Agency is located within 90 days of signing this Agreement; (g) any other act or omission which permits termination without notice and/or an opportunity to cure under applicable state law; (h) makes any material misrepresentation or omission in the information provided to GLOBAL in order for FRANCHISEE to purchase the franchise or breaches any of the representations in this Agreement; or (i) termination of any other agreement between FRANCHISEE and GLOBAL or its Affiliates including, but not limited to the Service Agreement. FRANCHISEE acknowledges that this constitutes written notice that FRANCHISEE's failure to obtain approvals from at least four (4) of the Providers that underwrite insurance policies in the area where the Agency is located will result in a termination within ninety (90) days after the date of this Agreement without the need for further notice. Further, FRANCHISEE acknowledges that its right to obtain access to the Agency Software is an integral part of this Agreement. In the event that FRANCHISEE loses the right to access or use the Agency Software due to an uncured default under the Service Agreement or termination of rights by the third party provider of the Agency Software, GLOBAL shall have the right to terminate this Agreement immediately without notice or opportunity to cure.

B.      **Termination by FRANCHISEE**. FRANCHISEE must notify GLOBAL in writing of any failure of GLOBAL to perform any of GLOBAL's obligations pursuant to this Agreement. FRANCHISEE may terminate this Agreement if GLOBAL shall materially default in performance of any terms and conditions in this Agreement, after giving GLOBAL written notice within thirty (30) days thereof, and if the default has not been corrected within sixty (60) days thereafter.

C.      **Consequences of Termination**. Upon expiration, Transfer or termination of this Agreement, for any reason whatsoever, all of FRANCHISEE's rights hereunder shall terminate, and FRANCHISEE shall do the following:

1.      FRANCHISEE will cease to be a franchisee of GLOBAL and cease to operate the former Agency under the System and Marks. FRANCHISEE shall not thereafter directly or indirectly represent to the public that the former business is or was operated or in any way connected with the System or hold itself out as a present or former franchisee of GLOBAL at or with respect to the Agency.

2.      FRANCHISEE shall immediately thereafter discontinue use of all Marks, signs, colors, structures, printed goods and forms of advertising indicative of GLOBAL's business and return any copyrighted materials which have been provided to FRANCHISEE by GLOBAL including the Manual.

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

3.      FRANCHISEE will immediately cease providing services to all the Customers and forfeit all rights it has to the Customer contracts and future revenues, fees and/or commissions. Notwithstanding the foregoing, although FRANCHISEE has no right to any revenue, fees or commissions earned after termination or expiration, if the premiums for said policies were collected prior to termination or expiration FRANCHISEE will be entitled to said revenues or commissions. FRANCHISEE acknowledges that during the term of this Agreement and thereafter, all of the Customers attributable to FRANCHISEE are Customers of GLOBAL or its Affiliates and not Customers of FRANCHISEE. FRANCHISEE's rights to service the customers are granted pursuant to this Agreement. Further, FRANCHISEE shall provide GLOBAL with all Customer lists, files, records, documents, bills, and insurance policy materials and not retain any copies of such materials.

4.      If GLOBAL requests, FRANCHISEE shall assign its telephone numbers, white and yellow page telephone references and advertising to GLOBAL.

5.      FRANCHISEE shall pay all amounts due to GLOBAL, GLOBAL's Affiliates, and suppliers.

6.      FRANCHISEE shall make such modifications or alterations to the Site operated hereunder immediately upon termination or expiration as may be necessary to distinguish the appearance of such Site from that of other GlobalGreen Insurance Agency offices under the System and shall make such specific additional changes thereto as GLOBAL may reasonably request for that purpose.  In the event FRANCHISEE fails or refuses to comply with the requirements of this paragraph, GLOBAL shall have the right to enter upon the premises without being guilty of trespass or any other tort for the purposes of making or causing to be made such changes as may be required at the expense of FRANCHISEE which expense FRANCHISEE agrees to pay upon demand.

7.      FRANCHISEE shall cancel any assumed name registration or equivalent registration obtained by FRANCHISEE which contains the Marks, and FRANCHISEE shall furnish GLOBAL with evidence satisfactory to GLOBAL of compliance with this obligation within five (5) days of the termination, expiration or Transfer.

8.      FRANCHISEE shall make such modifications or alterations, at FRANCHISEE's expense, to the Site operated hereunder immediately upon termination or expiration as may be necessary to distinguish the appearance of such Site from that of other GlobalGreen Insurance Agencies under the System and shall make such specific additional changes thereto as GLOBAL may reasonably request for that purpose.  Notwithstanding the foregoing, nothing herein shall be construed to prevent GLOBAL from pursuing its rights under this Agreement including enforcement of the non-competition and non-solicitation provisions.  In the event FRANCHISEE fails or refuses to comply with the requirements of this paragraph, GLOBAL shall have the right to enter upon the premises without being guilty of trespass or any other tort for the purposes of making or causing to be made such changes as may be required,  at the expense of FRANCHISEE which expense FRANCHISEE agrees to pay upon demand.

9.      FRANCHISEE irrevocably appoints GLOBAL or GLOBAL's nominee to be FRANCHISEE's attorney-in-fact coupled with an interest, and with power of substitution, to execute and to file for FRANCHISEE any relevant document to obtain the telephone number if GLOBAL so requests. A power of attorney is attached hereto as Exhibit IV.

#1010939.14

22

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

10.     Comply with all post-term covenant obligations including but not limited to the Confidential Information and Trade Secrets, non-competition, non-solicitation and indemnification.

The expiration or termination of this Agreement shall not relieve FRANCHISEE of any of FRANCHISEE's obligations to GLOBAL existing at the time of such expiration, Transfer or termination, or terminate FRANCHISEE's obligations that, by their nature, survive the expiration or termination of this Agreement. Furthermore, the expiration or termination of this Agreement shall be without prejudice to GLOBAL's rights against FRANCHISEE; and in the event of a termination which is the result of FRANCHISEE's breach or default under this Agreement, GLOBAL shall, in addition to its rights set forth above, also be entitled to all rights and remedies available at law or in equity.

D.     **GLOBAL's Right to Purchase Personal Property**.  After the termination or expiration of this Agreement, but not upon an approved Transfer pursuant to Section XVII.B, GLOBAL shall have the right, but not the obligation, to purchase all of FRANCHISEE's equipment, inventory, supplies and other personal property used in connection with the operation of the business. The purchase price shall be at fair market value as agreed to by the parties. GLOBAL shall have thirty (30) days after the fair market value is determined as above, to exercise the rights granted hereunder, and shall thereafter have an additional thirty (30) days to pay for the property it desires to purchase. If GLOBAL fails to exercise its rights within the time periods set forth above, FRANCHISEE shall be free to otherwise sell or dispose of the property.

E.     **Operation of Franchise Because of FRANCHISEE's Inability**.  In order to prevent any interruption of the franchise business which would cause harm to the business, if FRANCHISEE is unable to operate the business for any reason whatsoever, FRANCHISEE authorizes GLOBAL and its agents and Affiliates to operate the business for so long as GLOBAL deems necessary and practical. All income from the operation of the business shall be kept in a separate account, and the expenses of the business, including reasonable compensation and expenses of GLOBAL and its agents, shall be charged to said account. Nothing contained herein shall be construed to require GLOBAL to operate the business in the case of FRANCHISEE's inability to operate same, and the rights set forth herein may be exercised in the sole and absolute discretion of GLOBAL.

## XV.    SOURCES OF PRODUCTS

A.     Purchases from Suppliers Other than Providers**.  FRANCHISEE may be required to purchase certain products, services, supplies, and equipment and materials required for the operation of the business from manufacturers, suppliers, or distributors designated by GLOBAL, or from other suppliers approved by GLOBAL who meet GLOBAL's specifications and are able to provide products and equipment in accordance with the standards as to quality, service, and who adequately demonstrate their ability to supply the franchise needs in a timely and reliable manner. Approved suppliers may be designated by e-mail, written memoranda, bulletins, in the Manual, or other means, all of which can be modified from time to time. If FRANCHISEE wants to use alternate suppliers for services, products, equipment, or materials other than those previously approved by GLOBAL, FRANCHISEE must obtain GLOBAL's consent. GLOBAL is not required to approve an inordinate number of suppliers of a given item which in its reasonable judgment would prevent its effective supervision of suppliers. GLOBAL reserves the right in its sole discretion to modify this policy, including, without limitation modifying the number and identity of authorized suppliers of the products. Approved suppliers are selected at GLOBAL's discretion.     GLOBAL reserves the right to negotiate with various vendors, suppliers, EBP AGENTS or Providers for rebates, commissions and other types of benefits based on certain goods and services purchased by FRANCHISEE and other franchisees. GLOBAL and GLOBAL's Affiliates reserve

#1010939.14

23

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

the right in the future to affiliate themselves with suppliers or become suppliers, and/or receive revenues from purchases made by franchisee.

B.     Providers as Approved Suppliers. FRANCHISEE is not permitted to sell products or services that are not approved by GLOBAL, in its sole and absolute discretion, nor is FRANCHISEE permitted to sell services or products from any Providers other than those approved by GLOBAL, in its sole and absolute discretion.    FRANCHISEE understands that certain Providers with whom FRANCHISEE may do business under this Agreement, require background checks and/or credit checks prior to granting FRANCHISEE authorization to sell their products and services and FRANCHISEE consent to such checks. FRANCHISEE further understands and accepts the risk that Providers may terminate their relationships with GLOBAL, its Affiliates or the EBP Agent, in which event FRANCHISEE will be unable to do business with such Providers. FRANCHISEE ACKNOWLEDGES THAT ALTHOUGH GLOBAL, ITS AFFILIATES OR ANY EBP AGENT SHALL USE REASONABLE EFFORTS TO OBTAIN AND MAINTAIN AGREEMENTS WITH THE VARIOUS PROVIDERS, SOME OR ALL OF THE PROVIDERS MAY TERMINATE THEIR AGREEMENTS WITH GLOBAL, ITS AFFILIATES OR ANY EBP AGENT AT WILL OR ON SHORT NOTICE AND THAT SUCH TERMINATIONS OF PROVIDER AGREEMENTS COULD ADVERSELY AFFECT FRANCHISEE'S BUSINESS. LIKEWISE, THE ARRANGEMENT WITH GLOBAL  OR ANY EBP AGENT MAY BE TERMINATED ON SHORT NOTICE. GLOBAL  HAS THE RIGHT, IN THEIR SOLE DISCRETION, BUT SUBJECT TO THE REQUIREMENTS OF ANY AGREEMENT THEY HAVE WITH PROVIDERS, TO TERMINATE THEIR AGREEMENTS WITH ANY PROVIDER. IF ANY AGREEMENTS ARE TERMINATED, GLOBAL WILL NOTIFY FRANCHISEE OF SUCH TERMINATION NO LESS THAN 30 DAYS PRIOR TO THE TERMINATION BECOMING EFFECTIVE.

In selecting Providers as approved suppliers, GLOBAL may consider a number of factors including the Provider's product lines, geographic regions in which the supplier transacts business, the needs of the products, the compensation programs offered by the Provider and the Provider's financial strength. Typically the Providers sell policies that bill premiums directly to policyholders. If GLOBAL would approve the use of a Provider that allows the Agency to bill the policyholder, in some circumstances GLOBAL may require that the full premium payment must be collected and deposited to GLOBAL's account before policy issuance. GLOBAL will negotiate all contracts with the Provider. Although GLOBAL endeavors to negotiate favorable terms with Provider, GLOBAL cannot guarantee that it will obtain the most favorable terms offered by the Provider. GLOBAL has the right, in its sole discretion, to revoke approval of alternative suppliers.

C.     Rights to the Bonus Program. GLOBAL and/or its Affiliates may derive revenue through cash payments made by Providers to GLOBAL, its Affiliates, or the EBP Agent based on insurance sales activities made by FRANCHISEE, GLOBAL's Affiliates, and GLOBAL's other franchisees ("Incentives"). GLOBAL or its Affiliates shall be entitled to retain such Incentives except for the amount that GLOBAL elects to contribute to the "Bonus Program" for GLOBAL, its Affiliates, and franchisees. Subject to the Bonus Program, GLOBAL has the right to use such amounts it receives without restriction for any purpose it deems appropriate (unless GLOBAL agrees otherwise with Providers).     Said contribution from GLOBAL and its Affiliates into the Bonus Program will not exceed 50% of the cash Incentives.     GLOBAL or its Affiliates will pay FRANCHISEE, from the Bonus Program, FRANCHISEE's prorata share of the amount in the Bonus Program ("Bonus Amount") based on a business written basis for the Provider paying such Incentive, by the 20th of the month following the month of collection of the Bonus Amount by GLOBAL or its Affiliates. Details of the Bonus Program

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

will be explained in the Manual, however, FRANCHISEE's participation in the Bonus Program will be contingent upon FRANCHISEE's compliance with the terms of this Agreement and FRANCHISEE's appointment or continued appointment with the Provider that is granting the Bonus Amount.

## XVI.   CONFIDENTIAL OPERATIONS MANUAL AND CHANGES

GLOBAL shall provide FRANCHISEE, for the duration of this Agreement and any renewal, access to the Manual in a format determined by GLOBAL (i.e., in writing, on CD-Rom, via electronic media through a secure website, etc.) FRANCHISEE agrees to comply with the mandatory requirements in the Manual and said compliance is an essential part of its obligations under this Agreement. FRANCHISEE shall at all times be responsible for ensuring that its employees and all other persons under its control comply with the mandatory provisions of the Manual in all respects. The Manual will constitute a Confidential Information and Trade Secrets of GLOBAL, shall remain the property of GLOBAL, and can be used by FRANCHISEE only so long as this Agreement is in effect. The Manual cannot be photocopied, reproduced, or disseminated without GLOBAL's written consent. The Manual may be modified from time to time by GLOBAL in its discretion, and FRANCHISEE agrees that from time to time GLOBAL may reasonably change the System. FRANCHISEE expressly agrees to comply with each mandatory or optional modification, addition or deletion of the System or Manual at its sole cost and expense. FRANCHISEE acknowledges that due to the changing nature of the insurance business, computer hardware and software, as well as changing attitudes of customers and other factors, such changes to the Manual may be necessary and may involve the expenditure of substantial sums of money by FRANCHISEE.

## XVII.  TRANSFERABILITY OF INTEREST

A.      **By GLOBAL**.  GLOBAL is free to assign any or all of its rights and obligations under this Agreement, and upon such assignment GLOBAL shall be relieved of all liability under this Agreement with respect to the rights and obligations so assigned, and any such rights and obligations which are assigned shall accrue to the successor or assignee.

B.      **By FRANCHISEE**.  There can be no Transfer of Interest in this Agreement or the Agency without GLOBAL's prior written approval. The approval is not intended as an approval to any future Transfer of Interest and no future Transfer of Interest shall be valid without the prior written approval of GLOBAL. Any such purported Transfer of an Interest will be voidable at GLOBAL's sole option. If GLOBAL elects not to exercise its right of first refusal pursuant to Section XVII.D below, GLOBAL will not unreasonably withhold its approval to a Transfer of Interest, provided that the following conditions are satisfied:

1.      Governmental Compliance.   The Transfer is conducted in compliance with applicable laws and regulations;

2.      Prior Compliance.   FRANCHISEE has performed its obligations and duties under this Agreement and FRANCHISEE is not in default under this Agreement, or any other agreement with GLOBAL or its Affiliates;

3.      Payments.   The transferee has satisfied all of its obligations to GLOBAL, GLOBAL's Affiliates and suppliers under this Agreement and all other agreements it has with GLOBAL.

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

4.      Release.   FRANCHISEE, including all officers, directors, members, and shareholders (as well as all guarantors under this Agreement) must execute a general release, in the form which GLOBAL approves, of any and all claims against GLOBAL, GLOBAL's Affiliates, and their respective officers, members, managers, directors, employees and agents.

5.      Requirements of Transferee.   The transferee meets the established standards for new franchisees, is of good moral character, has a good credit rating, sufficient financial resources to operate the business, possess the appropriate state insurance licenses and competent qualifications. The transferee must execute GLOBAL's most current franchise agreement and guaranty and must be approved by at least four (4) of the Providers that underwrite insurance policies in the area where the Agency is located.

6.      Transfer Fee.   The transferee pays a transfer fee of seventy-five percent (75%) of the then current Initial Franchise Fee in lieu of the Initial Franchise Fee.

7.      Assumption of Liabilities.   The transferee agrees to assume all liabilities and obligations from the prior operation of the Agency, including the lease and comply with other reasonable requirements GLOBAL may impose.

8.      Completion of Training.   The transferee and/or the manager, successfully complete the initial training program.

9.      Update and Remodel Agency.   Upon request of GLOBAL, the transferee updates and remodels the Agency to comply with GLOBAL's then current standards.

10.     Continuing Liability.   If GLOBAL approves an assignment, GLOBAL shall have the discretion to require FRANCHISEE and the guarantors to remain liable for the full and faithful performance of the obligations of the assignee.

11.     Economically Reasonable Terms.   Although GLOBAL will not be required to determine the value of business upon a Transfer, if in GLOBAL's reasonable judgment, the purchase price or terms of the sale are not economically feasible to the proposed assignee, GLOBAL can withhold its consent to such an assignment or Transfer.  GLOBAL's consent is not, however to be construed as an implication or warranty that the terms of the sale are in fact economically feasible.  GLOBAL may, in good faith, notify FRANCHISEE, stating the reasons thereof, that GLOBAL has elected to withhold approval of the proposed Transfer.

C.      **Death or Incapacity of FRANCHISEE**.   An individual FRANCHISEE or its Principal Owner, by will or other written instrument, may appoint a designated heir to continue operation of the Agency, upon FRANCHISEE's death. Said designated heir must meet the qualifications and comply with the requirements of Section XVII.B.  No fee will be charged on a Transfer pursuant to this paragraph. The Transfer of the FRANCHISEE's Interest in this Agreement and in the Agency to the FRANCHISEE's heirs, personal representatives or conservators, as applicable, in the event of death or legal incapacity of the FRANCHISEE, shall not give rise to GLOBAL's right of first refusal as set forth in paragraph XVII.D below, provided that the heirs, personal representatives or conservators, as applicable, meet GLOBAL's standards for new franchisees; execute the then-current form of franchise agreement; and, that a manager

#1010939.14

26

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

has, or within thirty (30) days, shall have completed GLOBAL's Initial Training Program to the extent necessary and in a manner satisfactory to GLOBAL.

D.     **Right of First Refusal**.  Notwithstanding the foregoing, if FRANCHISEE receives a bona fide, executed, written offer to acquire an Interest from a responsible, fully disclosed purchaser, FRANCHISEE must submit a copy of the offer to GLOBAL.  FRANCHISEE must also provide GLOBAL with any other information it requests to evaluate the offer.  GLOBAL has the right, exercisable by delivering written notice to the FRANCHISEE within thirty (30) days from the date of last delivery to GLOBAL of the offer and any other documents requested by GLOBAL, to acquire the Interest for the price and on the terms and conditions contained in the offer.  Regardless of the terms of the offer, however, GLOBAL may, in its discretion, substitute cash for any form of payment proposed in the offer; require the FRANCHISEE to include customary warranties and representations in the purchase agreement; and structure the transaction as an "asset purchase," rather than a "stock purchase."  GLOBAL will not be obligated to pay any "finder's" or broker's fees that are a part of the proposed sale and shall not be obligated to comply with any part of the offer which directly or indirectly requires payment of any consideration other than a bona fide purchase price for the interest proposed to be transferred.  If GLOBAL declines to exercise its rights of first refusal, FRANCHISEE will have ninety (90) days after GLOBAL declines or the right expires, whichever first occurs, to sell the Interest to said bona fide purchaser upon terms no more favorable than those offered to GLOBAL, subject to compliance with Section XVII.B.  After said ninety (90) days, or if the prospective purchaser does not acquire the franchise, FRANCHISEE must again comply with this paragraph and give GLOBAL the first right to acquire the Interest prior to sale.  The election by GLOBAL not to exercise its right of first refusal as to any offer shall not affect its right of first refusal as to any subsequent offer.

## XVIII.  **INDEPENDENT CONTRACTOR/INDEMNIFICATION**

A.     **Independent Contractor**.  GLOBAL and FRANCHISEE are independent contractors, and no partnership, fiduciary, joint venture, or employment relationship exists between them. FRANCHISEE shall conspicuously identify itself at the premises of the Agency and in all dealings with the public as an independently owned business.  Neither GLOBAL nor FRANCHISEE shall make any agreements or representations in the name of or on behalf of the other that their relationship is other than franchisor and franchisee.

B.     **Indemnification**. Under no circumstances shall GLOBAL be liable for any act, omission, debt, or other obligation of FRANCHISEE.  To the fullest extent permitted by law, FRANCHISEE (for itself and its employees, agents, subcontractors, successors and assigns) agrees, at its sole cost and expense, to indemnify, defend and hold harmless, and to reimburse on demand GLOBAL, and all entities related to GLOBAL and their respective directors, officers, members, employees agents, managers, partners, attorneys, licensees, Affiliates, successors and assigns ("Indemnified Parties) for and against any and all damages, losses, liabilities, bodily injury, property damage, obligations, penalties, fines, claims, litigation, demands, defenses, judgments, suit proceedings, administrative orders, consent agreements, costs, disbursements or expenses of any kind or any nature whatsoever, including without limitation, reasonable attorneys' and expert fees and disbursements arising out of or related to or in any way arising out of the acts or omissions of FRANCHISEE or its employees, agents, officers, directors, parents, subsidiaries, affiliates, successors and assigns ("Indemnitors") arising out of or related to (i) any act or omission, negligent or otherwise, of the Indemnitors or anyone directly or indirectly employed by them or anyone whose acts they may be liable relative to the Agency; (ii) any breach by the Indemnitors or any

#1010939.14

27

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

term or provision of this Agreement; and (iii) the cost, including, but not limited to reasonable attorney's fees, of enforcing this indemnification provision.

This indemnification shall not be construed to indemnify an Indemnified Party to the extent such indemnification is prohibited by law, including, an indemnification of any Indemnified Party from its own negligence, if prohibited by law.   To the extent indemnification of any party hereunder would be prohibited by law, this provision shall not apply to such party, but shall continue to be effective as to all other parties with respect to whom indemnification is not prohibited by applicable law.

## XIX.   **MISCELLANEOUS PROVISIONS**

A.      **Waiver**.  No waiver by either party of performance of any obligation or this Agreement of the other party shall be construed as a waiver of any other or future default or performance obligation. Further, GLOBAL's forbearance, delay, failure to exercise or express waiver of a right or GLOBAL's decision to take some other action regarding breach by any other franchise owner(s) shall not be evidence of a practice, custom or policy of GLOBAL and shall not waive or impair GLOBAL's ability to exercise any right, power or option it has under this Agreement in the event of the same, similar or different breach by FRANCHISEE.  FRANCHISEE also acknowledges that agreements entered into at different times with other franchise owners may contain different terms than this Agreement, and that this shall not waive or impair GLOBAL's rights and FRANCHISEE's obligations under this Agreement.   In addition, GLOBAL's acceptance of any payments due from FRANCHISEE after any breach by FRANCHISEE shall not constitute a waiver of said breach nor limit GLOBAL's ability to fully exercise its rights under this Agreement as a result of FRANCHISEE's breach.

B.      **Severability**.  Should any provision of this Agreement be construed or declared invalid, such decision shall not affect the validity of any remaining portion which shall remain in full force and effect as if this Agreement had been executed with such invalid portion eliminated.  If any restriction contained in this Agreement is deemed too broad to be capable of enforcement, a court of competent jurisdiction is hereby authorized to modify or limit such restriction to the extent necessary to permit its enforcement.

C.      **Entire Agreement**.  This Agreement and the Exhibits to this Agreement represent the entire understanding and agreement between the parties with respect to the subject matter of this Agreement, and supersedes all other negotiations, understandings and representations (if any) made by and between the parties.  No representations, inducements, promises or agreements, oral or otherwise, if any, not embodied in this Agreement shall be of any force and effect; provided, however, that nothing in this or any related agreement is intended to disclaim GLOBAL'S representations made in the Franchise Disclosure Document that was furnished to FRANCHISEE in connection with the offering to operate the Agency.  No amendment to this Agreement is binding unless executed in writing by both parties.

D.      **Representative Capacity**.  In all of their dealings with FRANCHISEE, the officers, directors, employees and agents of GLOBAL act only in their representative capacity for GLOBAL, and not in any individual capacity or on behalf of GLOBAL or any of GLOBAL's Affiliates or agents.

E.      **Notice**.  Whenever notice is required under the terms of this Agreement, it shall be given in writing and sent by registered or certified mail, or by personal delivery to FRANCHISEE's Agency address and to GLOBAL's office, set forth on the signature page or at such other address as designated in

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

accordance with this paragraph. Receipt shall be deemed to have been made two (2) days after mailing or upon personal delivery, whichever first occurs.

F.      **Gender**.  All terms and words used in this Agreement, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of the Agreement or any section, paragraph, or clause herein may require, as if such words had been fully and properly written in the appropriate number and gender.

G.      **Governing Law and Jurisdiction**.  FRANCHISEE acknowledges that this Agreement was accepted in the State of Missouri. Except to the extent that this Agreement or any particular dispute is governed by the U.S. Trademark Act of 1946 (Lanham Act, 115 U.S.C. 1051), this Agreement will be governed, to the extent permissible, by the laws of the State of Missouri without regard to principles of conflicts of law. If, however any provision of this Agreement would not be enforceable under the laws of Missouri, and if the Agency is located outside of Missouri and the provision would be enforceable under the laws of the state in which the Agency is located, then the provision in question (and only that provision) will be interpreted and construed under the laws of the state where the Agency is located. GLOBAL may institute any action arising out of or relating to this Agreement in any state or federal court of general jurisdiction in the State of Missouri or the state or federal court of general jurisdiction in the state in which the Agency is located, and FRANCHISEE and guarantors irrevocably submit to their jurisdiction and waive any objection to the application of Missouri law or to the jurisdiction or venue in those Missouri courts. If FRANCHISEE institutes any action arising out of or relating to this Agreement, such suit must be brought in the Circuit Court of the County of St. Louis or in District Court of the Eastern District of Missouri so long as GLOBAL's principal place of business is located in the St. Louis Metropolitan Area. Otherwise, FRANCHISEE must institute any action arising out of or relating to this Agreement in the nearest federal court located in the state of GLOBAL's principal place of business. If any valid applicable law or regulation [in effect at the time this Agreement is executed] of a governmental authority having jurisdiction over this Agreement limits GLOBAL's rights of rescission or termination or require longer notice periods than set forth herein, this Agreement shall be deemed amended to conform to the minimum notice periods or restrictions upon rescission or termination required by such laws or regulations. The provisions of this Agreement which conflict with the applicable law shall (only to the extent not in accordance with applicable law) be ineffective, and in their stead, GLOBAL shall comply with applicable law respecting each of said matters. If a state regulator requires an amendment to this Agreement, the amendment is attached hereto in a State Law Addendum as Exhibit V. GLOBAL shall not, however, be precluded from contesting the validity, enforceability, or applicability of such laws or regulations in any action relating to this Agreement or to its rescission or termination.

H.      **Headings**.  Headings and paragraph titles are for convenience of reference only and shall not define, limit, or extend the scope or intent of this Agreement or any provision thereof.

I.      **Effect**.  This Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, heirs, administrators, executors, their permitted successors and assigns.

J.      **Remedies**.  In addition to any other remedies in law or in equity to which it may be entitled, GLOBAL shall be entitled without bond to entry of injunctive relief and orders of specific performance enforcing the provisions of this Agreement, in the event FRANCHISEE actually or anticipatorily breaches this Agreement. No right or remedy conferred upon GLOBAL is intended to be exclusive, and every such right or remedy shall be cumulative and in addition to any other rights or

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

remedies available under this Agreement, or otherwise. For purposes of this Agreement, a termination shall include a termination for any reason, expiration, cancellation, failure to renew, assignment or Transfer.

K.     **No Warranty**.  FRANCHISEE acknowledges that no approvals, consents, waivers, conditions, or the like warrant the success of the franchise or the appropriateness of the particular items or matters so approved.

L.     **Receipt of Disclosure Document**.  FRANCHISEE acknowledges receipt of GLOBAL's Franchise Disclosure Document along with this Agreement, at least fourteen (14) days before execution hereof or any payment to GLOBAL. If any unilateral modifications have been made by GLOBAL to this Agreement FRANCHISEE acknowledges that it had at least five (5) business days to review them.

M.     **Joint and Several Liability**.  If two or more persons are the FRANCHISEE under this Agreement, their obligations and liabilities to GLOBAL shall be joint and several.

N.     **Time is of the Essence**.  Time is of the essence of this Agreement.

O.     **Survival**.  FRANCHISEE's obligations regarding Confidential Information and Trade Secrets, non-competition and non-solicitation, indemnification as well as accrued obligations of FRANCHISEE to GLOBAL and its affiliates, shall survive the termination, expiration, assignment or Transfer of this Agreement.

P.     **Limitation on Liens**.  FRANCHISEE shall not grant a security interest, pledge, or place a lien upon FRANCHISEE's interest in this Agreement or in the Agency or in the furniture, fixtures, or equipment used in the business, except that FRANCHISEE shall be permitted to grant a security interest in such furniture, fixtures, and equipment to secure FRANCHISEE's obligation to the seller of or lender for such furniture, fixtures, and equipment to secure any indebtedness relating to the business.

Q.     **Day-to-Day Control**. FRANCHISEE has the sole right and responsibility for the manner and means by which the day-to-day operation of the Agency is determined and conducted and for achieving its business objectives. Subject to any approval, inspection and enforcement rights reserved to GLOBAL, these rights and responsibilities include the employment, supervision, setting the conditions of employment and discharge for its employees at the Agency, daily maintenance, safety concerns, and the achievement of conformity with the System.

R.     **Attorneys' Fees**. If GLOBAL incurs any attorneys' fees or other expenses in seeking enforcement of this Agreement, FRANCHISEE shall be required to reimburse GLOBAL for its reasonable costs and expenses (including, but not limited to attorneys' fees) thereby incurred.

S.     **Varying of Standards**.  Because complete and detailed uniformity under many varying conditions may not be possible or practical, GLOBAL specifically reserves the right and privilege, in its sole discretion, in any specific instance, to vary standards for any franchisee based upon various considerations, such as  the peculiarities of a particular territory, density of population, business potential, business practice or other conditions relating to the operation of the Agency.  GLOBAL may grant to franchisees variations from standard specifications and practices as GLOBAL determines in its sole discretion, and GLOBAL shall have no obligation to grant other franchisees like or similar variations.

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

T.     **Limitation of Legal Actions.**

1.     IN NO EVENT WILL GLOBAL BE LIABLE TO FRANCHISEE FOR PROSPECTIVE PROFITS OR SPECIAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES FOR ANY CONDUCT ARISING OUT OF THIS AGREEMENT OR GLOBAL'S RELATIONSHIP WITH FRANCHISEE REGARDLESS OF WHETHER THE CAUSE IS BASED ON CONTRACT, NEGLIGENCE, STRICT LIABILITY, OTHER TORT OR OTHERWISE.

2.     THE PARTIES WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THEM RELATING TO OR ARISING OUT OF THIS AGREEMENT OR THE RELATIONSHIP OF THE PARTIES.

3.     ANY DISAGREEMENT BETWEEN FRANCHISEE (AND ITS GUARANTORS AND OWNERS) AND GLOBAL (AND ITS AFFILIATES AND OWNERS) WILL BE CONSIDERED UNIQUE AS TO ITS FACTS AND MUST NOT BE BROUGHT AS A CLASS ACTION AND FRANCHISEE (AND ITS GUARANTORS AND OWNERS) WAIVE ANY RIGHT TO PROCEED AGAINST GLOBAL (AND ITS AFFILIATES, OWNERS, MEMBERS, MANAGERS, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, SUCESSORS AND ASSIGNS) BY WAY OF CLASS ACTION, OR BY WAY OF A MULTI-PLAINTIFF, CONSOLIDATED OR COLLECTIVE ACTION.

4.     FRANCHISEE WILL BE BARRED FROM BRINGING ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR GLOBAL'S RELATIONSHIP WITH FRANCHISEE, UNLESS A JUDICIAL PROCEEDING IS COMMENCED WITHIN ONE (1) YEAR FROM THE DATE ON WHICH FRANCHISEE KNEW OR SHOULD HAVE KNOWN OF THE FACTS GIVING RISE TO THAT CLAIM.

## XX. **WARRANTIES AND REPRESENTATIONS OF FRANCHISEE**

A.     **FRANCHISEE HAS BEEN ADVISED TO MAKE AN INDEPENDENT INVESTIGATION OF GLOBAL'S OPERATIONS.  GLOBAL HAS NOT AND DOES NOT REPRESENT THAT FRANCHISEE CAN EXPECT TO ATTAIN A SPECIFIC LEVEL OF SALES, PROFITS, OR EARNINGS.  FRANCHISEE HAS BEEN ADVISED TO OBTAIN INDEPENDENT PROFESSIONAL ADVICE REGARDING THIS FRANCHISE. IF FRANCHISEE HAS NOT OBTAINED SUCH ADVICE FRANCHISEE KNOWINGLY AND WILLINGLY ELECTED NOT TO DO SO.  FRANCHISEE UNDERSTANDS THAT IT MAY SUSTAIN LOSSES AS A RESULT OF THE OPERATION OR THE CLOSING OF THE BUSINESS.     FRANCHISEE UNDERSTANDS THAT THE BUSINESS VENTURE CONTEMPLATED BY THIS AGREEMENT INVOLVES A HIGH DEGREE OF FINANCIAL RISK AND DEPENDS TO A LARGE DEGREE ON FRANCHISEE'S SKILLS, ABILITIES, INITIATIVE, AND HARD WORK.     FRANCHISEE ACKNOWLEDGES THAT IF FRANCHISEEE WAS REFERRED TO GLOBAL AND FRANCHISEE PURCHASES A FRANCHISE, THE REFERRAL SOURCE, WHETHER IT BE ANOTHER FRANCHISEE OR AN UNAFFILIATED THIRD PARTY, MAY BE ENTITLED TO A REFERRAL FEE.**

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

B.      FRANCHISEE and each individual who signs the Guarantee attached to this Agreement ("Guarantors") represent and warrant as follows, and acknowledge that GLOBAL is relying upon said representations and warranties as a material inducement to enter into this Agreement:

1.      The execution, delivery and performance of this Agreement by FRANCHISEE and the execution of the Guarantee by the Guarantors do not and will not violate, conflict with or result in the breach of any term, condition or provision of any contract or agreement to which FRANCHISEE or any Guarantors are bound, and does not require the consent of any other person or entity;

2.      If FRANCHISEE or any of the Guarantors are subject to any restrictive covenants, including but not limited to non-solicitation, non-competition, trade secret, confidential information, or non-disclosure agreements, etc. except those in this Agreement ("Restrictive Covenants"), FRANCHISEE and Guarantors have provided a true and complete copy thereof and any amendments thereto to GLOBAL,;

3.      FRANCHISEE and each of the Guarantors shall fully comply with the terms of any Restrictive Covenants to which any of them are bound;

4.      FRANCHISEE and each of the Guarantors, jointly and severally, will indemnify and hold GLOBAL harmless from any damages, including but not limited to attorney's fees and expenses incurred in the defense thereof, sustained by GLOBAL as a result of a misrepresentations or breach of any of the provisions of any of the foregoing subparagraphs; and

5.      Notwithstanding anything herein to the contrary, GLOBAL shall be permitted to terminate this Agreement, pursuant to subsection XIV.A.3(h), due to a misrepresentation or breach of any of the provisions of any of the foregoing subparagraphs..

## XXI.   CAVEAT

**THE SUCCESS OF THE BUSINESS IS SPECULATIVE AND DEPENDS, TO A LARGE EXTENT, UPON THE ABILITY OF FRANCHISEE AS AN INDEPENDENT BUSINESS PERSON, AS WELL AS OTHER FACTORS.   GLOBAL DOES NOT MAKE ANY REPRESENTATIONS OR WARRANTY AS TO THE POTENTIAL SUCCESS OF THE BUSINESS AND NO ONE IS AUTHORIZED TO MAKE ANY SUCH REPRESENTATIONS OR WARRANTIES.   FRANCHISEE FURTHER ACKNOWLEDGES THAT IT HAS READ AND COMPLETED THE QUESTIONNAIRE, A COPY OF WHICH IS SET FORTH AS EXHIBIT VI OF THIS AGREEMENT.**

**FRANCHISEE UNDERSTANDS AND AGREES THAT GLOBAL HAS NO OBLIGATION TO ACCEPT FRANCHISEE'S APPLICATION AND MAY REFUSE TO GRANT A FRANCHISE FOR ANY REASON, OR NO REASON, WITHOUT DISCLOSING THE BASIS FOR ITS DECISION.   FRANCHISEE ACKNOWLEDGES THAT UNLESS AND UNTIL GLOBAL NOTIFIES FRANCHISEE IN WRITING THAT THE FRANCHISE HAS BEEN GRANTED, FRANCHISEE IS NOT A FRANCHISEE OF GLOBAL AND MAY NOT RELY UPON BECOMING A FRANCHISEE OF GLOBAL.**

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## XXII.   GLOBAL'S LIMITATION OF LIABILITY

GLOBAL is not in any way responsible for the acts of any of the Providers, any EBP Agent, or GLOBAL's Affiliates. FRANCHISEE hereby agrees that it will not hold GLOBAL liable for any acts, including but not limited to termination as a Subagent by a Provider or any other acts or omissions of any Provider, any EBP Agent or Affiliate.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date set forth below their names.

EQUITY ONE FRANCHISORS, LLC

By: _____
      Raymond M. Spears, President & CEO

FRANCHISEE:  PRIESTMAN INSURANCE GROUP, INC.

By: _____
      Bradley T. Priestman, President

Address:  15455 Conway Rd., Ste. 315
                Chesterfield, MO  63017

Address:  A Florida location to be determined

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## GUARANTEE

In consideration of, and as an inducement to, the execution of the above Franchise Agreement (the "Agreement"), by EQUITY ONE FRANCHISORS, LLC ("GLOBAL") in favor of PRIESTMAN INSURANCE GROUP, INC. ("FRANCHISEE"), each of the undersigned ("GUARANTORS") hereby personally and unconditionally guarantees to GLOBAL, its Affiliates (as hereinafter defined), and their successors and assigns for the term of the Agreement and thereafter as provided in the Agreement, that FRANCHISEE shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Agreement and agrees to be personally bound by, and personally liable for the breach of each and every provision in the Agreement. The GUARANTORS agree to be personally and unconditionally bound by each and every undertaking, agreement and covenant set forth in the Agreement. Further, each of the Guarantor(s) agrees to personally comply with and abide by the non-competition and non-solicitation provisions, other restrictive covenants and nondisclosure provisions contained in the Agreement, as well as the provisions in the Agreement relating to the Marks, indemnification and Transfer, to the same extent as and for the same period of time as FRANCHISEE is required to comply with and abide by such covenants and provisions. All of the foregoing obligations of the undersigned shall survive any expiration or termination of the Franchise Agreement or this Guarantee.

The GUARANTORS further hereby personally and unconditionally guarantee all debts and obligations FRANCHISEE incur to GLOBAL, its successors, assigns, affiliated entities, parent corporation, and subsidiaries ("Affiliates"), as the case may be, as a result of any obligations under the Agreement and as a result of purchases of products or services from GLOBAL and its Affiliates. Each of the undersigned waives:

(1)     acceptance and notice of acceptance by GLOBAL or Affiliates of the foregoing undertakings;

(2)     notice of demand for payment of any indebtedness or nonperformance of any obligations hereby guaranteed;

(3)     protest and notice of default to any party with respect to the indebtedness or nonperformance of any obligations hereby guaranteed;

(4)     any right he may have to require that an action be brought against FRANCHISEE or any other person as a condition of liability;

(5)     all rights to payments and claims for reimbursement or subrogation which any of the GUARANTORS may have against the FRANCHISEE arising as a result of the GUARANTORS' execution of and performance under this guaranty; and

(6)     any and all other notices and legal or equitable defenses to which he may be entitled.

Each of the undersigned consents and agrees that:

(1)     his or her direct and immediate liability under this guaranty shall be joint and several;

(2)     he or she shall render any payment or performance required under the Agreement

#1010939.14

34

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

upon demand if the FRANCHISEE fails or refuses punctually to do so;

(3)     such liability shall not be contingent upon or conditioned upon pursuit by GLOBAL or Affiliates of any remedies against the FRANCHISEE or any other person; and

(4)     such liability shall not be diminished, relieved or otherwise affected by any extension of time, credit or the indulgence which GLOBAL or Affiliates may from time to time grant to the FRANCHISEE or to any other person, including, without limitation, the acceptance of any partial payment or performance or the compromise or release of any claims, none of which shall in any way modify or amend this guaranty, which shall be continuing and irrevocable during the term of the Agreement.

If GLOBAL or any of the Affiliates are required to enforce this Guarantee in any judicial proceeding or appeal thereof, the GUARANTORS shall reimburse GLOBAL and Affiliates for its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorney assistants', and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel and living expenses, whether incurred prior to, in preparation for or in contemplation of the filing of any written demand, claim, action, hearing or proceeding to enforce this Guarantee. Further, GUARANTORS hereby consent to the applicability of the venue and jurisdiction provisions in the Franchise Agreement.

The terms contained in the Franchise Agreement and this Guarantee constitute the entire agreement between the parties, and there are no representations, inducements, promises, or agreements, oral or otherwise, between the parties not embodied herein.

IN WITNESS WHEREOF, each of the undersigned has hereunto affixed their signatures on the same day and year as the Agreement was executed.

Print Name: Bradley T. Priestman  
Signature:  _____  
Date:     9-10-12  
Address:  1417 NW 4th Ave.  
          Fort Lauderdale, FL 33311

Print Name: Patricia K. Dionne  
Signature: _____  
Date:     9-10-12  
Address:  4689 SW Hammock Creek Dr.  
          Palm City, FL 34990

Print Name: David D. Dionne  
Signature: _____  
Date:     9-10-12  
Address:  4689 SW Hammock Creek Dr.  
          Palm City, FL 34990

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## EXHIBIT I
### SITE

FRANCHISEE's Agency shall be located at:

A Florida location to be determined

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## EXHIBIT II
## PROVIDERS

## (SUBJECT TO CHANGE FROM TIME TO TIME)

### *Home/Auto/Other*
AAA
American Commerce
American Strategic Insurance
Auto One Insurance
Bankers Insurance Group
Citizens Property Insurance
CSE Insurance Group
Fidelity National
GMAC
Grange
Homeowners of America
Kemper
Mercury Insurance Group
MetLife
National Lloyds
Progressive
Rio National
Safeco
State Auto
The Hartford
The Republic Group
Travelers
Universal Property & Casualty

Affirmative
American Modern
Bristol West
Cornerstone
Dairyland/Viking
Foremost
Unitrin Specialty
PersonalUmbrella.com
Rio National
Condon & Skelly (Classic Autos)
Hagerty (Classic Autos)
Hallmark Insurance
United Marine Underwriters (Boats)

Buckingham Badler
Demetriou General Agency, Inc.

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

***Business/Commercial***

American Strategic Insurance
Citizens Property Insurance
CSE Insurance Group
Fidelity National
Grange
Mercury Insurance Group
Millers Mutual Group
National Lloyds
Progressive
State Auto
The Hartford
The Republic Group
Travelers
Zurich

Cardinal Comp
FirstComp
KF&B Insurance
MiniCo
Missouri Employers Mutual
Philadelphia
Sports & Fitness Insurance Corporation

American Management Corp.
Appalachian Underwriters
Burns & Wilcox
Church Underwriters, Inc.
Commercial Insurance Underwriters, Inc.
Conway E&S, Inc.
Davidson-Babcock, Inc.
Demetriou General Agency, Inc.
Distinguished Programs Group
Insurance Intermediaries, Inc.
International Placement Services, Inc.
Irwin Siegel Agency, Inc.
Jaeger + Haines, Inc.
MedJames, Inc.
Morstan General Agency, Inc.
Preferred Concepts
S A Freerks & Associates, Inc.
Seacoast Underwriters, Inc.
Texas Commercial Insurance Facilities
The McGowan Companies

Premium Finance Specialists

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

### *Health*
Metlife
Anthem Blue Cross / Blue Shield
United Healthcare
Assurant
Aetna
Principal
Golden Rule
GHP

### *Long-Term Care*
John Hancock
Metlife
Genworth

### *Life & Disability*
AIG
IAC
Metlife
Banner
Prudential
Illinois Mutual
Genworth
Americo
United of Omaha
Lincoln Heritage
Principal
Life of the Southwest

### *Dental & Supplemental*
Colonial
Unum
Principal
Delta Dental
United Healthcare
Anthem Blue Cross / Blue Shield

### *Additional Resources*
Digital Insurance
Gateway Financial Advisors, Inc.
Visor Benefits, Inc.

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## EXHIBIT III

### NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT

In consideration of my employment in a supervisory capacity or as an insurance licensed personnel employed by *Proslean Graphic* ("Franchisee"), a franchisee of Equity One Franchisors, LLC ("Franchisor"), I agree that:

1.      Non-Solicitation.  During the term of my employment and for one (1) years after the expiration or termination of my employment for any reason or the entry of a final order of a court of competent jurisdiction enforcing this covenant, whichever is later, I will not in any manner or in any capacity, directly or indirectly, for myself or any other person or entity, actually or attempt:

> (1) to solicit, contact or do business with any Customer for the purpose of selling any product or service which is similar to or competitive with any product or service offered by Franchisee or Franchisor or its Affiliates, or otherwise interfere with or take away any Customers or the business of any such Customer;

> (2) to solicit or hire any employee of Franchisor, its Affiliates or their franchisees or interfere with the relationship between Franchisor, its Affiliates or their franchisees and any of its employees, agents or suppliers.

For purposes of this Agreement, "Customer" means any existing customers or identified prospective customers (of Franchisee, Franchisor, its Affiliates or other franchisee) with whom I have had direct or indirect contact or about whom I have learned confidential information by virtue of the operation of the Franchisee's business other than any customers with whom I have had no contact within the two (2) years preceding the expiration or termination of my employment.

2.      Confidentiality.  I will not, during the term of my employment, or after termination or expiration of my employment, use, communicate or divulge to anyone, any Confidential Information unless such information is generally known and in the public domain.  Further, I will use best efforts to strictly adhere to all applicable federal and state laws concerning privacy and disclosure of confidential, financial, health care and medical information and shall guard against any accidental disclosure.  For purposes of this Agreement, Confidential Information means any and all information, knowledge and know-how not generally known in the business about the system and products, specifications, standards, methods, procedures, sales and marketing material, systems, procedure and techniques, knowledge of and experience in operating a GlobalGreen Insurance Agency and all non-public information concerning the financial data, customer accounts, client specific information, work product performed for any customer or client, work product documents and records, specific strategies and other information or material which Franchisee or Franchisor may designate as confidential.   Upon termination or expiration of my employment, I will return to Franchisee and not keep any copies of any Confidential Information including but not limited to all Customer lists, files, records, documents, bills, and insurance policy materials.

3.      Severability.  Should any provision of this Agreement be construed or declared invalid, such decision shall not affect the validity of any remaining portion which shall remain in full force and effect as if this Agreement had been executed with such invalid portion eliminated.  If any restriction contained in this Agreement is deemed too broad to be capable of enforcement, a court of competent jurisdiction is hereby authorized to modify or limit such restriction to the extent necessary to permit its enforcement.  All covenants contained in this Agreement, including but not limited to those relating to non-solicitation

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

and Confidential Information, shall be interpreted and applied consistent with the requirements of reasonableness and equity.

5.      Enforcement.      This Agreement may be enforced by either Franchisor, its successor, or Franchisee, and I understand that it is intended to protect the legitimate business interests of Franchisor, its successors, its franchisees, and Franchisee. If suit is brought to enforce this Agreement, I agree to pay reasonable attorney's fees and expenses incurred by the party bringing the suit.

6.      Miscellaneous. No waiver by either party of performance of any obligation or this Agreement of the other party shall be construed as a waiver of any other or future default or performance obligation. The provisions of this Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective heirs, legatees, personal representatives, successors and assigns.

Date: _____ $\tau$ - /0 - / 2 _____

Name: _____ Bradley T Priestman _____

Signed: _____ Bradley T _____

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## EXHIBIT IV
### IRREVOCABLE POWER OF ATTORNEY

That PRIESTMAN INSURANCE GROUP, INC. ("FRANCHISEE") does hereby irrevocably constitute and appoint EQUITY ONE FRANCHISORS, LLC, a Missouri limited liability company ("GLOBAL"), FRANCHISEE's true and lawful attorney-in-fact and agent for FRANCHISEE and in FRANCHISEE's name, place and stead, to do or cause to be done all things and to sign, execute, acknowledge, certify, deliver, accept, record and file all such agreements, certificates, instruments and documents as, in the sole discretion of GLOBAL, shall be necessary or advisable for the sole purpose of assigning to GLOBAL all of FRANCHISEE's right, title and interest in and to any and all telephone numbers used in connection with the Agency and all related Yellow Pages, White Pages and other business listings, including but not limited to, the execution and delivery of any Transfer of Service Agreement and any other transfer documentation required by the applicable telephone service company providing telephone services to FRANCHISEE, and to do or cause to be done all things and to sign, execute, acknowledge, certify, deliver, accept, record, and file all such agreements, certificates, instruments and documents as, in the sole discretion of GLOBAL, shall be necessary or advisable for the sole purpose of assigning to GLOBAL all of FRANCHISEE's right, title and interest in and to any Internet and web site name pages, domain name listings, and registrations that contain the Marks, or any of them, in whole or in part, hereby granting unto GLOBAL full power and authority to do and perform any and all acts and things which, in the sole discretion of GLOBAL, are necessary or advisable to be done as fully to all intents and purposes as FRANCHISEE might or could itself do, and hereby ratifying and confirming all that GLOBAL may lawfully do or cause to be done by virtue of this Power of Attorney and the powers herein granted.

During the term of this Power of Attorney and regardless of whether FRANCHISEE has designated any other person to act as its attorney-in-fact and agent, no person, firm or corporation dealing with GLOBAL shall be required to ascertain the authority of GLOBAL, not to see to the performance of the agency, nor be responsible in any way for the proper application of funds or property paid or delivered to GLOBAL. Any person, firm or corporation dealing with GLOBAL shall be fully protected in acting and relying upon a certificate of GLOBAL that this Power of Attorney on the date of such certificate has not been revoked and is in full force and effect, and FRANCHISEE shall not take any action against any person, firm or corporation acting in reliance on such a certificate or a copy of this Power of Attorney. Any instrument or document executed on behalf of FRANCHISEE by GLOBAL shall be deemed to include such a certificate on the part of GLOBAL, whether or not expressed. This paragraph shall survive any termination of this Power of Attorney.

This Power of Attorney shall terminate two (2) years following the expiration or termination of that certain Franchise Agreement dated of even date herewith by and between GLOBAL and FRANCHISEE. Such termination, however, shall not affect the validity of any act or deed that GLOBAL may have effected prior to such date pursuant to the powers herein granted.

This instrument is to be construed and interpreted as an irrevocable Power of Attorney coupled with an interest and such Power of Attorney shall not be affected by the subsequent disability or incapacity of the principal.

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

IN WITNESS WHEREOF, the undersigned has executed this Irrevocable Power of Attorney as of the 10th day of September, 2012.

FRANCHISEE: PRIESTMAN INSURANCE GROUP, INC.

By: _____

Name:  Bradley T. Priestman

Title:  President

THE STATE OF _Florida_ )

  )

COUNTY OF _Broward_ )

BEFORE ME, the undersigned authority, on this day personally appeared Bradley T. Priestman of Priestman Insurance Group, Inc., known to me to be the person whose name is subscribed to the foregoing instrument, who acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 11th day of September, 20_12_

_____

Notary Public

My Commission



PATRICIA ANNE GOU...
MY COMMISSION # EE127587
EXPIRES September 05, 2015
(407) 398-0153   FloridaNotaryService.com

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

**EXHIBIT V**
**STATE LAW ADDENDUM**

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## **EXHIBIT VI**
## **FRANCHISEE DISCLOSURE QUESTIONNAIRE**

As you know, Equity One Franchisors, LLC, (the "Franchisor") and you are preparing to enter into a Franchise Agreement for the operation of a GlobalGreen Insurance Agency franchise. The purpose of this Questionnaire is to determine whether any statements or promises were made to you that the Franchisor has not authorized and that may be untrue, inaccurate or misleading. Please review each of the following questions and provide honest and complete responses to each question.

1.      Have you received and personally reviewed the Franchise Agreement and each exhibit and schedule attached to it? Yes ⟋ No _____

2.      Have you received and personally reviewed the Franchisor's Franchise Disclosure Document ("FDD") that Franchisor provided to you?
        Yes ⟋ No _____

3.      Did you sign a receipt for the FDD indicating the date you received it?
        Yes ⟋ No _____

4.      Date on which you received the FDD and related Exhibits explaining GlobalGreen Insurance Agency Franchise.
        9-10 -8/2012, 2012
        (month, day)

5.      Date on which you received a completed copy, other than signatures, of the Franchise Agreement.
        8/20/12 , 2012
        (month, day)

6.      Date on which you signed the Franchise Agreement.
        9-10-2012, 2012
        (month, day)

7.      Were you given the opportunity to discuss the benefits and risks of operating a GlobalGreen Insurance Agency franchise with an attorney, accountant, or other professional advisor, and do you understand those risks?
        Yes ⟋ No _____

8.      Do you understand that the success or failure of your franchise will depend in large part upon your skills and abilities, competition from other businesses, interest rates, inflation, labor and supply costs, lease terms and other economic and business factors?
        Yes ⟋ No _____

9.      Has any employee or other person speaking on behalf of the Franchisor or any of Franchisor's affiliates made any statement or promise regarding the amount of money you may earn or that any of our franchised or affiliate-owned agencies earn in operating the business other than what is discussed in Item 19 of the FDD?
        Yes _____ No ⟋

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

10.   Has any employee or other person speaking on behalf of the Franchisor made any statement or promise concerning the likelihood of success that you should or might expect to achieve from operating the business?
      Yes _✗_ No _✓_ pvo

11.   Do you understand and acknowledge that the commission rate with the EBP Agent is different than your commission rate with GLOBAL and its Affiliates and this commission rate, which may change from time to time, will be described in the Manual.
      Yes____ No_____

12.   Has any employee or other person speaking on behalf of the Franchisor made any statement, promise or agreement concerning the advertising, marketing, training, support service or assistance that the Franchisor will furnish to you that is contrary to, or different from, the information contained in the FDD?
      Yes ___ No _✓_

                        *       *       *

      Please understand that your responses to these questions are important to us and that we will rely on them.

      By signing this Questionnaire, you are representing that you have responded truthfully to the above questions. You are also representing that you have reviewed all of these questions and the answers with the other owners of the franchise and any of Franchisee's representatives who had discussions with the Franchisor or any of its officers, agents, or employees. The responses from those people are also included by you above.

      Dated on September _10_, 2012.


FRANCHISE APPLICANT

Name: PRIESTMAN INSURANCE GROUP, INC.

Signature: _____
           Bradley T. Priestman, President

Signature: _____
           Bradley T. Priestman, Individually


#1010939.14

*Equity One Franchisors, LLC and Priestman Group, Inc*

AMENDMENT TO FRANCHISE AGREEMENT ("Amendment") entered into as of this 21st of September, 2012, by and between EQUITY ONE FRANCHISORS, LLC ("GLOBAL") and, Priestman Group, Inc. a Florida sole proprietor ("FRANCHISEE"), and Bradley T. Priestman, and Patricia K. Dionne, and David J. Dionne, ("GUARANTORS"), who by their signatures consent to this Amendment and acknowledge that their Guarantee remains in full force and effect;

WHEREAS, GLOBAL and FRANCHISEE entered into a Franchise Agreement and Franchise Agreement Amendment for the operation of a GlobalGreen Insurance Agency to be located at a Florida location to be determined ("Franchise Agreements"), on or about September 10th, 2012, and said Franchise Agreements were personally guaranteed by GUARANTORS; and

WHEREAS, FRANCHISEE has requested that GLOBAL amend the Franchise Agreements in accordance with the terms set forth below and GLOBAL is willing to do so;

NOW, THEREFORE, in consideration of the mutual promises and conditions contained herein, the parties hereby agree as follows:

1. EXHIBIT I. The Site should be deleted and replaced with the following:

   FRANCHISEE's Agency shall be located at:

   1000 SE Monterey Commons, Suite 106,
   Stuart, FL 34997

2. Other Terms Remain in Effect. Except as modified by this Amendment, all of the terms of the Franchise Agreements and the Guarantee shall remain in full force and effect. This Amendment hereby forms a part of and is incorporated into the Franchise Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Amendment the day and year first above written.

**GLOBAL:**

EQUITY ONE FRANCHISORS, LLC

By: _____
Raymond M. Spears, President & CEO

**FRANCHISEE:**

Priestman Group, Inc.

By: _____
Bradley T. Priestman, President

**GUARANTORS:**

_____
Bradley T. Priestman, President

_____
Patricia K. Dionne

_____
David J. Dionne

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

# EXHIBIT B

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## SERVICE AGREEMENT

This Service Agreement dated September _10_, 2012 is between Equity One Insurance Agency, L.L.C. ("Equity One") and Priestman Insurance Group, Inc. ("Franchisee") and Bradley T. Priestman, and Patricia K. Dionne, and David J. Dionne ("Guarantors").

WHEREAS, Franchisee is a franchisee of Equity One Franchisors, LLC ("Franchisor"), an affiliate of Equity One, pursuant to a Franchise Agreement between Franchisor and Franchisee of even date herewith ("Franchise Agreement"); and

WHEREAS, the Franchise Agreement requires Franchisee to use and have access to Applied Systems, Inc.'s EPIC Online Management Software ("Software") in the operation of its Agency; and

WHEREAS, Equity One has entered into a Master Agreement for Products and Services including the Schedule ASP with Applied Systems, Inc. ("Master License Agreement") for the use and access to the Software and has been permitted to license franchisees of Franchisor the right to use and access the Software under the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and conditions contained herein, the parties agree as follows:

1. <u>Grant</u>. Equity One grants Franchisee the right to have one (1) user ("Users") use and access the Software. If Franchisee wants to add additional Users, Franchisee will notify Equity One at least thirty (30) days in advance and pay an additional User Fee and increased SMA Fee as described in paragraph 3 below.

2. <u>Term</u>. The term of this Agreement is for the term of the Franchise Agreement unless terminated sooner in accordance with the terms of this Agreement. Franchisee acknowledges and understands the term of the Master Agreement is on a month to month basis. Therefore, Equity One has the right to terminate this Agreement on one hundred eighty (180) days notice to Franchisee. Equity One may change software or software vendors, for any reason in its sole discretion. Such change may result in increased costs to Franchisee and may cause serious consequences to Franchisee.

3. <u>Software Fees</u>. Franchisee shall pay Equity One a User Fee of $990.00 per User at the time this Agreement is executed. Franchisee shall pay Equity One an additional User Fee for each additional User. The User Fee is subject to increase upon notification by Equity One. In addition, Franchisee shall pay Equity One, monthly by the 20th day of each month, a SMA Fee. This SMA Fee is for support, maintenance and access to the Software. The SMA Fee is currently $125.00 per month per User and can be increased upon written notice by Equity One. The SMA Fee will be deducted from the revenue collected by Equity One on Franchisee's behalf pursuant to the terms of the Franchise Agreement.

4. <u>Failure of Software to Perform and Privacy</u>. For purposes of this Agreement, "Privacy Laws" means all laws, statutes, codes, ordinances, rules and regulations pertaining to the privacy, confidentiality, handling, storage, disposal, and/or safeguarding of customer, employee, financial, health, or other personal information, records, or data, including: (i) the Gramm-Leach-Bliley Act ("GLBA") (15 U.S.C. § 6801 *et seq.*); (ii) the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); (iii) the Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681 *et seq.*), including the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"); (iv) all federal and state data security breach notification and incident response laws and regulations; and (v) all

1

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

implementing rules and regulations, amendments to, and successors of each of the laws and regulations listed above. Equity One is not responsible for any defaults by Applied Systems, Inc. under the Master License Agreement, or any failure of the Software to perform or lack of compliance with any Privacy Laws. In the event that Applied Systems, Inc. defaults under the Master License Agreement, the Software fails to adequately perform or is not compliant with Privacy Laws, Franchisee will notify Equity One. Equity One will use good faith in notifying Applied Systems, Inc. of any such failure or lack of compliance and will assist Franchisee in having the problem resolved, if possible.  NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, APPLIED SYSTEMS, INC. IS SOLELY RESPONSIBLE FOR THE SOFTWARE AND EQUITY ONE DOES NOT AND WILL NOT ASSUME ANY LIABILITY OR RESPONSIBILITY FOR THE SOFTWARE, ITS OPERATION OR THE SOFTWARE OR APPLIED SYSTEMS, INC.'S COMPLIANCE WITH PRIVACY LAWS.

5.    Obligations of Franchisee.  This Agreement is subject to and subordinate to all the terms and conditions of the Master License Agreement, and the terms of the Master License Agreement are hereby expressly incorporated as part of this Agreement.  Equity One will have the Master License Agreement at its office and available for review by Franchisee.  Franchisee shall not perform any act or omission which would violate any term or condition of the Master License Agreement or be the cause for termination of the Master License Agreement between Applied Systems, Inc. and Equity One.

6.    Default.  In the event that Franchisee defaults under this Agreement, Equity One will provide Franchisee with at least thirty (30) days prior written notice of said default. If Franchisee fails to remedy said default within said period, Equity One shall have the right to terminate this Agreement and shall have all remedies available at law or in equity, including the right to suspend or terminate Franchisee's access to the Software.  In the event that the Franchise Agreement is terminated, Franchisee's rights under this Agreement shall be terminated immediately without notice or opportunity to cure.

7.    Limitations.  IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY UNDER THIS AGREEMENT FOR ANY PUNITIVE DAMAGES, OR INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, SUCH AS LOST PROFITS, LOST OPPORTUNITES, LOST SAVINGS AND THE LIKE.  THE CUMULATIVE LIABILITY OF EQUITY ONE TO FRANCHISEE AND THE USERS FOR ALL CLAIMS ARISING UNDER THIS AGREEMENT, WHETHER IN CONTRACT OR TORT, INCLUDING NEGLIGENCE, SHALL NOT EXCEED THE TOTAL AMOUNT OF ALL FEES PAID BY FRANCHISEE TO EQUITY ONE HEREUNDER DURING THE PRECEDING TWELVE (12) MONTH PERIOD.  FRANCHISEE'S SOLE AND EXCLUSIVE REMEDY IS IN THIS AGREEMENT REGARDLESS OF THE SUCCESS OR EFFECTIVENESS OF OTHER REMEDIES.

8.    Assignment.  Equity One is free to assign any or all of its rights and obligations under this Agreement, and upon such assignment Equity One shall be relieved of all liability under this Agreement with respect to the rights and obligations so assigned, and any such rights and obligations which are assigned shall accrue to the successor or assignee.    Franchisee is not permitted to assign any or all of its rights and obligations under this Agreement except in connection with a permitted transfer in accordance with the Franchise Agreement.

9.    Entire Agreement; Modification.  This Agreement contains the entire agreement between the Equity One and Franchisee with respect to the Software.  No modification of this Agreement shall be effective unless in writing and executed by both parties to this Agreement.

2

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

10.     Governing Law. This Agreement shall be construed in accordance with and governed by the laws of the State of Missouri. In any action arising out of or relating to this Agreement, such suit must be brought in the Circuit Court of the County of St. Louis or in District Court of the Eastern District of Missouri. Franchisee irrevocably submits to their jurisdiction and waives any objection to the application of Missouri law or to the jurisdiction or venue in those Missouri courts.

11.     Waiver. No waiver by either party of performance of any obligation or this Agreement of the other party shall be construed as a waiver of any other or future default or performance obligation.

12.     Binding Effect. The provisions of this Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective heirs, legatees, personal representatives, successors and assigns.

13.     Severability. Should any provision of this Agreement be construed or declared invalid, such decision shall not affect the validity of any remaining portion which shall remain in full force and effect as if this Agreement had been executed with such invalid portion eliminated.

14.     Guarantors. The undersigned Guarantors agree to be personally bound and personally liable for the performance and breach of each and every provision of this Agreement. Each Guarantor's liability hereunder is joint and several and shall not be contingent or conditioned upon pursuit by Equity One of any remedies against the Franchisee or any other person.

        IN WITNESS WHEREOF, the parties have executed this Service Agreement as of the day and year first above written.

Equity One Insurance Agency, L.L.C.                    Franchisee: Priestman Insurance Group, Inc.

By:                                                    By:
    Jeffrey L. Wilson, CEO                                 Bradley T. Priestman, President

                                                       Guarantors:

                                                       Bradley P. Priestman

                                                       Patricia K. Dionne

                                                       David J. Dionne

3

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## AMENDMENT TO SERVICE AGREEMENT
### *Equity One Insurance Agency, LLC and Priestman Group, Inc.*

AMENDMENT TO SERVICE AGREEMENT ("Amendment") entered into as of this 21st of September, 2012, by and between EQUITY ONE INSURANCE AGENCY, LLC ("EQUITY ONE") and Priestman Group , a Florida sole proprietor ("FRANCHISEE"), and Bradley T. Priestman, and Patricia K. Dionne, and David J. Dionne ("GUARANTORS"), who by their signatures consent to this Amendment and acknowledge that their Guarantee remains in full force and effect;

WHEREAS, EQUITY ONE and FRANCHISEE entered into a Service Agreement for the operation of a GlobalGreen Insurance Agency to be located at a Florida location to be determined ("Franchise Agreement"), on or about September 10th, 2012, and said Service Agreement was personally guaranteed by GUARANTORS; and

WHEREAS, FRANCHISEE has requested that EQUITY ONE amend the Service Agreement in accordance with the terms set forth below and EQUITY ONE is willing to do so;

NOW, THEREFORE, in consideration of the mutual promises and conditions contained herein, the parties hereby agree as follows:

1. <u>Item 1 Grant.</u>  The first sentence is deleted and replaced with the following sentence:

   Equity One grants Franchisee the right to have one (1) users ("USERS") use and access the Software at the following location:  1000 SE Monterey Commons, Suite 106, Stuart, FL 34997("Location").

2. <u>Other Terms Remain in Effect.</u>  Except as modified by this Amendment, all of the terms of the Service Agreement and the Guarantee shall remain in full force and effect.  This Amendment hereby forms a part of and is incorporated into the Service Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Amendment the day and year first above written.

**EQUITY ONE:**

EQUITY ONE INSURANCE AGENCY, LLC

By: _____
Jeffrey L. Wilson, CEO

**FRANCHISEE:**

Priestman Group, Inc

By: _____
Bradley T. Priestman, President

**GUARANTORS:**

_____
Bradley T. Priestman, President

_____
Patricia K. Dionne

_____
David J. Dionne

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

# EXHIBIT C

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

**STATE OF FLORIDA UNIFORM COMMERICAL CODE FINANCING STATEMENT FORM**

**Florida Secured Transaction Registry**

# FILED

2021 Sep 08 08:45 AM

******* 202108378497 *******

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Corporation Service Company; 1-800-858-5294
Email FLSOSUCCFilingsV3@cscglobal.com

B. SEND ACKNOWLEDGEMENT TO:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Priestman Group Inc | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS Line One | | This space not available. | |
| 1000 SE MONTEREY COMMONS BLVD # B106 | | | |
| MAILING ADDRESS Line Two | CITY | STATE / POSTAL CODE / COUNTRY | |
| | STUART | FL. / 34996 / USA | |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS Line One | | This space not available. | |
| MAILING ADDRESS Line Two | CITY | STATE / POSTAL CODE / COUNTRY | |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| U.S. Small Business Administration | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS Line One | | This space not available. | |
| 2 North 20th Street, Suite 320 | | | |
| MAILING ADDRESS Line Two | CITY | STATE / POSTAL CODE / COUNTRY | |
| | Birmingham | AL. / 35203 / USA | |

**4. This FINANCING STATEMENT covers the following collateral:**

All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.ALL DOCUMENTARY STAMPS DUE AND PAYABLE OR TO BECOME DUE AND PAYABLE, HAVE BEEN PAID.   150212 9101

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK EXACTLY ONE  BOX
☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**   2180 26668

STANDARD FORM - FORM UCC-1 (REV.05/2013)   Filing Office Copy   Approved by the Secretary of State, State of Florida

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

# EXHIBIT D

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM



**GREENSFELDER**
ATTORNEYS AT LAW

Dawn M. Johnson
Direct Dial: 314-516-2678
dmj@greensfelder.com

July 19, 2022

**VIA FEDERAL EXPRESS and CERTIFIED MAIL # 70212720000298456162, 70212720000298456155, 70212720000298456148, 70212720000298456131, 7021720000298456179, 70212720000298456186, and 70212720000 98456193**

**AND VIA EMAIL TO:  brad@gotchacoveredinsurance.com; pkdionne@aol.com; patti@gotchacoveredinsurance.com; coverage@gotchacoveredinsurance.com; priestman.ins@gmail.com**

Priestman Group, Inc.                    Mr. Bradley T. Priestman
759 SW Federal Hwy #101              759 SW Federal Hwy #101
Stuart, FL 34994                          Stuart, FL 34994
Attn:  Bradley T. Priestman, President

Priestman Group, Inc.                    Ms. Patricia K. Dionne
P.O. Box 3181                             759 SW Federal Hwy #101
Stuart, FL 34995                          Stuart, FL 34994

Priestman Group, Inc.                    Ms. Patricia K. Dionne
1000 SE Monterey Commons             P.O. Box 3181
Suite 106                                 Stuart, FL 34995
Stuart, FL  34997

Mr. David J. Dionne
2385 6th Street
Vero Beach, FL 32962

## NOTICE OF DEFAULT

> **Re:    *Franchise Agreement for a GlobalGreen Insurance Agency at 1000 SE Monterey Commons, Ste. 106, Stuart, FL 34997 between Priestman Group, Inc. ("Franchisee" or "Priestman") and Equity One Franchisors, LLC dated September 11, 2012, as amended ("Franchise Agreement")***

Ladies and Gentlemen:

This firm represents Equity One Franchisors, LLC ("Equity One"), with whom Franchisee entered into the Franchise Agreement referenced above.   You personally guaranteed the

Chicago Office:
200 West Madison, Ste. 3300
Chicago, IL 60606
T: 312-419-9090 F: 312-419-1930

Clayton Office:
8000 Maryland Ave., Ste. 1250
Clayton, MO 63105
T: 314-345-5450 F: 314-241-8624

Southern Illinois Office:
821 W. Highway 50, Ste. 303
O'Fallon, IL 62269
T: 618-257-7308 F: 618-257-7353

St. Louis Office:
10 South Broadway, Ste. 2000
St. Louis, MO 63102
T: 314-241-9090 F: 314-241-8624

Greensfelder, Hemker & Gale, P.C.     www.greensfelder.com



Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM



Priestman Group, Inc.
July 19, 2022
Page 2

obligations and undertakings in the Franchise Agreement.  All capitalized terms used but not defined in this Notice shall have the meanings ascribed to them in the Franchise Agreement.

Equity One has learned that Franchisee obtained a loan with the U.S. Small Business Administration ("SBA") and pledged the assets of the Agency and Franchise Agreement as collateral for the loan.  The collateral that you pledged is listed on the UCC Financing Statement filed September 8, 2021 in Florida, which I have attached.

Pledging collateral of the Agency and Franchise Agreement without Equity One's prior written approval is an unlawful Transfer of Interest in the Agreement or Agency in violation of Section VII.B the Franchise Agreement.  Equity One did not approve any such Transfer of Interest.

Under the Franchise Agreement, you have thirty (30) days to cure this violation.  To cure the violation, you must contact the SBA and instruct the SBA to withdraw the UCC financing statement.  Furthermore, pursuant to Equity One's rights under the Agreement, you must provide Equity One with copies of all correspondence with, and documents provided to, the SBA.  If you do not cure this violation by **August 22, 2022**, Equity One will terminate your Franchise Agreement immediately.  In the meantime, Equity One will notify the SBA that it never approved Franchisee's pledging of Agency assets.

Equity One is not waiving, and expressly reserves, any other rights and remedies it may have available to it under the Franchise Agreement, the Guarantee, and applicable law.  This includes, but is not limited to, collection of all amounts owed under the Franchise Agreement, Guarantee, Service Agreement and any other applicable agreement, damages, interest, late fees, and attorneys' fees and costs.

Sincerely,

GREENSFELDER, HEMKER & GALE, P.C.

By: *Dawn M. Johnson*

Dawn M. Johnson

Attachment
DMJ/grg
4882-0141-4186
cc:    Equity One Franchisors, LLC (via email)

**STATE OF FLORIDA UNIFORM COMMERICAL CODE FINANCING STATEMENT FORM**

**Florida Secured Transaction Registry**

# FILED

2021 Sep 08 08:45 AM

******* 202108378497 *******

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

Corporation Service Company; 1-800-858-5294

Email FLSOSUCCFilingsV3@cscglobal.com

B. SEND ACKNOWLEDGEMENT TO:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Priestman Group Inc | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS Line One | | | | | |
| 1000 SE MONTEREY COMMONS BLVD # R106 | | | This space not available. | | |
| MAILING ADDRESS Line Two | | CITY STUART | STATE FL. | POSTAL CODE 34996 | COUNTRY USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS Line One | | | This space not available. | | |
| MAILING ADDRESS Line Two | | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| U.S. Small Business Administration | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS Line One | | | | | |
| 2 North 20th Street, Suite 320 | | | This space not available. | | |
| MAILING ADDRESS Line Two | | CITY Birmingham | STATE AL. | POSTAL CODE 35203 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (q) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.ALL DOCUMENTARY STAMPS DUE AND PAYABLE OR TO BECOME DUE AND PAYABLE, HAVE BEEN PAID.   150212 9101

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR ☐ AG LIEN | ☐ CONSIGNEE/CONSIGNOR ☐ NON-UCC FILING | ☐ BAILEE/BAILOR ☐ SELLER/BUYER |
|---|---|---|---|

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**   2180 26668

STANDARD FORM - FORM UCC-1 (REV.05/2013)   Filing Office Copy   Approved by the Secretary of State, State of Florida

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

Priestman Irving



ID:SUAA          (800) 463-3339
291157
SUAA
ARTIN HWY

SHIP DATE: 26JUL22
ACTWGT: 0.50 LB
CAD: 1742625/INET4490

CITY, FL 34990
D STATES US

BILL RECIPIENT

TS PER DAVID
REENSFELDER HEMKER AND GALE
) S. BROADWAY
TE 2000
T. LOUIS MO 63102
241-9090

REF: RTN OF AB:777430695191

591.220J92/FF4A

DEPT.



FedEx.
Express

E

FRI - 29 JUL 4:30P
EXPRESS SAVER

7774 8972 4951

63102
STL

ST CPSA

MO-US





Adhere pouch to
package; do not
WIASWAT Bldge.

FedEx.

22JUL22 13:46
Attempted Delivery: 13:46 Last Delivery
Recpt Addr: 1000 SE MONTEREY COMMONS
Reason Not Left: DIRECT SIGNATURE

Pkg Trk(s)#:
777430695191

✕ FINAL ATTEMPT ✕



FedEx.
Express

Attention Sender

THIS SHIPMENT IS B
☐ Refused by recipient:

OWING REASON(S):
nly address given or obtainable.
O.D. charges.

PCS: 1   1 of 1
R##: 577
JUL

FID: 937279
2  11:34
4 Reattempt Delivery By: 13:00 on 22JUL
TEREY COMMONS
SIGNATURE REQUIRED



Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _(signature)_  ☑ Agent  ☐ Addressee<br>B. Received by (*Printed Name*)  C. Date of Delivery<br>Brad Priedman   8-8-82 |
| 1. Article Addressed to:<br><br>Priestman Group, Inc.<br>P.O. Box 3181<br>Stuart, FL 34995 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below:  ☐ No |
| ‖‖‖‖‖ barcode ‖‖‖‖‖<br>9590 9402 7114 1251 6620 60 | 3. Service Type  ☐ Priority Mail Express®<br>☐ Adult Signature  ☐ Registered Mail™<br>☐ Adult Signature Restricted Delivery  ☐ Registered Mail Restricted<br>☒ Certified Mail®  Delivery<br>☐ Certified Mail Restricted Delivery  ☐ Signature Confirmation™<br>☐ Collect on Delivery  ☐ Signature Confirmation<br>☐ Collect on Delivery Restricted Delivery  Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500) |
| 2. Article Number (*Transfer from service label*)<br>7021 2720 0002 9845 6155 | |
| PS Form 3811, July 2020 PSN 7530-02-000-9053 | Domestic Return Receipt |

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

# EXHIBIT E

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM



GREENSFELDER
A T T O R N E Y S   A T   L A W

DAWN M. JOHNSON
DIRECT DIAL: 314-516-2678
dmj@greensfelder.com

July 22, 2022

**<u>VIA CERTIFIED MAIL # 70212720000298456896</u>**
**<u>RETURN RECEIPT REQUESTED</u>**

U.S. Small Business Administration
2 North 20th Street, Suite 320
Birmingham, AL 35203

> **Re:** **Demand for Termination/Amendment of State of Florida Uniform Commercial Code Financing Statement, File No. 202100378497, Recorded September 8, 2021 with Priestman Group, Inc. (Debtor)**

Dear Sir/Madam:

This firm represents Equity One Franchisors, LLC ("Equity One"), which has a franchise relationship with Priestman Group, Inc. ("Priestman Group"). The relationship is governed by a Franchise Agreement in which Equity One is the franchisor and Priestman Group is the franchisee.

It has recently come to Equity One's attention that the U.S. Small Business Administration ("SBA") recorded a lien on the collateral of Priestman Group on September 8, 2021. I have attached a copy of the Uniform Commercial Code ("UCC") Financing Statement.

The Franchise Agreement with Equity One prohibits Priestman Group from granting a security interest, granting any lien, or pledging any interests in the Franchise Agreement or Agency business for any loan or debt or other purpose without Equity One's written approval, with certain limited exceptions. I have attached the relevant portions of the Franchise Agreement, which are Sections XVII.B. on page 25 (with definitions on pages 2-4) and Section XIX.P on page 30. Equity One did not approve or consent to Priestman Group pledging these interests or granting any security interest and was unaware of it until recently. Equity One has advised the Priestman Group of this violation and that it would be contacting the SBA.

Equity One is unaware of what representations Priestman made that caused such a lien to be placed on these interests, but the collateral includes Equity One assets. Equity One is not liable for any debt of the Priestman Group and therefore this lien is improper. Equity One demands that the lien be removed or amended because it was improperly recorded and placed without Equity One's approval against Equity One, an entity not liable to the SBA. Equity One has no obligation or debt with the SBA. If the SBA does not terminate and/or amend the UCC Financing Statement to remove the lien, Equity One will exercise all available remedies under applicable law, which

Chicago Office:
200 West Madison, Ste. 3300
Chicago, IL 60606
T: 312-419-9090 F: 312-419-1930

Clayton Office:
8000 Maryland Ave., Ste. 1250
Clayton, MO 63105
T: 314-345-5450 F: 314-241-8624

Southern Illinois Office:
821 W. Highway 50, Ste. 303
O'Fallon, IL 62269
T: 618-257-7308 F: 618-257-7353

St. Louis Office:
10 South Broadway, Ste. 2000
St. Louis, MO 63102
T: 314-241-9090 F: 314-241-8624

Greensfelder, Hemker & Gale, P.C.     www.greensfelder.com     MERITAS



U.S. Small Business Administration
July 22, 2022
Page 2

could include filing a lawsuit to remove the lien and seeking to recover its damages, both actual and punitive, if appropriate, plus fees and costs, for filing a lien against Equity One's assets.

We look forward to your prompt attention to this matter and removal of the improper lien within ten (10) days of the date of this letter so that litigation will not be necessary.

Sincerely,

GREENSFELDER, HEMKER & GALE, P.C.

By: *Dawn M. Johnson*

Dawn M. Johnson

Enclosures
DMJ/grg
4876-8069-8922
cc:    Equity One Franchisors, LLC (via email)

Priestman Group, Inc.
759 SW Federal Hwy #101
Stuart, FL 34994
Attn:  Bradley T. Priestman, President
priestman.ins@gmail.com
brad@gotchacoveredinsurance.com
coverage@gotchacoveredinsurance.com

Mr. Bradley T. Priestman
759 SW Federal Hwy #101
Stuart, FL 34994

Priestman Group, Inc.
P.O. Box 3181
Stuart, FL 34995

Ms. Patricia K. Dionne
759 SW Federal Hwy #101
Stuart, FL 34994

Priestman Group, Inc.
1000 SE Monterey Commons
Suite 106
Stuart, FL  34997

Ms. Patricia K. Dionne
P.O. Box 3181
Stuart, FL 34995
pkdionne@aol.com
patti@gotchacoveredinsurance.com

Mr. David J. Dionne
2385 6th Street
Vero Beach, FL 32962

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

**STATE OF FLORIDA UNIFORM COMMERICAL CODE FINANCING STATEMENT FORM**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

Corporation Service Company; 1-800-858-5294

Email FLSOSUCCFilingsV3@cscglobal.com

B. SEND ACKNOWLEDGEMENT TO:

**Florida Secured Transaction Registry**

# FILED

2021 Sep 08 08:45 AM

******* 202108378497 *******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Priestman Group Inc | | | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|---|

| 1c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 1000 SK MONTEREY COMMONS BLVD # B106 | | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | STUART | FL | 34996 | USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|---|

| 2c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| | | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| U.S. Small Business Administration | | | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|---|

| 3c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 2 North 20th Street, Suite 320 | | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | Birmingham | AL | 35203 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.ALL DOCUMENTARY STAMPS DUE AND PAYABLE OR TO BECOME DUE AND PAYABLE, HAVE BEEN PAID.  150212 9101

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK EXACTLY ONE   BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**   2180 26668

STANDARD FORM - FORM UCC-1 (REV.05/2013)      Filing Office Copy      Approved by the Secretary of State, State of Florida

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

**EQUITY ONE FRANCHISORS, LLC**

# FRANCHISE AGREEMENT
## FOR A
## GLOBALGREEN INSURANCE AGENCY®

This Agreement entered into this _____ _i**f**_ _____ day of September, 2012, by and between EQUITY ONE FRANCHISORS, LLC a Missouri limited liability company (hereinafter referred to as "GLOBAL"), and PRIESTMAN ~~INSURANCE~~ GROUP, INC., a Florida corporation (hereinafter referred to as "FRANCHISEE").

WHEREAS, GLOBAL and its "Affiliates" (as defined below) have developed and refined the uniform formats, systems, and standards for operating GlobalGreen Insurance Agencies (as defined below);

WHEREAS, GLOBAL has obtained the right to license the Marks (as defined below) and the System (as defined below) in connection with the operation of a GlobalGreen Insurance Agency;

WHEREAS, FRANCHISEE recognizes the benefits to be derived from being identified with the Marks and being able to utilize the System and desires a franchise to establish and operate a GlobalGreen Insurance Agency using the Marks and System and GLOBAL is willing to grant such a franchise on the terms and conditions hereinafter set forth; and

WHEREAS, FRANCHISEE understands that it will be a Subagent (as defined below) of the various Providers (as defined below) and shall be subject to the requirements and obligations imposed by said Providers on FRANCHISEE;

NOW, THEREFORE, the parties agree as follows:

## I.    DEFINITIONS

For purposes of this Agreement, the following terms shall have the meaning as set forth below:

A.    "Affiliate(s)" means individually or collectively any entities controlling, controlled by, or under common ownership with GLOBAL including but not limited to Equity One Insurance Agency, L.L.C.

B.    "Agency" means the GlobalGreen Insurance Agency which is the subject of this Agreement.

C.    "Agency Software" means the EPIC Online software licensed by Applied Systems, Inc. that FRANCHISEE will be given access to through the Internet pursuant to the agreement it will enter into with Equity One Insurance Agency, L.L.C. or any other software GLOBAL shall so designate in the future.

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

D.      "Chargeback" means the amount the Providers will charge FRANCHISEE back for any commissions, revenues, or insufficient funds checks, or the like, in the event of a policy premium reduction or policy cancellation.

E.      "Customer" means any existing customers or identified prospective customers (of FRANCHISEE, GLOBAL, its Affiliates or other franchisee) with whom FRANCHISEE or its employees or agents have had direct or indirect contact or about whom FRANCHISEE or its employees or agents have learned confidential information by virtue of the operation of the Agency other than any customers with whom FRANCHISEE had no contact within the two (2) years preceding the expiration, Transfer or termination of this Agreement.

F.      "E & O Program" means errors and omissions insurance for the Agency. FRANCHISEE must be underwritten and qualify for E & O Program.

G.      "EBP Agent" means the agent of record for Employee Benefits Products (as defined below). The EBP Agent will enable FRANCHISEE to provide Employee Benefits Products to its customers.

H.      "Employee Benefits Products" means group and individual health, life, dental, disability, long term care, supplemental benefits and 401(k) insurance.

I.      "Equity One" means Equity One Insurance Agency, L.L.C.

J.      "FRANCHISEE" shall be deemed to include: (a) those persons and their spouses owning any interest in a corporate or a limited liability company franchisee; (b) all partners and their spouses owning any interest in a partnership franchisee; (c) the individual who owns a sole proprietorship franchisee and his or her spouse; (d) the guarantors of this Agreement; and (e) the Principal Owner (as hereinafter defined). For purposes of determining ownership in a franchise, the interests owned by a husband and wife shall be considered one interest, and both husband and wife shall be obligated hereunder, regardless of whether the interest is owned by just one spouse or both spouses.

K.      "GlobalGreen Insurance Agency" means any business operating under the Marks and System including those owned by GLOBAL, its Affiliates or franchisees of GLOBAL or its Affiliates.

L.      "Interest" means: (a) this Agreement or the rights under this Agreement; (b) the rights in the Agency; (c) an individual's rights as an owner of the FRANCHISEE (including any owner's stock, partnership interest, limited liability company, or other ownership interest); (d) any option, call, warrant, conversion rights or rights to acquire any equity or voting interest in FRANCHISEE; (e) any security interest, lien, pledge, mortgage, or other encumbrance of any of the foregoing Interests; (f) any sale, lease, sublease, or other transfer or disposition of any of the assets used in the performance of the business at the Agency, whether now owned or hereafter acquired, except in the normal and ordinary course of business; or (h) any right to control, operate or manage the Agency.

M.      "Marks" means such service marks, trademarks, trade dress, trade names and copyrights, and all configurations and derivations, as may presently exist, or which may be modified, changed, or acquired by GLOBAL, in connection with the operation of the business contemplated by this Agreement. Marks include but are not limited to "GlobalGreen Insurance Agency" and "GlobalGreen Insurance Agency and design".

#1010939.14

2

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

N.      "Manual" means the Confidential Operations Manual, including all updates, supplements, bulletins, etc., in any form including without limitation, written or electronic form, all of which may be modified from time to time.

O.      "Principal Owner" means FRANCHISEE if FRANCHISEE is a sole proprietor, the majority shareholder of FRANCHISEE if FRANCHISEE is a corporation, a partner owning a major share of the partnership if FRANCHISEE is a partnership or the member owning the majority interest of a limited liability company.

P.      "Provider" means the various insurance companies that will underwrite policies for customers of GLOBAL, GLOBAL's Affiliates, their franchisees or licensees and/or FRANCHISEE. In addition, "Provider" also includes the various companies that provide or will provide financial or other services to customers of GLOBAL, GLOBAL'S Affiliates, their franchisees and licensees and/or FRANCHISEE. Any of the Providers may be changed from time to time. A current list of Providers is set forth in Exhibit II attached hereto but is subject to change.

Q.      "Provider Agreement" means the non-exclusive master agreement between GLOBAL, or its Affiliates and the EBP Agent (as defined above) that grants GLOBAL, its Affiliates or EBP Agent the right to solicit, quote, offer, and bind insurance and obtain orders for Providers' products and services. Provider Agreement also includes the non-exclusive master agreement between GLOBAL and its Affiliates that grants GLOBAL or its Affiliates the right to provide additional financial products and services to customers. The Provider Agreements are available for inspection at GLOBAL's main office upon reasonable request of the FRANCHISEE.

R.      "Revenues" means the amount of commissions or fees from insurance services or from other activities of the Agency (including but not limited to those derived from Optional Programs, if any) that GLOBAL and its Affiliates are paid on behalf of FRANCHISEE for products and services purchased by FRANCHISEE's customers, as well as any commissions or fees paid directly to FRANCHISEE. FRANCHISEE understands that some or all of the Providers have the right to charge different commission rates or change the commission rates at any time in accordance with the terms of their Provider Agreements with GLOBAL, its Affiliates or the EBP Agent.

S.      "SMA Fee" means the monthly fee that FRANCHISEE will pay to Equity One for "support, maintenance and access" to the Agency Software pursuant to the Service Agreement FRANCHISEE will enter into with Equity One. The SMA Fee must be paid for each license. Only one user can use the software at a time. Therefore, if FRANCHISEE will have more than one user using the software at the same time, FRANCHISEE will have to pay a SMA Fee for each such user.

T.      "System" means a specially developed method of operating a business for agents who will specialize in the sale of various forms of insurance or other financial services under the Marks, using certain business formats, methods, procedures designs, marketing and sales procedures, standards and specification which may be changed, improved, modified and further developed by GLOBAL from time to time.

U.      "Transfer" means and includes any voluntary or involuntary, direct or indirect, assignment, sale, gift conveyance, or other disposition of an Interest including without limitation:  (a) transfer of any capital stock, partnership interest, limited liability interest or other ownership Interest of

#1010939.14

3

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

FRANCHISEE or its owners; (b) merger, consolidation or issuance of additional stock or ownership interests; (c) transfer in bankruptcy or dissolution of marriage or otherwise by operation of law or by order of court; (d) transfer to a personal representative upon disability or transfer upon the death of a Principal Owner; (e) the grant or creation of any lien or encumbrance; or (f) any change of control or management of the Agency.

## II.   GRANT OF FRANCHISE

A.   **Grant of Right to Use System and Marks.**  Subject to the terms and conditions herein, GLOBAL hereby grants to FRANCHISEE, and FRANCHISEE hereby accepts from GLOBAL, a non-exclusive right to use the System and Marks to open and operate one (and only one) GlobalGreen Insurance Agency to be located at the location listed in Exhibit I attached hereto ("Site"). If no Site is specified at the time of execution of this Agreement, an appropriate location will be specified when it is determined. If a particular Site is not available or if a satisfactory lease for the Site cannot be obtained, GLOBAL will consider alternate Sites, provided that the alternate Sites are subject to GLOBAL'S approval.

FRANCHISEE is not granted any exclusive right to operate the Agency in any particular area. FRANCHISEE, GLOBAL, its Affiliates and other franchisees or licensees are permitted to solicit customers for the sale of products and services, subject only to the restrictions set forth by any Provider. However, FRANCHISEE cannot interfere with customers of GLOBAL, its Affiliates, or their franchisees and licensees. GLOBAL and its Affiliates are free to operate or license others to operate GlobalGreen Insurance Agencies anywhere including in close proximity to the Agency.

If GLOBAL engages in electronic commerce through any Internet, World Wide Web or other computer network site, and receives inquiries for any insurance products that GlobalGreen Insurance Agencies sell, GLOBAL will refer the person making the inquiry to a GlobalGreen Insurance Agency office, which is in good standing and  which is located near the address from which the inquiry was received. GLOBAL is not obligated to refer the inquiry to any particular agency, nor is GLOBAL required to determine which office is closest to the address from which the inquiry was received.

B.   **Additional Locations.**  In order for FRANCHISEE to operate a GlobalGreen Insurance Agency at an additional location, a separate Franchise Agreement must be signed and an Initial Franchise Fee will be required.

C.   **Retained Rights.**  GLOBAL, on behalf of itself and its Affiliates, reserves all rights not specifically granted to the FRANCHISEE pursuant to this Agreement, including but not limited to the following: the right to operate and to franchise or license to third parties the right to operate businesses using the System and Marks or any other system and marks anywhere regardless of the proximity to the Agency; and the rights to sell products or services in any channel of distribution, including but not limited to the Internet, telemarketing or other direct marketing sales and to provide consulting services using the System and Marks. Providers are free to open or license others to sell its products and services that may be competitive with the Agency or in close proximity to the Agency. GLOBAL and its Affiliates are not required to pay FRANCHISEE if they exercise any of the rights specified in this Section II.

D.   **Additional Rights of GLOBAL.**  GLOBAL and its Affiliates may sell themselves, their assets, their proprietary marks and/or their system to a third party; may go public; may engage in a private placement of some or all of its securities; may merge, acquire other corporations or entities, or be

#1010939.14

4

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

will be explained in the Manual, however, FRANCHISEE's participation in the Bonus Program will be contingent upon FRANCHISEE's compliance with the terms of this Agreement and FRANCHISEE's appointment or continued appointment with the Provider that is granting the Bonus Amount.

## XVI.   CONFIDENTIAL OPERATIONS MANUAL AND CHANGES

GLOBAL shall provide FRANCHISEE, for the duration of this Agreement and any renewal, access to the Manual in a format determined by GLOBAL (i.e., in writing, on CD-Rom, via electronic media through a secure website, etc.) FRANCHISEE agrees to comply with the mandatory requirements in the Manual and said compliance is an essential part of its obligations under this Agreement. FRANCHISEE shall at all times be responsible for ensuring that its employees and all other persons under its control comply with the mandatory provisions of the Manual in all respects. The Manual will constitute a Confidential Information and Trade Secrets of GLOBAL, shall remain the property of GLOBAL, and can be used by FRANCHISEE only so long as this Agreement is in effect. The Manual cannot be photocopied, reproduced, or disseminated without GLOBAL's written consent. The Manual may be modified from time to time by GLOBAL in its discretion, and FRANCHISEE agrees that from time to time GLOBAL may reasonably change the System. FRANCHISEE expressly agrees to comply with each mandatory or optional modification, addition or deletion of the System or Manual at its sole cost and expense. FRANCHISEE acknowledges that due to the changing nature of the insurance business, computer hardware and software, as well as changing attitudes of customers and other factors, such changes to the Manual may be necessary and may involve the expenditure of substantial sums of money by FRANCHISEE.

## XVII.   TRANSFERABILITY OF INTEREST

A.      **By GLOBAL**.  GLOBAL is free to assign any or all of its rights and obligations under this Agreement, and upon such assignment GLOBAL shall be relieved of all liability under this Agreement with respect to the rights and obligations so assigned, and any such rights and obligations which are assigned shall accrue to the successor or assignee.

B.      **By FRANCHISEE**.  There can be no Transfer of Interest in this Agreement or the Agency without GLOBAL's prior written approval. The approval is not intended as an approval to any future Transfer of Interest and no future Transfer of Interest shall be valid without the prior written approval of GLOBAL. Any such purported Transfer of an Interest will be voidable at GLOBAL's sole option. If GLOBAL elects not to exercise its right of first refusal pursuant to Section XVII.D below, GLOBAL will not unreasonably withhold its approval to a Transfer of Interest, provided that the following conditions are satisfied:

1.      Governmental Compliance.  The Transfer is conducted in compliance with applicable laws and regulations;

2.      Prior Compliance.  FRANCHISEE has performed its obligations and duties under this Agreement and FRANCHISEE is not in default under this Agreement, or any other agreement with GLOBAL or its Affiliates;

3.      Payments.  The transferee has satisfied all of its obligations to GLOBAL, GLOBAL's Affiliates and suppliers under this Agreement and all other agreements it has with GLOBAL.

#1010939.14

25

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

remedies available under this Agreement, or otherwise.  For purposes of this Agreement, a termination shall include a termination for any reason, expiration, cancellation, failure to renew, assignment or Transfer.

K.     **No Warranty**.  FRANCHISEE acknowledges that no approvals, consents, waivers, conditions, or the like warrant the success of the franchise or the appropriateness of the particular items or matters so approved.

L.     **Receipt of Disclosure Document**.  FRANCHISEE acknowledges receipt of GLOBAL's Franchise Disclosure Document along with this Agreement, at least fourteen (14) days before execution hereof or any payment to GLOBAL.  If any unilateral modifications have been made by GLOBAL to this Agreement FRANCHISEE acknowledges that it had at least five (5) business days to review them.

M.     **Joint and Several Liability**.  If two or more persons are the FRANCHISEE under this Agreement, their obligations and liabilities to GLOBAL shall be joint and several.

N.     **Time is of the Essence**.  Time is of the essence of this Agreement.

O.     **Survival**.  FRANCHISEE's obligations regarding Confidential Information and Trade Secrets, non-competition and non-solicitation, indemnification as well as accrued obligations of FRANCHISEE to GLOBAL and its affiliates, shall survive the termination, expiration, assignment or Transfer of this Agreement.

P.     **Limitation on Liens**.  FRANCHISEE shall not grant a security interest, pledge, or place a lien upon FRANCHISEE's interest in this Agreement or in the Agency or in the furniture, fixtures, or equipment used in the business, except that FRANCHISEE shall be permitted to grant a security interest in such furniture, fixtures, and equipment to secure FRANCHISEE's obligation to the seller of or lender for such furniture, fixtures, and equipment to secure any indebtedness relating to the business.

Q.     **Day-to-Day Control**. FRANCHISEE has the sole right and responsibility for the manner and means by which the day-to-day operation of the Agency is determined and conducted and for achieving its business objectives.  Subject to any approval, inspection and enforcement rights reserved to GLOBAL, these rights and responsibilities include the employment, supervision, setting the conditions of employment and discharge for its employees at the Agency, daily maintenance, safety concerns, and the achievement of conformity with the System.

R.     **Attorneys' Fees**.  If GLOBAL incurs any attorneys' fees or other expenses in seeking enforcement of this Agreement, FRANCHISEE shall be required to reimburse GLOBAL for its reasonable costs and expenses (including, but not limited to attorneys' fees) thereby incurred.

S.     **Varying of Standards**.  Because complete and detailed uniformity under many varying conditions may not be possible or practical, GLOBAL specifically reserves the right and privilege, in its sole discretion, in any specific instance, to vary standards for any franchisee based upon various considerations, such as  the peculiarities of a particular territory, density of population, business potential, business practice or other conditions relating to the operation of the Agency.  GLOBAL may grant to franchisees variations from standard specifications and practices as GLOBAL determines in its sole discretion, and GLOBAL shall have no obligation to grant other franchisees like or similar variations.

#1010939.14

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

## XXII.  GLOBAL'S LIMITATION OF LIABILITY

GLOBAL is not in any way responsible for the acts of any of the Providers, any EBP Agent, or GLOBAL's Affiliates. FRANCHISEE hereby agrees that it will not hold GLOBAL liable for any acts, including but not limited to termination as a Subagent by a Provider or any other acts or omissions of any Provider, any EBP Agent or Affiliate.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date set forth below their names.

EQUITY ONE FRANCHISORS, LLC

By: _____
Raymond M. Spears, President & CEO

Address:  15455 Conway Rd., Ste. 315
          Chesterfield, MO  63017

FRANCHISEE:  PRIESTMAN INSURANCE
GROUP, INC.

By: _____
Bradley T. Priestman, President

Address:  A Florida location to be determined

**22SL-CC03888**

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

**In the**

# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

__EQUITY ONE FRANCHISORS, LLC__
Plaintiff/Petitioner

__August 31, 2022__
Date

vs.

Case Number

__PRIESTMAN GROUP, INC., ET AL.__
Defendant/Respondent

Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now __Plaintiff_____, pursuant
                    Requesting Party

to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

__The Carter Corporation, Inc., 1629 K Street, NW, Suite 300, Washington, DC  20006__
Name of Process Server          Address          Telephone

Name of Process Server          Address or in the Alternative          Telephone

Name of Process Server          Address or in the Alternative          Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:  U.S. Small Business Administration
__Therese Meers, General Counsel__
Name
__Office of General Counsel__
Address
__409 Third Street SW, Washington, DC  20416__
City/State/Zip

SERVE:

Name

Address

City/State/Zip

SERVE:

Name

Address

City/State/Zip

SERVE:

Name

Address

City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk

__/s/ Dawn M. Johnson #41991__
Signature of Attorney/Plaintiff/Petitioner
__Greensfelder, Hemker & Gale, P.C.__
Bar No.
__10 S. Broadway #2000, St. Louis, MO 63102__
Address
__(314) 241-9090__        __(314) 241-8624__
Phone No.                    Fax No.

By _____
      Deputy Clerk

_____
Date

CCADM62-WS   Rev. 07/19

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://wp.stlcountycourts.com > forms.

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

CCADM62-WS      Rev. 07/19

**22SL-CC03888**

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

**In the**

# CIRCUIT COURT
**Of St. Louis County, Missouri**

_August 31, 2022_
Date

EQUITY ONE FRANCHISORS, LLC
Plaintiff/Petitioner

_____
Case Number

vs.

_____
Division

PRIESTMAN GROUP, INC., ET AL.
Defendant/Respondent

For File Stamp Only

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  Plaintiff_____, pursuant
                    Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
The Carter Corporation, Inc., 1629 K Street, NW, Suite 300, Washington, DC  20006
Name of Process Server          Address                                    Telephone

_____          _____          _____
Name of Process Server          Address or in the Alternative                Telephone

_____          _____          _____
Name of Process Server          Address or in the Alternative                Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

U.S. Small Business Administration

SERVE:
Therese Meers, General Counsel
Name
Office of General Counsel
Address
409 Third Street SW, Washington, DC  20416
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk

By _____*/s/Adam Dockery*_____
     Deputy Clerk
          9/1/2022
_____
Date

_/s/ Dawn M. Johnson #41991____
Signature of Attorney/Plaintiff/Petitioner
Greensfelder, Hemker & Gale, P.C.
Bar No.
10 S. Broadway #2000, St. Louis, MO 63102
Address
(314) 241-9090          (314) 241-8624
Phone No.                          Fax No.

CCADM62-WS    Rev. 07/19

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://wp.stlcountycourts.com > forms.

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

**22SL-CC03888**

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

**In the**

# CIRCUIT COURT
**Of St. Louis County, Missouri**

_EQUITY ONE FRANCHISORS, LLC_
Plaintiff/Petitioner

vs.

_PRIESTMAN GROUP, INC., ET AL._
Defendant/Respondent

_August 31, 2022_
Date

_____
Case Number

_____
Division

For File Stamp Only

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now __Plaintiff_____, pursuant
                              Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
_F.E.D. Process Servers, Inc., 5079 N. Dixie Hwy. #330, Oakland Park, FL 33334_
Name of Process Server          Address                                          Telephone

_____
Name of Process Server          Address or in the Alternative                    Telephone

_____
Name of Process Server          Address or in the Alternative                    Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

Priestman Group, Inc.
SERVE:
_Bradley T. Priestman, Reg. Agent_
Name
_759 SW Federal Hwy. #101_
Address
_Stuart, FL  34994_
City/State/Zip

SERVE:
_David J. Dionne_
Name
_2385 6th Street_
Address
_Vero Beach, FL  32962_
City/State/Zip

SERVE:
_Bradley T. Priestman_
Name
_495 SW Rustic Circle_
Address
_Stuart, FL  34997_
City/State/Zip

SERVE:
_Patricia K. Dionne_
Name
_104350 Overseas Hwy., Apt. A046_
Address
_Key Largo, FL  33037_
City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk


By _____
     Deputy Clerk

_____
Date

_/s/ Dawn M. Johnson #41991_
Signature of Attorney/Plaintiff/Petitioner
_Greensfelder, Hemker & Gale, P.C._
Bar No.
_10 S. Broadway #2000, St. Louis, MO 63102_
Address
_(314) 241-9090_          _(314) 241-8624_
Phone No.                              Fax No.

CCADM62-WS   Rev. 07/19

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://wp.stlcountycourts.com > forms.

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

**22SL-CC03888**

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

**In the**

# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

__EQUITY ONE FRANCHISORS, LLC__
Plaintiff/Petitioner

__August 31, 2022__
Date

_____
Case Number

vs.

_____
Division

__PRIESTMAN GROUP, INC., ET AL.__
Defendant/Respondent

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now __Plaintiff__, pursuant
                  Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
__F.E.D. Process Servers, Inc., 5079 N. Dixie Hwy. #330, Oakland Park, FL 33334__
Name of Process Server          Address                                    Telephone

_____
Name of Process Server          Address or in the Alternative              Telephone

_____
Name of Process Server          Address or in the Alternative              Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties. This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

Priestman Group, Inc.

SERVE:
__Bradley T. Priestman, Reg. Agent__
Name
__759 SW Federal Hwy. #101__
Address
__Stuart, FL  34994__
City/State/Zip

SERVE:
__David J. Dionne__
Name
__2385 6th Street__
Address
__Vero Beach, FL  32962__
City/State/Zip

SERVE:
__Bradley T. Priestman__
Name
__495 SW Rustic Circle__
Address
__Stuart, FL  34997__
City/State/Zip

SERVE:
__Patricia K. Dionne__
Name
__104350 Overseas Hwy., Apt. A046__
Address
__Key Largo, FL  33037__
City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk

By ____*/s/Adam Dockery*____
        Deputy Clerk
_____9/1/2022_____
Date

__/s/ Dawn M. Johnson #41991__
Signature of Attorney/Plaintiff/Petitioner
__Greensfelder, Hemker & Gale, P.C.__
Bar No.
__10 S. Broadway #2000, St. Louis, MO 63102__
Address
__(314) 241-9090          (314) 241-8624__
Phone No.                              Fax No.

CCADM62-WS   Rev. 07/19

Electronically Filed - St Louis County - August 31, 2022 - 04:51 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://wp.stlcountycourts.com > forms.

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>JOSEPH L. WALSH III | Case Number:  22SL-CC03888 |
|---|---|
| Plaintiff/Petitioner:<br>EQUITY ONE FRANCHISORS, LLC<br><br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address:<br>DAWN ANN MORVILLE JOHNSON<br>SUITE 2000<br>10 SOUTH BROADWAY<br>ST  LOUIS, MO  63102 |
| Defendant/Respondent:<br>PRIESTMAN GROUP, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING |
| Nature of Suit:<br>CC Breach of Contract | 105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105<br><div align="right">(Date File Stamp)</div> |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   PRIESTMAN GROUP, INC.
<div align="center">Alias:</div>

**SERVE BRADLEY T PRIESTMAN**
**759 SW FEDERAL HWY #101**
**STUART, FL  34994**

*COURT SEAL OF*



*ST. LOUIS COUNTY*

> **You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.**
> **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>01-SEP-2022</u>
**Date**
**Further Information:**
**AD**

_____
**Clerk**

## Officer's or Server's Affidavit of Service

I certify that:
1.   I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.   My official title is _____ of _____ County, _____ (state).
3.   I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).

☐ other (describe) _____.

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____   _____
<div align="center">Printed Name of Sheriff or Server</div>   <div align="center">Signature of Sheriff or Server</div>

**Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
I am: (check one) ☐ the clerk of the court of which affiant is an officer.
*(Seal)* ☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths.  (use for court-appointed server)

_____
<div align="right">Signature and Title</div>

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $ _____ per mile) |
| **Total** | $_____ | |

*See the following page for directions to clerk and to officer making return on service of summons.*

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made:  (1) On Individual.  On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process;  (2) On Guardian.  On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally;  (3)  On Corporation, Partnership or Other Unincorporated Association.  On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States.  If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.   A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.   Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) <u>Early Neutral Evaluation ("ENE")</u>:** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) <u>Mini-Trial</u>:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) <u>Summary Jury Trial</u>:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## <u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOSEPH L. WALSH III | **Case Number:  22SL-CC03888** |
| Plaintiff/Petitioner:<br><br>EQUITY ONE FRANCHISORS, LLC<br><br>**vs.** | Plaintiff's/Petitioner's Attorney/Address:<br>DAWN ANN MORVILLE JOHNSON<br>SUITE 2000<br>10 SOUTH BROADWAY<br>ST  LOUIS, MO  63102 |
| Defendant/Respondent:<br>PRIESTMAN GROUP, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE |
| Nature of Suit:<br>CC Breach of Contract | CLAYTON, MO  63105<br><div align="right">(Date File Stamp)</div> |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

 The State of Missouri to:  **U.S. SMALL BUSINESS ADMINISTRATION**
 **Alias:**
**THERESE MEERS, GEN COUNSEL**
**409 THIRD STREET SW**
**WASHINGTON, DC  20416**

*COURT SEAL OF*



*ST. LOUIS COUNTY*

 **You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.**
 **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>01-SEP-2022</u>
 **Date**
 **Further Information:**
 **AD**

_____
**Clerk**

---

### Officer's or Server's Affidavit of Service

I certify that:
1.   I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.   My official title is _____ of _____ County, _____ (state).
3.   I have served the above summons by:  (check one)
   ☐   delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐   leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
   _____, a person at least 18 years of age residing therein.

   ☐   (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
   ☐   other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____          _____
      Printed Name of Sheriff or Server                       Signature of Sheriff or Server

   **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
      I am: (check one)   ☐   the clerk of the court of which affiant is an officer.
                          ☐   the judge of the court of which affiant is an officer.
*(Seal)*                  ☐   authorized to administer oaths in the state in which the affiant served the above summons.
                              (use for out-of-state officer)
                          ☐   authorized to administer oaths.  (use for court-appointed server)

                          _____
                                       Signature and Title

| **Service Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____miles @ $ _____ per mile) |
| **Total** | $_____ |

*See the following page for directions to clerk and to officer making return on service of summons.*

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made:  (1) On Individual.  On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process;  (2) On Guardian.  On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally;  (3)  On Corporation, Partnership or Other Unincorporated Association.  On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States.  If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.  These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) <u>Early Neutral Evaluation ("ENE")</u>:** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) <u>Mini-Trial</u>:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) <u>Summary Jury Trial</u>:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms.  You should ask your lawyer for further information.

CCADM73



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOSEPH L. WALSH III | **Case Number:  22SL-CC03888** |
| Plaintiff/Petitioner:<br>EQUITY ONE FRANCHISORS, LLC | Plaintiff's/Petitioner's Attorney/Address:<br>DAWN ANN MORVILLE JOHNSON<br>SUITE 2000<br>10 SOUTH BROADWAY<br>ST  LOUIS, MO  63102 |
| **vs.** | |
| Defendant/Respondent:<br>PRIESTMAN GROUP, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Breach of Contract | |
| | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

**The State of Missouri to:  BRADLEY T. PRIESTMAN**
          **Alias:**

**495 SW RUSTIC CIRCLE**
**STUART, FL  34997**

*COURT SEAL OF*



*ST. LOUIS COUNTY*

       **You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.**
       **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>01-SEP-2022</u>
   **Date**
   **Further Information:**
   **AD**

_____
                         **Clerk**

### Officer's or Server's Affidavit of Service

I certify that:
1.   I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.   My official title is _____ of _____ County, _____ (state).
3.   I have served the above summons by:  (check one)
      ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
      _____, a person at least 18 years of age residing therein.

      ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
   _____ (name) _____ (title).
      ☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____    _____
      Printed Name of Sheriff or Server                   Signature of Sheriff or Server
          **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
      I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                      ☐ the judge of the court of which affiant is an officer.
*(Seal)*               ☐ authorized to administer oaths in the state in which the affiant served the above summons.
                      (use for out-of-state officer)
               ☐ authorized to administer oaths.  (use for court-appointed server)
                      _____
                               Signature and Title

| **Service Fees, if applicable** | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $ _____ per mile) |
| **Total** | $_____ | |

*See the following page for directions to clerk and to officer making return on service of summons.*

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made:  (1) On Individual.  On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process;  (2) On Guardian.  On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally;  (3)  On Corporation, Partnership or Other Unincorporated Association.  On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States.  If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.   A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.   Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.   Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) <u>Early Neutral Evaluation ("ENE")</u>:** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) <u>Mini-Trial</u>:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) <u>Summary Jury Trial</u>:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## <u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>JOSEPH L. WALSH III | Case Number:  22SL-CC03888 |
|---|---|
| Plaintiff/Petitioner:<br>EQUITY ONE FRANCHISORS, LLC | Plaintiff's/Petitioner's Attorney/Address:<br>DAWN ANN MORVILLE JOHNSON<br>SUITE 2000<br>10 SOUTH BROADWAY<br>ST  LOUIS, MO  63102 |
| **vs.** | |
| Defendant/Respondent:<br>PRIESTMAN GROUP, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING |
| Nature of Suit:<br>CC Breach of Contract | 105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  DAVID J. DIONNE
                          Alias:

**2385 6TH STREET**
**VERO BEACH, FL  32962**

*COURT SEAL OF*



*ST. LOUIS COUNTY*

   **You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.**
   **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>01-SEP-2022</u>
Date
Further Information:
AD

_____
                                          **Clerk**

### Officer's or Server's Affidavit of Service

I certify that:
1.   I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.   My official title is _____ of _____ County, _____ (state).
3.   I have served the above summons by:  (check one)
     ☐  delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
     _____, a person at least 18 years of age residing therein.

     ☐  (for service on a corporation) delivering a copy of the summons and a copy of the petition to
     _____ (name) _____ (title).
     ☐  other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____          _____
        Printed Name of Sheriff or Server                          Signature of Sheriff or Server
          **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
          I am: (check one)   ☐  the clerk of the court of which affiant is an officer.
                              ☐  the judge of the court of which affiant is an officer.
                              ☐  authorized to administer oaths in the state in which the affiant served the above summons.
                                 (use for out-of-state officer)
        *(Seal)*             ☐  authorized to administer oaths.  (use for court-appointed server)

                                          _____
                                                      Signature and Title

| **Service Fees, if applicable** | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $_____ per mile) |
| **Total** | $_____ | |

<div align="center">See the following page for directions to clerk and to officer making return on service of summons.</div>

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made:  (1) On Individual.  On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process;  (2) On Guardian.  On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally;  (3)  On Corporation, Partnership or Other Unincorporated Association.  On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States.  If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.   A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.   Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

    **(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

    **(4) <u>Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

    **(5) <u>Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

    If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

    A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

    The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>JOSEPH L. WALSH III | Case Number:  22SL-CC03888 |
|---|---|
| Plaintiff/Petitioner:<br>EQUITY ONE FRANCHISORS, LLC<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>DAWN ANN MORVILLE JOHNSON<br>SUITE 2000<br>10 SOUTH BROADWAY<br>ST  LOUIS, MO  63102 |
| Defendant/Respondent:<br>PRIESTMAN GROUP, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Breach of Contract | |

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  PATRICIA K. DIONNE
               Alias:

104250 OVERSEAS HWY.
APT A046
VERO BEACH, FL  33037

*COURT SEAL OF*

*ST. LOUIS COUNTY*

      **You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.**

      **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>01-SEP-2022</u>
Date
Further Information:
AD

_____
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)

    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
    _____, a person at least 18 years of age residing therein.

    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
    _____ (name) _____ (title).

    ☐ other (describe) _____.

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____    _____
Printed Name of Sheriff or Server            Signature of Sheriff or Server

    **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
    I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                      ☐ the judge of the court of which affiant is an officer.

*(Seal)*                ☐ authorized to administer oaths in the state in which the affiant served the above summons.
                      (use for out-of-state officer)
                ☐ authorized to administer oaths.  (use for court-appointed server)

                      _____
                          Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____miles @ $ _____ per mile) |
| **Total** | $_____ |

*See the following page for directions to clerk and to officer making return on service of summons.*

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States. If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case.  However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.   A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.   Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

Electronically Filed - St Louis County - September 02, 2022 - 03:30 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| **EQUITY ONE FRANCHISORS, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Cause No.:  22SL-CC03888** |
| | ) |
| **PRIESTMAN GROUP, INC.,** | ) |
| **U.S. SMALL BUSINESS ADMINISTRATION,** | ) |
| **BRADLEY T. PRIESTMAN, Individually,** | ) |
| **DAVID J. DIONNE, Individually, and** | ) |
| **PATRICIA K. DIONNE, Individually,** | ) |
| | ) |
| **Defendants.** | ) |

## ENTRY OF APPEARANCE

COMES NOW Tali L. Katz of the law firm of Greensfelder, Hemker & Gale, P.C., and

hereby enters her appearance on behalf of Plaintiff Equity One Franchisors, LLC.

Dated: September 2, 2022                    Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.


By _____/s/ Tali L. Katz_____
            Dawn M. Johnson, # 41991 (MO)
            dmj@greensfelder.com
            Randall F. Scherck, # 31085 (MO)
            rscherck@greensfelder.com
            Tali L. Katz, # 68788 (MO)
            tkatz@greensfelder.com
            10 South Broadway, Suite 2000
            St. Louis, Missouri 63102
            Telephone: (314) 241-9090
            Facsimile: (314) 345-4792

            *Attorneys for Plaintiff Equity One Franchisors, LLC*

4878-1055-0833

Electronically Filed - St Louis County - September 02, 2022 - 03:28 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **EQUITY ONE FRANCHISORS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cause No.:  22SL-CC03888** |
| | ) | |
| **PRIESTMAN GROUP, INC.,** | ) | |
| **U.S. SMALL BUSINESS ADMINISTRATION,** | ) | |
| **BRADLEY T. PRIESTMAN, Individually,** | ) | |
| **DAVID J. DIONNE, Individually, and** | ) | |
| **PATRICIA K. DIONNE, Individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ENTRY OF APPEARANCE

COMES NOW Randall F. Scherck of the law firm of Greensfelder, Hemker & Gale,

P.C., and hereby enters his appearance on behalf of Plaintiff Equity One Franchisors, LLC.

Dated: September 2, 2022                    Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

By    */s/ Randall F. Scherck*
          Dawn M. Johnson, # 41991 (MO)
          dmj@greensfelder.com
          Randall F. Scherck, # 31085 (MO)
          rscherck@greensfelder.com
          Tali L. Katz, # 68788 (MO)
          tkatz@greensfelder.com
          10 South Broadway, Suite 2000
          St. Louis, Missouri 63102
          Telephone: (314) 241-9090
          Facsimile: (314) 345-4792

          *Attorneys for Plaintiff Equity One Franchisors, LLC*

4856-8495-6465

Electronically Filed - St Louis County - September 07, 2022 - 04:11 PM

**In the**

# CIRCUIT COURT
**Of St. Louis County, Missouri**

For File Stamp Only

  EQUITY ONE FRANCHISORS, LLC
Plaintiff/Petitioner

  September 7, 2022
Date

  22SL-CC03888
Case Number

vs.

  PRIESTMAN GROUP, INC., ET AL.
Defendant/Respondent

Division

## <u>REQUEST FOR APPOINTMENT OF PROCESS SERVER</u>

Comes now  Plaintiff                                                  , pursuant
                        Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
  Yvette Gonzalez-Valdes, 138 Long Key Road, Key Largo FL  33037
Name of Process Server                    Address                                    Telephone

Name of Process Server                    Address or in the Alternative              Telephone

Name of Process Server                    Address or in the Alternative              Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:
  Patricia K. Dionne
Name
  104350 Overseas Hwy., Apt. A406
Address
  Key Largo, FL  33037
City/State/Zip

SERVE:

Name

Address

City/State/Zip

SERVE:

Name

Address

City/State/Zip

SERVE:

Name

Address

City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk

  /s/ Dawn M. Johnson #41991
Signature of Attorney/Plaintiff/Petitioner
  Greensfelder, Hemker & Gale, P.C.
Bar No.
  10 S. Broadway #2000, St. Louis, MO 63102
Address
  (314) 241-9090          (314) 241-8624
Phone No.                            Fax No.

By _____
     Deputy Clerk

Date _____

CCADM62-WS    Rev. 07/19

Electronically Filed - St Louis County - September 07, 2022 - 04:11 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://wp.stlcountycourts.com > forms.

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

Electronically Filed - St Louis County - September 07, 2022 - 04:11 PM

# In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

September 7, 2022
Date

__EQUITY ONE FRANCHISORS, LLC__
Plaintiff/Petitioner

22SL-CC03888
Case Number

vs.

__PRIESTMAN GROUP, INC., ET AL.__
Defendant/Respondent

Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now __Plaintiff__, pursuant
                Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
__Yvette Gonzalez-Valdes, 138 Long Key Road, Key Largo FL  33037__
Name of Process Server          Address                                      Telephone

_____
Name of Process Server          Address or in the Alternative                Telephone

_____
Name of Process Server          Address or in the Alternative                Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:
Patricia K. Dionne
Name
104350 Overseas Hwy., Apt. A406
Address
Key Largo, FL  33037
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk


By _____**/s/ Gwendolyn Bailey**_____
      Deputy Clerk
            09/12/2022              _____
_____
Date

__/s/ Dawn M. Johnson #41991__
Signature of Attorney/Plaintiff/Petitioner
Greensfelder, Hemker & Gale, P.C.
Bar No.
10 S. Broadway #2000, St. Louis, MO 63102
Address
(314) 241-9090          (314) 241-8624
Phone No.                              Fax No.

CCADM62-WS    Rev. 07/19

Electronically Filed - St Louis County - September 07, 2022 - 04:11 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://wp.stlcountycourts.com > forms.

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

CCADM62-WS      Rev. 07/19

Electronically Filed - St Louis County - September 20, 2022 - 02:47 PM

**IN THE 21ST JUDICIAL CIRCUIT COURT**
**ST. LOUIS COUNTY, MISSOURI**

Case No.: 22SL-CC03888

**Plaintiff**:  Equity One Franchisors,LLC
          v.
**Defendant**: Priestman Group, Inc., et al.

<u>**AFFIDAVIT OF SERVICE**</u>

I, R.D. Carter, Jr., CEO of The Carter Corporation, Inc., having a business address of 1629 K  Street, NW, Suite 300, Washington, DC 20006. I am above the age of 21 and am not a party to this lawsuit. I R.D. Carter Jr. served the <u>**U.S. Small Business Administration**</u>, by serving **Valerie Mullis, Executive Operations Officer** at **409 3rd St SW, Washington, DC 20416**, a **Summons and Complaint plus Exhibits**, on **09/12/2022** at **10:35AM**.

**Served with:** Summons and Complaint plus Exhibits
**Race**: Caucasian **Age**: 45+ **Gender:** Female  **Height**: 5'7  **Weight:**160

R.D. Carter, Jr., CEO
The Carter Corporation, Inc.

Subscribed and sworn to (or affirmed) before me on this _16th_ day of _September_, 2022, by _R. D. Carter_ _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.
          (Seal)          Signature _Pamela D. Frye_



## AFFIDAVIT OF SERVICE

Electronically Filed - St Louis County - September 28, 2022 - 11:49 AM

**State of Missouri**　　　　　　**County of ST. LOUIS**　　　　　　**21st Judicial Circuit Court**

Case Number: 22SL-CC03888

Plaintiff:
**EQUITY ONE FRANCHISORS, LLC**

vs.

Defendant:
**PRIESTMAN GROUP, INC.**

For:
Greensfelder, Hemker & Gale, P.C.
10 S. Broadway
Suite 2000
St. Louis, MO 63102-1774

Received by F.E.D. Process Servers, Inc. on the 9th day of September, 2022 at 3:48 am to be served on **DAVID J. DIONNE, 2385 6TH STREET, VERO BEACH, FL 32962**.

I, Andrew Nail, being duly sworn, depose and say that on the **19th day of September, 2022 at 4:15 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Summons for Personal Service Outside the State of Missouri; Exhibit A; Exhibit B; Exhibit C; Exhibit D; Exhibit E;** with the date and hour of service endorsed thereon by me, to: **DAVID J. DIONNE** at the address of: **2385 6TH STREET, VERO BEACH, FL 32962** and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 45, Sex: M, Race/Skin Color: White, Height: 5'9", Weight: 170, Hair: Light Brown, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. Under penalty of perjury, I declare that I have read the foregoing return of service and that the facts stated in it are true pursuant to Florida Statute 92.525(2).

SUBSCRIBED AND SWORN to me on the 22nd day of September, 2022 by the affiant who is personally known to me.

_____NOTARY PUBLIC

Notary Public State of Florida
Enil Cerrano Jr.
My Commission HH 291212
Expires 8/22/2026

**Andrew Nail**
18-02

**F.E.D. Process Servers, Inc.**
**777 S. FEDERAL HIGHWAY**
**#RP217**
**POMPANO BEACH, FL 33062**
**(954) 245-8440**

Our Job Serial Number: FED-2022001242
Ref: 22SL-CC03888

Copyright © 1992-2022 DreamBuilt Software, Inc. - Process Server's Toolbox V8.2k





# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

Electronically Filed - St Louis County - September 29, 2022 - 12:17 PM

| | |
|---|---|
| Judge or Division:<br>JOSEPH L. WALSH III | Case Number:  22SL-CC03888 |
| Plaintiff/Petitioner:<br>EQUITY ONE FRANCHISORS, LLC<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>DAWN ANN MORVILLE JOHNSON<br>SUITE 2000<br>10 SOUTH BROADWAY<br>ST  LOUIS, MO  63102 |
| Defendant/Respondent:<br>PRIESTMAN GROUP, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   U.S. SMALL BUSINESS ADMINISTRATION
Alias:
**THERESE MEERS, GEN COUNSEL**
**409 THIRD STREET SW**
**WASHINGTON, DC  20416**



*COURT SEAL OF*

*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

<u>01-SEP-2022</u>
Date
Further Information:
AD

_____
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.   I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.   My official title is _____ of _____ County, _____ (state).
3.   I have served the above summons by:  (check one)
☐   delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐   leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____, a person at least 18 years of age residing therein.

☐   (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐   other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____     _____
Printed Name of Sheriff or Server                                          Signature of Sheriff or Server
**Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
I am: (check one)   ☐  the clerk of the court of which affiant is an officer.
☐  the judge of the court of which affiant is an officer.
*(Seal)*                                            ☐  authorized to administer oaths in the state in which the affiant served the above summons.
(use for out-of-state officer)
☐  authorized to administer oaths.  (use for court-appointed server)

_____
Signature and Title

Electronically Filed - St Louis County - September 29, 2022 - 12:17 PM

# IN THE 21ST JUDICIAL CIRCUIT COURT
# ST. LOUIS COUNTY, MISSOURI

Case No.: 22SL-CC03888

**Plaintiff**: Equity One Franchisors,LLC

v.

**Defendant**: Priestman Group, Inc., et al.

### AFFIDAVIT OF SERVICE

I, R.D. Carter, Jr., CEO of The Carter Corporation, Inc., having a business address of 1629 K  Street, NW, Suite 300, Washington, DC 20006. I am above the age of 21 and am not a party to this lawsuit. I R.D. Carter Jr. served the **U.S. Small Business Administration**, by serving **Valerie Mullis, Executive Operations Officer** at **409 3rd St SW, Washington, DC 20416**, a **Summons and Complaint plus Exhibits**, on **09/12/2022** at **10:35AM**.

**Served with:** Summons and Complaint plus Exhibits

**Race**: Caucasian **Age:** 45+ **Gender:** Female  **Height**: 5'7  **Weight:**160

R.D. Carter, Jr., CEO
The Carter Corporation, Inc.

Subscribed and sworn to (or affirmed) before me on this _16th_ day of _September_, 20_22_, by _R. D. Carter_ _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(Seal)                    Signature _____







**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

Electronically Filed - St Louis County - September 29, 2022 - 12:17 PM

| Judge or Division:<br>JOSEPH L. WALSH III | Case Number:  22SL-CC03888 |
|---|---|
| Plaintiff/Petitioner:<br>EQUITY ONE FRANCHISORS, LLC | Plaintiff's/Petitioner's Attorney/Address:<br>DAWN ANN MORVILLE JOHNSON<br>SUITE 2000<br>10 SOUTH BROADWAY<br>ST  LOUIS, MO  63102 |
| vs. | |
| Defendant/Respondent:<br>PRIESTMAN GROUP, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  DAVID J. DIONNE
                                            Alias:

**2385 6TH STREET**
**VERO BEACH, FL  32962**



*COURT SEAL OF*

*ST. LOUIS COUNTY*

      **You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.**
      **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>01-SEP-2022</u>
   **Date**
**Further Information:**
   **AD**

_____
                                             **Clerk**

### Officer's or Server's Affidavit of Service

I certify that:
1.   I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.   My official title is _____ of _____ County, _____ (state).
3.   I have served the above summons by:  (check one)
      ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
      _____, a person at least 18 years of age residing therein.

      ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
      _____ (name) _____ (title).
☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____   _____
    Printed Name of Sheriff or Server                         Signature of Sheriff or Server
              **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
      I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                       ☐ the judge of the court of which affiant is an officer.
                       ☐ authorized to administer oaths in the state in which the affiant served the above summons.
    *(Seal)*             (use for out-of-state officer)
                       ☐ authorized to administer oaths.  (use for court-appointed server)

                             _____
                                   Signature and Title

## AFFIDAVIT OF SERVICE

**State of Missouri**                    **County of ST. LOUIS**                    **21st Judicial Circuit Court**

Case Number: 22SL-CC03888

Plaintiff:
**EQUITY ONE FRANCHISORS, LLC**

vs.

Defendant:
**PRIESTMAN GROUP, INC.**

For:
Greensfelder, Hemker & Gale, P.C.
10 S. Broadway
Suite 2000
St. Louis, MO 63102-1774

Received by F.E.D. Process Servers, Inc. on the 9th day of September, 2022 at 3:48 am to be served on **DAVID J. DIONNE, 2385 6TH STREET, VERO BEACH, FL 32962**.

I, Andrew Nail, being duly sworn, depose and say that on the **19th day of September, 2022 at 4:15 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Summons for Personal Service Outside the State of Missouri; Exhibit A; Exhibit B; Exhibit C; Exhibit D; Exhibit E;** with the date and hour of service endorsed thereon by me, to: **DAVID J. DIONNE** at the address of: **2385 6TH STREET, VERO BEACH, FL 32962** and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 45, Sex: M, Race/Skin Color: White, Height: 5'9", Weight: 170, Hair: Light Brown, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. Under penalty of perjury, I declare that I have read the foregoing return of service and that the facts stated in it are true pursuant to Florida Statute 92.525(2).

SUBSCRIBED AND SWORN to me on the 22nd day of September, 2022 by the affiant who is personally known to me.



_____NOTARY PUBLIC

Notary Public State of Florida
Enil Cerrano Jr.
My Commission HH 291212
Expires 8/22/2026

**Andrew Nail**
18-02

**F.E.D. Process Servers, Inc.**
**777 S. FEDERAL HIGHWAY**
**#RP217**
**POMPANO BEACH, FL 33062**
**(954) 245-8440**

Our Job Serial Number: FED-2022001242
Ref: 22SL-CC03888

Electronically Filed - St Louis County - September 29, 2022 - 12:17 PM




**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

Electronically Filed - St Louis County - September 29, 2022 - 12:17 PM

| | |
|---|---|
| Judge or Division:<br>JOSEPH L. WALSH III | Case Number:  22SL-CC03888 |
| Plaintiff/Petitioner:<br>EQUITY ONE FRANCHISORS, LLC | Plaintiff's/Petitioner's Attorney/Address:<br>DAWN ANN MORVILLE JOHNSON<br>SUITE 2000<br>10 SOUTH BROADWAY<br>ST  LOUIS, MO  63102 |
| **vs.** | |
| Defendant/Respondent:<br>PRIESTMAN GROUP, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  **BRADLEY T. PRIESTMAN**
      **Alias:**

**495 SW RUSTIC CIRCLE**
**STUART, FL  34997**



*COURT SEAL OF*

*ST. LOUIS COUNTY*

    **You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.**
    **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>01-SEP-2022</u>
**Date**
**Further Information:**
**AD**

_____
**Clerk**

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
  ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person at least 18 years of age residing therein.

  ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
  _____ (name) _____ (title).
  ☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____  _____
  Printed Name of Sheriff or Server      Signature of Sheriff or Server
  **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
  I am: (check one) ☐ the clerk of the court of which affiant is an officer.
       ☐ the judge of the court of which affiant is an officer.
*(Seal)*    ☐ authorized to administer oaths in the state in which the affiant served the above summons.
        (use for out-of-state officer)
     ☐ authorized to administer oaths.  (use for court-appointed server)

_____
         Signature and Title

Electronically Filed - St Louis County - September 29, 2022 - 12:17 PM

## AFFIDAVIT OF SERVICE

**State of Missouri**                **County of ST. LOUIS**                21st Judicial Circuit Court

Case Number: 22SL-CC03888

Plaintiff:
**EQUITY ONE FRANCHISORS, LLC**

vs.

Defendant:
**PRIESTMAN GROUP, INC.**

For:
Greensfelder, Hemker & Gale, P.C.
10 S. Broadway
Suite 2000
St. Louis, MO 63102-1774

Received by F.E.D. Process Servers, Inc. on the 7th day of September, 2022 at 5:51 am to be served on **BRADLEY T. PRIESTMAN, 495 S.W. RUSTIC CIRCLE, STUART, FL 34997**.

I, James Cain #10-28, being duly sworn, depose and say that on the **21st day of September, 2022** at **5:40 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Summons for Personal Service Outside the State of Missouri; Exhibit A; Exhibit B; Exhibit C; Exhibit D; Exhibit E;** with the date and hour of service endorsed thereon by me, to: **BRADLEY T. PRIESTMAN** at the address of: **495 S.W. RUSTIC CIRCLE, STUART, FL 34997**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 50+, Sex: M, Race/Skin Color: WHITE, Height: 6'1, Weight: 210, Hair: GREY, Glasses: N

Subscribed and Sworn to before me on the 27TH day
of September 2022 by the affiant who is
personally known to me.

NOTARY PUBLIC



**FRANCES E. DIXON**
Commission # HH 273339
Expires July 8, 2026

**James Cain #10-28**

**F.E.D. Process Servers, Inc.**
**777 S. FEDERAL HIGHWAY**
**RP217**
**POMPANO BEACH,, FL 33062**
**(954) 245-8440**

Our Job Serial Number: FED-2022001243
Ref: 22SL-CC03888

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.1z



Electronically Filed - St Louis County - September 29, 2022 - 12:17 PM



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOSEPH L. WALSH III | Case Number:  22SL-CC03888 |
| Plaintiff/Petitioner:<br>EQUITY ONE FRANCHISORS, LLC<br><br><br>**vs.** | Plaintiff's/Petitioner's Attorney/Address:<br>DAWN ANN MORVILLE JOHNSON<br>SUITE 2000<br>10 SOUTH BROADWAY<br>ST  LOUIS, MO  63102 |
| Defendant/Respondent:<br>PRIESTMAN GROUP, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Breach of Contract | |
| | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   PRIESTMAN GROUP, INC.
           **Alias:**
SERVE BRADLEY T PRIESTMAN
759 SW FEDERAL HWY #101
STUART, FL  34994



*COURT SEAL OF*

*ST. LOUIS COUNTY*

          **You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.**
          **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>01-SEP-2022</u>
     **Date**
**Further Information:**
     **AD**

_____
                                              **Clerk**

## Officer's or Server's Affidavit of Service

I certify that:
1.   I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.   My official title is _____ of _____ County, _____ (state).
3.   I have served the above summons by:  (check one)
          ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
     ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
          _____, a person at least 18 years of age residing therein.

          ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
                    _____ (name) _____ (title).
          ☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____          _____
     Printed Name of Sheriff or Server                            Signature of Sheriff or Server
          **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
     I am: (check one)    ☐ the clerk of the court of which affiant is an officer.
                              ☐ the judge of the court of which affiant is an officer.
                              ☐ authorized to administer oaths in the state in which the affiant served the above summons.
                                   (use for out-of-state officer)
*(Seal)*                    ☐ authorized to administer oaths.  (use for court-appointed server)

                              _____
                                        Signature and Title

Electronically Filed - St. Louis County - September 29, 2022 - 12:17 PM

## AFFIDAVIT OF SERVICE

**State of Missouri**                    **County of ST. LOUIS**              **21st Judicial Circuit Court**

Case Number: 22SL-CC03888

Plaintiff:
**EQUITY ONE FRANCHISORS, LLC**

vs.

Defendant:
**PRIESTMAN GROUP, INC.**

For:
Greensfelder, Hemker & Gale, P.C.
10 S. Broadway
Suite 2000
St. Louis, MO 63102-1774

Received by F.E.D. Process Servers, Inc. on the 7th day of September, 2022 at 5:51 am to be served on
**PRIESTMAN GROUP, INC. C/O BRADLEY T PRIESTMAN, 759 S.W. FEDERAL HWY #101, STUART, FL 34994**.

I, James Cain #10-28, being duly sworn, depose and say that on the **21st day of September, 2022** at **5:40 pm, I**:

served a **REGISTERED AGENT** by delivering a true copy of the **Summons for Personal Service Outside the State of Missouri; Exhibit A; Exhibit B; Exhibit C; Exhibit D; Exhibit E**; with the date and hour of service endorsed thereon by me, to: **BRADLEY T. PRIESTMAN** as **Registered Agent** at the address of: **495 S.W. RUSTIC CIRCLE, STUART, FL 34994** on behalf of **PRIESTMAN GROUP, INC.**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
Attempted Service: 9-14-22 @ 10:20 am 759 S.W. Federal Hwy # 101, Stuart, FL 33494 Given address is a CPA office called Mary Huff CPA. Per contact with the receptionist stated the subject rents a virtual office here but is never here. He works from home. Document was rerouted for service at subjects residence address.

**Description** of Person Served: Age: 50+, Sex: M, Race/Skin Color: WHITE, Height: 6'1, Weight: 210, Hair: GREY, Glasses: N

Subscribed and Sworn to before me on the _____ day
of _____, _____ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

FRANCES E. DIXON
Commission # HH 273339
Expires July 8, 2026

_____
James Cain #10-28

F.E.D. Process Servers, Inc.
777 S. FEDERAL HIGHWAY
RP217
POMPANO BEACH,, FL 33062
(954) 245-8440

Our Job Serial Number: FED-2022001244
Ref: 22SL-CC03888

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.1z

Electronically Filed - St Louis County - October 21, 2022 - 09:35 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| **EQUITY ONE FRANCHISORS, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.:  22SL-CC03888** |
| **v.** ) | |
| ) | **Division:  17** |
| **PRIESTMAN GROUP, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ENTRY OF APPEARANCE

COMES NOW Jeffrey R. Schmitt, of the law firm of Danna McKitrick, P.C., and enters his appearance on behalf of Defendants Priestman Group, Inc., Bradley T. Priestman, David J. Dionne and Patricia K. Dionne.

DANNA McKITRICK, P.C.

By:     /s/ Jeffrey R. Schmitt
          Jeffrey R. Schmitt, #52966
          7701 Forsyth Blvd., Suite 1200
          St. Louis, MO  63105
          314-726-1000 / 314-726-6592 (fax)
          E-mail:  jschmitt@dmfirm.com
          *Attorneys for Defendants Priestman*
          *Group, Inc., Bradley T. Priestman,*
          *David J. Dionne and Patricia K. Dionne*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that I caused true and correct copies of the foregoing document to be served upon the parties receiving notice through the Court's ECF system by filing with the Court's ECF system on this 21st day of October 2022.

/s/ Jeffrey R. Schmitt

4873-6218-5012, v. 1

Electronically Filed - St Louis County - October 21, 2022 - 09:35 AM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

EQUITY ONE FRANCHISORS, LLC, )
                                )
            **Plaintiff,**      )
                                )   **Case No.:  22SL-CC03888**
**v.**                          )
                                )   **Division:  17**
**PRIESTMAN GROUP, INC., et al.,**  )
                                )
          **Defendants.**     )

## REQUEST FOR ADDITIONAL TIME

COME NOW Defendants Priestman Group, Inc., Bradley T. Priestman, David J. Dionne and Patricia K. Dionne, by and through undersigned counsel and request additional time, to and including November 4, 2022, in which to answer or otherwise respond to Plaintiff's Petition

DANNA McKITRICK, P.C.

By:   /s/ Jeffrey R. Schmitt
       Jeffrey R. Schmitt, #52966
       7701 Forsyth Blvd., Suite 1200
       St. Louis, MO  63105
       314-726-1000 / 314-726-6592 (fax)
       E-mail:  jschmitt@dmfirm.com
       *Attorneys for Defendants Priestman*
       *Group, Inc., Bradley T. Priestman,*
       *David J. Dionne and Patricia K. Dionne*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that I caused true and correct copies of the foregoing document to be served upon the parties receiving notice through the Court's ECF system by filing with the Court's ECF system on this 21st day of October 2022.

/s/ Jeffrey R. Schmitt

4859-1392-1851, v. 1

Electronically Filed - St Louis County - September 28, 2022 - 11:49 AM

## AFFIDAVIT OF SERVICE

**State of Missouri**                **County of ST. LOUIS**                **21st Judicial Circuit Court**

Case Number: 22SL-CC03888

Plaintiff:
**EQUITY ONE FRANCHISORS, LLC**

vs.

Defendant:
**PRIESTMAN GROUP, INC.**

For:
Greensfelder, Hemker & Gale, P.C.
10 S. Broadway
Suite 2000
St. Louis, MO 63102-1774

Received by F.E.D. Process Servers, Inc. on the 7th day of September, 2022 at 5:51 am to be served on **BRADLEY T. PRIESTMAN, 495 S.W. RUSTIC CIRCLE, STUART, FL 34997**.

I, James Cain #10-28, being duly sworn, depose and say that on the **21st day of September, 2022** at **5:40 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Summons for Personal Service Outside the State of Missouri; Exhibit A; Exhibit B; Exhibit C; Exhibit D; Exhibit E;** with the date and hour of service endorsed thereon by me, to: **BRADLEY T. PRIESTMAN** at the address of: **495 S.W. RUSTIC CIRCLE, STUART, FL 34997**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 50+, Sex: M, Race/Skin Color: WHITE, Height: 6'1, Weight: 210, Hair: GREY, Glasses: N

Subscribed and Sworn to before me on the 27TH day
of September 2022 by the affiant who is
personally known to me.

NOTARY PUBLIC



FRANCES E. DIXON
Commission # HH 273339
Expires July 8, 2026

**James Cain #10-28**

**F.E.D. Process Servers, Inc.**
**777 S. FEDERAL HIGHWAY**
**RP217**
**POMPANO BEACH,, FL 33062**
**(954) 245-8440**

Our Job Serial Number: FED-2022001243
Ref: 22SL-CC03888

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.1z

Electronically Filed - St. Louis County - September 28, 2022 - 11:49 AM

## AFFIDAVIT OF SERVICE

**State of Missouri**                 **County of ST. LOUIS**                 **21st Judicial Circuit Court**

Case Number: 22SL-CC03888

Plaintiff:
**EQUITY ONE FRANCHISORS, LLC**

vs.

Defendant:
**PRIESTMAN GROUP, INC.**

For:
Greensfelder, Hemker & Gale, P.C.
10 S. Broadway
Suite 2000
St. Louis, MO 63102-1774

Received by F.E.D. Process Servers, Inc. on the 7th day of September, 2022 at 5:51 am to be served on
**PRIESTMAN GROUP, INC. C/O BRADLEY T PRIESTMAN, 759 S.W. FEDERAL HWY #101, STUART, FL 34994.**

I, James Cain #10-28, being duly sworn, depose and say that on the **21st day of September, 2022** at **5:40 pm, I:**

served a **REGISTERED AGENT** by delivering a true copy of the **Summons for Personal Service Outside the State
of Missouri; Exhibit A; Exhibit B; Exhibit C; Exhibit D; Exhibit E;** with the date and hour of service endorsed
thereon by me, to: **BRADLEY T. PRIESTMAN** as **Registered Agent** at the address of: **495 S.W. RUSTIC CIRCLE,
STUART, FL 34994** on behalf of **PRIESTMAN GROUP, INC.**, and informed said person of the contents therein, in
compliance with state statutes.

**Additional Information pertaining to this Service:**
Attempted Service: 9-14-22 @ 10:20 am 759 S.W. Federal Hwy # 101, Stuart, FL 33494 Given address is a CPA
office called Mary Huff CPA. Per contact with the receptionist stated the subject rents a virtual office here but is
never here. He works from home. Document was rerouted for service at subjects residence address.

**Description** of Person Served: Age: 50+, Sex: M, Race/Skin Color: WHITE, Height: 6'1, Weight: 210, Hair: GREY,
Glasses: N

Subscribed and Sworn to before me on the _____ day
of _____, _____ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

FRANCES E. DIXON
Commission # HH 273339
Expires July 8, 2026

_____
James Cain #10-28

F.E.D. Process Servers, Inc.
777 S. FEDERAL HIGHWAY
RP217
POMPANO BEACH,, FL 33062
(954) 245-8440

Our Job Serial Number: FED-2022001244
Ref: 22SL-CC03888

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.1z

Electronically Filed - St Louis County - November 04, 2022 - 01:42 PM

FILED IN DIV. 17

NOV 07 2022

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI**

EQUITY ONE FRANCHISORS, LLC, )
)
      **Plaintiff,** )
)
v. )
)
PRIESTMAN GROUP, INC., et al., )
)
      **Defendants.** )

Case No.: 22SL-CC03888

Division: 17

So ordered
11/7/22

## SECOND REQUEST FOR ADDITIONAL TIME, WITH CONSENT

COME NOW Defendants Priestman Group, Inc., Bradley T. Priestman, David J. Dionne and Patricia K. Dionne, by and through undersigned counsel and with the consent of Plaintiff's counsel, hereby request an additional thirty (30) days, to and including December 4, 2022, in which to answer or otherwise respond to Plaintiff's Petition.

    DANNA McKITRICK, P.C.

By:    /s/ Jeffrey R. Schmitt
       Jeffrey R. Schmitt, #52966
       7701 Forsyth Blvd., Suite 1200
       St. Louis, MO  63105
       314-726-1000 / 314-726-6592 (fax)
       E-mail:  jschmitt@dmfirm.com
       *Attorneys for Defendants Priestman*
       *Group, Inc., Bradley T. Priestman,*
       *David J. Dionne and Patricia K. Dionne*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that I caused true and correct copies of the foregoing document to be served upon the parties receiving notice through the Court's ECF system by filing with the Court's ECF system on this 4th day of November 2022.

       /s/ Jeffrey R. Schmitt

4871-7427-7693, v. 1

Electronically Filed - St Louis County - November 04, 2022 - 01:42 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| **EQUITY ONE FRANCHISORS, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.:  22SL-CC03888** |
| **v.** ) | |
| ) | **Division:  17** |
| **PRIESTMAN GROUP, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**SECOND REQUEST FOR ADDITIONAL TIME, WITH CONSENT**

COME NOW Defendants Priestman Group, Inc., Bradley T. Priestman, David J. Dionne and Patricia K. Dionne, by and through undersigned counsel and with the consent of Plaintiff's counsel, hereby request an additional thirty (30) days, to and including December 4, 2022, in which to answer or otherwise respond to Plaintiff's Petition.

DANNA McKITRICK, P.C.

By:  /s/ Jeffrey R. Schmitt
Jeffrey R. Schmitt, #52966
7701 Forsyth Blvd., Suite 1200
St. Louis, MO  63105
314-726-1000 / 314-726-6592 (fax)
E-mail:  jschmitt@dmfirm.com
*Attorneys for Defendants Priestman*
*Group, Inc., Bradley T. Priestman,*
*David J. Dionne and Patricia K. Dionne*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that I caused true and correct copies of the foregoing document to be served upon the parties receiving notice through the Court's ECF system by filing with the Court's ECF system on this 4th day of November 2022.

/s/ Jeffrey R. Schmitt

4871-7427-7693, v. 1

Electronically Filed - St Louis County - October 21, 2022 - 09:35 AM

FILED IN DIV. 17

OCT 24 2022

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

EQUITY ONE FRANCHISORS, LLC, )
                                         )
          Plaintiff,                     )
                                         )     Case No.:  22SL-CC03888
v.                                       )
                                         )     Division:  17
PRIESTMAN GROUP, INC., et al.,           )
                                         )
          Defendants.                    )

So ordered
_____ 10/24/22

### REQUEST FOR ADDITIONAL TIME

COME NOW Defendants Priestman Group, Inc., Bradley T. Priestman, David J. Dionne and Patricia K. Dionne, by and through undersigned counsel and request additional time, to and including November 4, 2022, in which to answer or otherwise respond to Plaintiff's Petition

DANNA McKITRICK, P.C.

By:    /s/ Jeffrey R. Schmitt_____
       Jeffrey R. Schmitt, #52966
       7701 Forsyth Blvd., Suite 1200
       St. Louis, MO  63105
       314-726-1000 / 314-726-6592 (fax)
       E-mail: jschmitt@dmfirm.com
       *Attorneys for Defendants Priestman*
       *Group, Inc., Bradley T. Priestman,*
       *David J. Dionne and Patricia K. Dionne*

### CERTIFICATE OF SERVICE

The undersigned does hereby certify that I caused true and correct copies of the foregoing document to be served upon the parties receiving notice through the Court's ECF system by filing with the Court's ECF system on this 21st day of October 2022.

                              /s/ Jeffrey R. Schmitt_____

4859-1392-1851, v. 1